

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Jason Collura        :     Civil Action No. **13____ 4066**

        : 

    v.         :     **Jury Trial Demanded**

        :

Nicholas James Ford, Pamela Pryor Dembe,:
Mary Politano, City Of Philadelphia,
Steffen Boyd, Steven Austin,  Charles Hoyt,
 Robert J. Malvesuto

## COMPLAINT

## JURISDICTION AND VENUE

1. **Plaintiff will not go in** front of McLaughilin or DuBois, and it would be a conflict of interest based on actions, complaints, and recusals, also Pratter has another matter of Plaintiffs and it would be prejudicial , another judge must be assigned to this case, whether it needs to go to the chief judge for reassignment or whatever the case is, unequivocally this must go to another judge.

2.  This is a civil action authorized by 42 U.S.C § 1983, First Amendment, Fourth Amendment, Fifth Amendment, Fourteenth Amendment direct, Fourteenth Amendment under 1983, all of the Federal Constitution, PA False Imprisonment, Article I § 7, Article I § 1, Article I Section 8, of the Pennsylvania Constitution, all equal protection clauses of federal and state law, all due process clauses of federal and state law, PA Malicious Prosecution and PA Intentional Infliction of Emotional Distress to redress deprivations, under color of state law, of rights secured by the Constitutions of the United States and of Pennsylvania. The court has jurisdiction under 28 U.S.C. Section 1331 for the 1983 and

state claims against Dembe, Common Pleas can have jurisdiction on the rest of the claims so it should be remanded after Dembe's claims are disposed of in Plaintiff's favor. Plaintiff seeks declaratory relief pursuant to 28 U.S.C Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C Section 2282 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

3. This court is an appropriate venue under 28 US.C. § 1391 (b) (2) for the claims against Dembe.

## PARTIES

3. Plaintiff-victim is Jason Collura

4. Defendant/offenders are:

Nicholas James Ford, individual and official capacity 1515 Arch Street Philadelphia
Pamela Pryor Dembe , individual and official capacity 1515 Arch Street Philadelphia
Mary Politano, individual and official capacity 1515 Arch Street Philadelphia
City Of Philadelphia, 1515 Arch Street Philadelphia
Steffan Boyd  individual and official capacity   1515 Arch Street Philadelphia  19103
Steven Austin  individual and official capacity 1515 Arch Street Philadelphia  19103
Charles Hoyt individual and official capacity 1515 Arch Street Philadelphia   19103
Robert J. Malvesuto, individual and official capacity 1515 Arch Street Philadelphia

5. At all times did the offenders act under the color of state law.

## STATEMENT OF CLAIM

6. This is a multidimensional case which includes multilayered first amendment retaliation claims. Pamela Pryor Dembe Cohen, whatever her name is, is an out of control excuse and disgrace of a judge. Actually, Plaintiff has some more names for her he won't repeat. Dembe has been out of control for more than 20 years. If Plaintiff started with a detailed account with Dembe's behavior it would take up the entire space for this complaint. The number of complaints Dembe has had filed against with the Judicial

Conduct Board is in the triple digits. In 2005, in a sentencing hearing for Rev. James Behan, Dembe infamously cried like a baby on the bench for the defendant not the victims, brought up her own supposed religion, and whined "I can't pretend to anyone of you that I know what the right thing to do is". Really- that came to a shock to everyone in the courtroom and outside of it as the prosecutors asked for a minimum of 22 years to help her along in her selective job requirement amnesia. Dembe turned around after some more crying and bringing up inappropriate personal religious beliefs and sentenced Behan to not a single day in jail and only 12 years probation, with no restrictive conditions, for repetitive unspeakable acts that went on for multiple years. She determined that besides those acts the defendant had led an otherwise "godly" life, which made sense because people he was there for the good things he had done. District Attorney Abraham was "appalled" and called it a very sad day for priest abuse victims everywhere including the ones in the matter. That's Dembe. though.

Another example, the same month as Behan, is Com. v. Edward Largist, CP-51-CR-0904591-2005. Largist was convicted of 22 charges, most felony 1 and 2's for molesting his own children. By the sentencing guidelines, the absolute minimum he should have gotten was 27 years. Instead, not one day in jail, no house arrest, electronic monitoring, nothing, and a total of 14 years probation which it looks like will end less than halfway through it. This was an open plea where Dembe controlled the sentence fully. Another case in just this same two month period as the above two, is Com v. Earl Wilson, CP-51-CR-0701421-2005 and CP-51-CR-0701431-2005, in which Wilson was convicted of two brutally vicious felony 1 robberies and related felony offenses. Wilson had wandered over to Rittenhouse Square, where he spotted his female victim, "he pushed her inside

the vestibule, demanded money, hit her repeatedly in the face with a brick and took her purse. She suffered severe lacerations to her skull requiring staples in her head to close the gash and lost most of her teeth as a result of the incident." See Superior Court opinion April 16th, 2007.

"Wilson also indicated during this [police] interview that he found the brick he used to attack his first victim lying outside on the ground down the street from her house" and that he thought he hit her in the head and face with the brick two or three times. Moreover, after running up to his female victim and not being satisfied with her answer that she did not have any money, he then took the brick and start[ed] swinging at her. Id. at 12. When she started screaming louder, he swung the brick a couple more times until she fell on the floor in the hallway of her apartment building"

Then Wilson went to a male victim leaving his apartment, Wilson shoved him, and assaulted him with the brick in the face, robbing him. He was found with the brick and their cell phones the next day. These were violent and brutal robberies, one victim lost her teeth and is scarred for life on her head. Wilson had another felony case at that same time as well that he was convicted of. In addition he had a lengthy record of violent crime in other states. The prosecutor asked for a sentence of 30 years to protect the public. The minimum sentence, including a deadly weapon enhancement would have been 16 years. Dembe gave him 11.5 to 23 months followed by a total of 7 years probation, then, on top of that had the nerve to grant early parole, with no house arrest, after just 6.5 months in jail. This was an open plea where Dembe controlled the sentence. Once again, that's Dembe. The sentence was appealed and of course then remanded for being a Dembe liking the defendant sentence.

4

Plaintiff has about 150 more examples but he doesn't have the room. Case after case where Dembe has had real crimes, the worst crimes, and real people who actually committed them,  prosecutors have asked for as much as 30-60 years, instead Dembe has given out 11.5 to 23 months, and early parole most of the time. Dembe is also know for ex parte legal moves, an example is last August, she sentence Abu-Jamal to life, never told him or his attorneys, she does whatever she wants to do, even before she bought her way into the president "judge" position, especially after.  She has had numerous temper and behavioral issues while on the bench that have made the news, including in 2008, where she was bickering with an attorney, then just stopped and "stared at him" for "two minutes" without saying anything. Dembe does not like it when she does not get her way, at all. In addition to the above she brought negative attention to the legal system another 300 times in other matters.

7. In this matter Dembe, first violated Plaintiff's due process right of liberty and convicted Plaintiff three felony counts of 18 § 3933 **that didn't even exist** and hadn't for **three years**. Pennsylvania Title 18 § 3933 Unlawful Use Of A Computer, that didn't even exist and hadn't for three years. The statute reads " 2002 Repeal Note**.** Section 3933 was repealed December 16, 2002, P.L.1953, No.226, effective in 60 days." Then Dembe sentenced Victim to a year in jail, even furthering that basic human rights violation to be free from false imprisonment and such. Victim spent an entire year in jail solely for counts of a statute that never existed, also years on probation/parole which form the basis of the below separate civil rights violations by Dembe and others.

To make matters worse, unlawful use of a computer never has and never would apply to the purported accompanying charges of Plaintiff's case, 2706, 2709, 2710. Never in

the entire history of it since its creation in 1983, was even charged to somebody with those accompanying charges let alone convicted. Moreover since the 1990's, the 2706 and 2709 statutes already include by definition "electronic mail" and "internet". So this can never be minimized to something equivalent to, well they just charged him with the wrong number, the statue applied, they just used a repealed version, he still would have been convicted and gone to jail had they used the one that existed. No, all the way around a monumental human rights violation. This was the beginning and part of a continuing practice of illegal and unconstitutional bad acts and conduct that continue to the current day, including procedural and substantive process, directly and under § 1983, equal protection clauses, as well as a million other things. As referenced below, Dembe continued for years and years to lie and attempt to cover her blatant on the record behavior, up.

8. Plaintiff received a court appointed lunactic, MaryAnn Swift for his appeal. Dembe was self admitted best friends with Swift, and she got all of Dembe's victim's appeals. Swift only had a Montgomery County office, not a Philadelphia one. She used another lawyer's office at 1218 Chestnut St, as a mailing address to get court appointed victims here, and Dembe was well aware of it. Dembe specifically conspired with Swift to cover up the above concrete fact that the statute didn't exist, telling her to state it was 7611, this despite the docket the entire time, the signed sentencing sheets, all the other records state one thing 3933. After Swift was done running Plaintiff's appeal to the ground for Dembe, she was disbarred for her mentally unstable behavior. She had accosted four judges for more than two years. This included drawing cartoons about the judges in submissions and handing out flyers in CJC with the cartoons on them. Realizing that she was mentally

6

disturbed, one of the judges ordered the Montgomery County Sheriff's office to go to Swift's home and remove all firearms because is a danger to herself and the community in general.

Dembe continued to cover up the above, in a August 8th, 2006, she filed her first false opinion in Superior Court. In it she declares the conviction was on "three counts of Unlawful Use Of Computer, (F-3), 18 Pa. C.S. § 7611)." Again, that is as false as it gets, **all the records including the signed conviction sheets** say 18 § 3933. Also she made another intentional rights violating false statement of material fact when she stated she never sentenced Plaintiff on the other invalid counts, she was off by years and years of probation. Note, the opinion was intentionally both factually and legally intentionally erroneous in a hundred different ways, but Plaintiff will leave that out.

In a second phony opinion to Superior Court on November 30th,  2008, she again declared  the conviction was on "three counts of "three (3) counts of unlawful use of a computer (F-3), 18 Pa. C.S. § 7611". Then she declares again, there was not a sentence on the other invalid counts, "The defendant did not receive further sentencing". Again, this opinion was intentionally both factually and legally intentionally erroneous in a hundred different ways, but Plaintiff will leave that out. So in an effort to avoid this a third time, Plaintiff stated in a filing in June of 2012 that the upcoming opinion should be accurate referencing the above two lies. Sure enough, a third phony opinion to Superior Court on Oct. 12th,  2012, with exactly the above two declarations mentioned.

Also, in April of 2008, Dembe had been forced by Superior Court to correct another intentional error, which was giving more sentence than the 2706 statute of a M1 allowed.  In the sentencing order, she continues her ways and  states "Unlawful Use of

Computer (F-3)" with nothing else when describing Plaintiff's 18 § 3933 conviction, then mentions the physical name of the accompanying charge then " (M-1) 18 Pa. C.S. § 2706". So again she went out of her way, trying to conceal the on the spot fraud conviction, not mention the statute on u/uc but having no problems with the other charge.

9. The official oppression continues, because Plaintiff did not commit any crimes in connection with anything and is serving a blatant illegal sentence, he filed a timely PCRA on August 25th, 2011. Plaintiff called and confirmed with a supervisor in post-trial that it was given to Dembe a few days later. However, Plaintiff heard and saw nothing done with it. In December of that year, Plaintiff placed another phone call to that unit, and again they confirmed Dembe had it and they could not make her do anything with it, because it did not have a natural 120 day life. Plaintiff waited and waited and waited for that excuse of a judge to do something with it, anything. Fed up, in early May of 2012, going on a year, Plaintiff spoke again with the same director, who is an attorney.

They repeated it was long given to Dembe, and after looking for an answer as to how to get Dembe to perform he judicial duties, they came up with the idea of giving Dembe another copy of it, and telling her  the defendant is demanding some action taken on it. They did it and the response she got from Dembe's chambers was they "are working on it but there is no time table". Plaintiff then asked what can they do to make Dembe perform her job, they stated the obvious, they are the top judge in the building, they can only keep giving them copies and suggestions, that's it. "Working on it" , not one thing was that disgrace of a judge "working on", except oppressing Victim even more and also yet again violating multiple judicial canons.

8

Yet, another month goes by, nothing. Plaintiff decided to file an amendment on June 13th, 2012, to strengthen the petition for appellate review. Dembe waited an entire year to deny the PCRA without a word or hearing on August 21st, 2012. An entire year to issue a **one page order with one sentence, not one word why let alone a hearing.** There is no valid reason, to wait an entire year to do something that takes 30 seconds. PA conduct board found a judge guilty of misconduct and violating a Canon because they had a 10-month delay in issuing the opinion after parties filed briefs. Here it was that plus several aggravating conduct. Actually she was helped along with that, because it still would be pending today if she wasn't. Also, on June 29th, 2012 , Plaintiff filed Motion To Modify Sentence, under 42 § 5505 to correct patent errors in the sentencing order like three counts of a statute that didn't exist. That was denied for spite on July 6th, 2012, without one word or hearing, Dembe would have either waited 119 days to do it or waited another to expire it, but at that point she was helped along. Again Dembe's and the City's action violated Plaintiff's due process rights as well as others.

10. Her and the City's continuing practice of illegal and unconstitutional bad acts continue. In addition to the above, in her Oct. 12th, 2012 phony opinion to Superior Court she made more obviously false statements of material fact about what was filed and what it contained, pertaining to Plaintiff's PCRA and 42 5505 motion. She declared that Plaintiff's 5505 had no legality claims, **it had nothing but**. She also made completely false statements about the PCRA as well. As is this wasn't enough to erase Plaintiff's constitutional right to fair proceedings, she tried to sabotage the appeal even further than a phony opinion.

As mentioned, there was a PCRA and 42 § 5505 motion, both distinct filings were appealed separately. After what Dembe labeled a opinion was sent in the lower court record that was certified a few days later and sent in. Plaintiff knew better to inspect the record at Superior Court, which he did. Almost not believably, the 5505 motion, the sole filing and reason for one entire appeal, the one where Dembe declared had no legality of sentence claims but all were, was **not in the record**.

There was only the cover page of the 20 page motion, stamped by Dembe, it was **her copy of the motion**, not the file's copy. Plaintiff spoke to the unit responsible and amember of it she stated, "Judge Dembe gave us the filing and we put it in the record". Plaintiff said first she gave the cover page and nothing else, but that, that was her stamped copy, where is the file copy. They could not come up with a response to it. Plaintiff spoke to someone higher up in the unit looking for answers. They said we send whatever is in there, if the judge gives us something we put it in there. But they too could not explain why only Dembe's stamped copy of the cover page was in there, not the post trial's unit and file copy of 20 pages.

Plaintiff pass this particular disgraceful behavior along to Superior Court. They verified everything, then ordered her to stop her behavior and give up the actual filing that formed the entire appeal. On January 24th, Dembe filed an "addendum to opinion" which with halos around her head claimed she had nothing to do with the issue. Low and behold, this time she included the file copy in its entirety, that is just stamped filed on June 29th, not her "received in chambers" copy for which produced the cover page. It is clear and convincing that Dembe ordered the unit to take the actual file out of the record and replace it with her time stamped cover page, in order to sabotage Plaintiff's appeal.

11. The president "judge" Dembe has policymaking and final decisionmaking authority overall and this specific department where Plaintiff had his rights violated, has final authority over significant matters involving the exercise of discretion as well. Dembe occupies a sufficiently high policymaking role to create liability on the part of the City. Also these acts amount to a widespread practice within the City and its First Judicial District, amounting to a well-settled custom. Both Dembe and the City turned blind eye to an obviously inadequate practice that was likely to result in the violation of constitutional rights and did each time, the failures are articulated above and also a lot more below. The City failed to take any remedial steps after constitutional violations occurred. The City failed to supervise, discipline, control, train Dembe and other robe wearers, and acted with deliberate indifference to the needs of Plaintiff and other victims and all of which caused direct harm to this victim.

12. The following are a multitude of claims as listed in this complaint and first amendment retaliation. In July 2006, Victim started with parole/probation for the above illegal convictions that never even existed to begin with. Six years go by, and there is not a single issue. Plaintiff had no technical or direct violations, passed all drug urine screenings, made every single appointment and was on time, went out of his way to comply, while he is fighting his illegal convictions. Plaintiff strolled along strolled along for six entire years, more than a half of decade, including the two prior appointments in February of 2012 and December 2011, without any real issues. Defendant's report time for years had been every 2 months, for years.

At sentencing of the illegal and invalid convictions, Plaintiff answered in writing a specific question in regards to health and well being, which was did you ever have any

issues with that subject, it was answered in the negative. In addition to that, Dembe knew

that and never gave Plaintiff a unit evaluation because if she did, she then could not put

Plaintiff in a certain unit in probation, which is more restrictive than a general

supervision. But the thing is, is that somebody has to have an evaluation in order to be

placed in that unit or had one in the past, be well known. None of that took place, and in

addition the opposite took place. Despite this, Dembe placed Plaintiff in the more

restrictive unit despite having no authority to do so. Plaintiff is the only person of record

who has been placed in that unit without the proper requirements. Plaintiff was not aware

he can challenge this, was not keen on what to do, he did not know exact procedure at

that point, and just figured his convictions will be reversed because they have to by law.

So Victim continued on probation and in that specific unit, even though he should have

been in the general unit, while he was fighting the invalid case.

13. On April 12th, 2012, Defendant entered the building  and then eventually a booth. It's

interesting to note this was the same time he had served an excuse of an attorney for the

city, one that was involved in retaliation prior from a lawsuit. Defendant then discovers

his officer changed, it is now Nicolas Ford, an employee that had just been removed from

his job probation, had only been there a year, but that time was on another floor.  Right

away it is clear he has a vendetta and his own agenda. He starts giving attitude to Plaintiff

from virtually second one. and he gets more and more abrasive and demanding, and

Plaintiff says wait a minute, you are not going to run roughshod over me, there was no

issue with anything coming in today, Plaintiff has done more than what he should have

over the years, he knows probation law also the rules and regulations, exactly what he

needs to do, and his rights will not be violated.

12

Ford says, ok you wanna be smart, here you have a urine (drug test). Plaintiff told him he wouldn't get him on that, he hasn't been tested for years because they know he is clean, and this retaliatory test will be clean as well. Not happy he will get his way for Plaintiff sticking up for himself, Ford said we'll see and you know what, your reporting time [ which was 2 months], you are now weekly. Plaintiff said what, you cannot do that I have been coming every two months for years, you cannot change it at all unless you have established a valid reason, let alone 2 months to 1 week. Ford got angry again when his misuse of authority was challenged, went back and forth with Plaintiff, trying to establish that dominance and control that Ford has, and said I'm definitely "going to have you locked up" even though he had no even remote reason other than Plaintiff sticking up himself and his human rights.

14.    Then he resorted to looking at the screen and reading, he was trying to find something else to retaliate against Plaintiff, even though he was a model probationer for more than a half a decade. He then said you are going to be stuck with me, I'll make sure of that we'll give you a unit evaluation and I'll hit you with conditions and you won't do them and wind up not reporting. Plaintiff did not have any specific conditions and he was never suppose to be in the unit to begin with, the information at sentencing confirmed that, Ford knew that there never was an evaluation, so his path to jail Plaintiff here was to order an evaluation so he can put special conditions of Plaintiff and have Plaintiff not follow through, so he then violate Plaintiff and jail him. He was looking for anything conceivably to manufacture. Mind you, all of this was within five or six minutes of the very first meeting, Plaintiff never had seen the excuse of a probation officer in his life before.

13

Plaintiff mentioned the above, what Ford all ready knew, and he responded he doesn't care Plaintiff is going to take an evaluation whether he wants to or not and he will then be subject to special conditions that Ford thought would lead to incarceration for non-compliance. Plaintiff said the evaluation would come up in a negative result for Ford. Ford said one of their own doctors does it at CJC, and that if it did, Plaintiff would not get out of the unit. Plaintiff said, "what"? He said if you pass it, we do nothing, you are still in the unit. Plaintiff said "what" again, and said so if your doctor gives you a positive result, then you do exactly what you said, but if he doesn't then you don't do anything at all, including taking Plaintiff out of the unit. Ford said that is correct.

This is equivalent a person being told to take a lie detector test, if they fail charges will be brought against them, if they pass charges will still be brought but they cannot mention it was passed in court. It makes absolutely no sense whatsoever. Plaintiff said there is no way why anyone would do that whatsoever, and said if he took it would have to be fair. Ford said you don't have a choice, Plaintiff said he definitely move to change that, because the eval has to be fair if it is taken. Plaintiff earlier in this meeting demanded to speak with a supervisor and tried to call them. At this point he walks in, it is the only supervisor, and failure of one, in the unit Steffan Boyd, which Plaintiff will describe shortly.

Plaintiff lets Boyd know about Ford's behavior, and the above issues condensed. Boyd does nothing at all, except change the report time from Ford's 1 week to 1 month, which even that is still a rights violation as there was not an ounce of reason other than illegal retaliation to be dropped from 2 months to 1. After Boyd leaves, Ford says he will email the judge's chamber to get a date for the evaluation, he says only a judge can order

14

it. Plaintiff said give him at least 20 days notice  and he says in the meantime,  he will be

bringing these issues up including the illogical eval demand, complaining about him,

moving to change him. Plaintiff then took the drug screening in the building and passed.

15.  Plaintiff called later on that day to file a grievance about all of the above to Steffan

Boyd, the excuse of a direct supervisor of Ford. Boyd is a proven liar, as he was

indirectly involved in a civil court proceeding, where he only needed to tell the truth

about one thing, which was in relation to the case, that he was not otherwise apart of. A

alleged attorney spoke with him then sent him the questions in writing. Boyd stone cold

lied in writing in two different questions about a material fact that was important. When

he testified though, he said something completely different, acknowledging that he lied.

Despite this, Boyd takes great offense on being called what he is, a proven liar. Boyd

never picks up his phone, so Plaintiff left a message filing a grievance about Ford and his

disturbing behavior including threatening to lock Plaintiff for a bogus reason, he

demanded a p/o change, the report time to back to before adverse action of a protected

right, the evaluation situation described above, etc. Boyd did nothing, of course.

16. On, May 10th,  2012, Plaintiff reports, being that his time got cut in half in

retaliation. Ford tells Plaintiff he never heard back from any judge to schedule the

lunationion that he will let me know, Plaintiff said he needs 20 days notice. Plaintiff

again reminded Ford he still has an issue with that, but Ford did not care. Nor did he care

about changing Plaintiff's time back or anything else that was complained about. Plaintiff

let Ford know that he was still going to pursue his complaints. Ford said, oh and before

you leave here is another urine [drug test]. Plaintiff knew even before what the attempted

15

rationalization on this adverse action would be, it is part of everyone's conditions on probation, must comply. However, given all of the facts and evidence in this matter, that is  pretextual. Was not charged with any drug crime, no history of drugs, no conditions on it, had passed all drug tests prior, was known to the system to be clean. Again, Plaintiff has passed the first adverse action urine test the month prior as well. Just trying to desperately get Plaintiff on something.

17. After Boyd's failure supervise, discipline, or control, train Ford,  the same issue he has with his other employees and was deliberately indifferent to the needs of Plaintiff, Plaintiff contacted his supervisor, Steven Austin on May 31st, 2012. Of course he didn't pick-up, Plaintiff left a message simply stating his first name and that he had important issues that needed to be resolved and left his contact number. Plaintiff did not say what the issues were nor who was involved, that was for the conversation, for him to call back. Plaintiff knew not to expect a call back because that's how they operate ,there is no accountability, even though Plaintiff had never seen Austin, he already knew. Austin has the same failure supervise, discipline, control problem that Boyd has. Plaintiff tried a second time on June 11th, to call Austin, no pick up.

Plaintiff then left a message that he had left one earlier was ignored, has several important issues that need immediate attention, and if he continued to fail to do his job then Plaintiff would go to his supervisor and if needed get a lawyer involved. He left his first name and a call back number, but did not detail complaints or names because that was for a live conversation. So still supervisor Austin at this point did not know it was a complaint about Ford, therefore Ford did not know there was a complaint about him being made to Austin.

16

18. The next given appointment to report was June 7th, 2012. Plaintiff did so on time, waited an hour and was called in, it was another one who said Ford is not here today. Moments afterwards, he said Ford has you down for the 12th. Plaintiff asked how can that be when the card says the 7th on the signed card. He didn't have an answer. He said he was planning to tell you on the 12th about a unit evaluation on the 13th. Plaintiff said what? He said he doesn't know anything else about it. At that point Ford shows up, he was hiding and/or lying about his whereabouts, and we moved to another booth. Ford claimed it was misunderstanding about not being there and also that he had me down for the 13th somehow. Ford informs me that Boyd, the next day after the visit on May 11th, set up a date for the evaluation which was June 13th at 12 p.m. Plaintiff first said you were planning to tell me on the 12th at 4:00 p.m. about an evaluation 19 hours later, he said yes. It states on the form Boyd gave him which he then gave me "I have not contacted the p/p about his appointment. You will need to do that". Plaintiff asked Ford if he received on May11th, why did he not immediately send it to Plaintiff. He said I just thought I give it to you when I see you. So even though he had it on May 11th, he was planning on giving it to Plaintiff on June 12th at 4:00 p.m. for a June 13th, 12 p.m. appointment, giving him 19 hours notice as opposed to 31 days. The due process and retaliation as well as other claims continue.

Plaintiff asked how Boyd did it, when he just said only a judge can do it, Ford said he didn't know he thought only a judge can do it. Of course the evil intent and illogical premise of the evaluation had not been addressed due to the fact there is zero accountability in that building and FDJ. Plaintiff, and everyone else, needs due process and just basic notice of anything, but in this case Plaintiff still had to rectify or attempt to,

the above crucial problem. Plaintiff tells Ford he needs more time and it has to be rescheduled and Ford agrees with Plaintiff, and said "you can reschedule once, second time is a foul." It also states on the form, "The p/p will only get one chance at a rescheduled appointment." Despite this agreement he says he can't reschedule it now to call him before the 13th. Plaintiff said give me an email where I could write you to reschedule, because Plaintiff wanted documented writing, he said I can't give it out but just leave a message. Plaintiff said he will call on the 12th and Ford said ok, fine. However once Ford told Plaintiff he was not rescheduling it then and also to have Plaintiff not give it to him in writing in an email, then Plaintiff knew what the agenda was. Ford knew Plaintiff knew what he was going to as well.

19. On June 11th, Plaintiff called down to the evaluation unit which is in the basement of CJC, to confirm he indeed had a valid appointment given the fact that Boyd made it, and also to reschedule it directly with that department, in other words to cover himself both ways because he had a feeling that Ford was going to do what he had been doing. However, Plaintiff expected a problem with it, and sure enough he was right. This even though Plaintiff didn't know anybody in that unit, matter of fact he had no idea the unit even existed. In the back of Plaintiff's mind he was strongly believing Ford or possibly Boyd called in. He first talked to a clerk, it almost seemed as if they were on cue, extremely rude, loud, belligerent, said she didn't know anything about scheduling, who does it, how to reschedule, nothing.

Plaintiff mentioned on the form it states the rescheduling is made here, so obviously the scheduling would be. She responded with more rudeness and more

non-cooperation. Plaintiff naturally asked for a supervisor, and they transferred him to Mary Politano. Politano is actually an employee of probation, not only that, the same unit as Ford. Her supervisor is Boyd. Even though Plaintiff never knew of the unit's existence nor ever spoke or heard of anyone there, it almost seemed as if she was expecting the call. She pretty much picked off where the clerk left off in terms of loudness attitude and rudeness. Plaintiff was trying to work through that so he can resolve a very crucial issue. It took six or seven minutes and Plaintiff finally after being cut off, over talked, plus more, got an answer to the first question that they claim after post trial a probation supervisor can request a unit evaluation as opposed to pre-trial where only a judge can.

After having established that the appointment was valid on its face, Plaintiff had one simple objective needed to reschedule it, which she had to have known from Ford prior to the conversation. In between her cut offs and over talking, extreme rudeness, Plaintiff explained his situation in detail, illogical scenario, lack of time, from states you can reschedule once, etc. Plaintiff simply requested to reschedule the evaluation. At that point she looked and her listings and said Plaintiff is not on the list for that day. Plaintiff at that point knew for a concrete fact Ford and/Boyd spoke with her prior. He had, had a strong feeling based on some things, but now the jury had spoken. Notably, as we learn in the future, Ford had attempted to give Plaintiff notice of a vop hearing after it had taken place, so this behavior from his co-worker falls right in line.

When Plaintiff began to respond, she got loud and would not let him speak, cutting him off, over talking, to which at some point he had to  blurt out he had the form right in front of him, explain why it says that. She responded by again getting loud and argumentative and this went on for a couple of minutes. After Plaintiff asked who her

supervisor was, she then coincidentally claimed somebody had found it, and it was for that day and time but instantaneously proclaimed can't do anything with it, they don't make schedules, you're your probation officer can. Plaintiff asked her if she was joking, and said it's common sense that this unit handles the evaluations not the probation department, so obviously they call here and get a schedule from you, they would not call up to your place, with your staff, and say ok you are doing this at this time, ok you are seeing him now. In other words, how can somebody outside tell them what time they are going to do things. Plaintiff also brought up the form says it in writing that, that unit reschedules. However, she again got loud and declared that's how it was. When Plaintiff went to respond she cut him off, and got loud trying to over talk again. After 20 minutes Plaintiff did not accomplish a simple goal, and also because of Politano's behavior, Plaintiff could not even cancel the appointment and have it rescheduled later by whoever.

20. On June 12th, 2012, Plaintiff leaves a message with Ford stating what we said to reschedule and to give him at least 20 days notice.

21. On June 13th, Plaintiff filed an amended PCRA petition, since Dembe had spitefully taken no action within a year. In that amendment the first page, it states, "A complaint to the Judicial Conduct Board should get speed up these sham proceedings...". This went straight to Dembe that day.

22. On June 14th, some 15 days after he was called, the excuse of a supervisor Austin decided to call Plaintiff. Plaintiff went out of his way not mention this because he knows it would sidetrack the conversation, instead he just focused in on resolving the issues at hand. Plaintiff said his first name and began to cite the above factual background so he can progress the proper relief, Austin cut Plaintiff off and rudely asked why he was

complaining to him and Plaintiff said he is going to explain why, just let him relay the facts, Austin said no we'll get to that later, and repeated the question, Plaintiff again repeated what he said but Austin was not letting me talk, Plaintiff said either you are going to let him finish talking so he relay the issues of we cannot talk, Austin continued and the conversation was terminated. No accountability combined with extreme arrogance and ungraciousness.

Austin called back and left a message claiming that he was willing to talk if he got his way, which he was not ever going to get. It was clear Plaintiff could not have a live conversation with the excuse of a supervisor so later that day on June 14th, he left Austin a message detailing the deaf earred grievance, that Plaintiff knew was going to get more deaf. Plaintiff relayed with precision everything above that was told to Boyd, Ford's behavior, a p/o change, a report time reset, correcting the evaluation situation, and more, including a complaint about Boyd who failed to do his job correctly. They specifically have their voice mail set to about 90 seconds so people can't leave any type of real message, so Plaintiff had to use more than recording to get the facts, issues, and relief requested, this does not factor into anything but that.

23. The next day, on June 15th, Austin tells Ford and Boyd about the complaint that went over their head to him. So on June 13th Dembe was notified there was a complaint to her governing board was imminent, and on June 14th Plaintiff complained about Ford and Boyd, which got to them on the 15th. Low and behold, Ford drafted up a bogus warrant request which Boyd signed off on, then emailed to Dembe who instantaneously issued a probation violation bench warrant that was one hundred percent retaliation, as there was **no violation of probation that occurred** let alone a severe one for an instant

21

warrant of arrest. The temporal proximity speaks for itself, the very next day and in the other case two days  and so does motive. The proof of the direct connection between the protected activity and retaliatory responses can't be more concrete. The very next day and in the other case two days.  For Dembe, an entire year to issue a one sentence on page dismissal, and many other things like that, including the very last one to be called in hearings with Plaintiff's actions, but **seconds later**. Found the time to do that within seconds. Absolutely despicable.  This is her and the City's continuing practice of illegal and unconstitutional bad acts and conduct, this time with her, it includes First Amendment retaliation in addition to 15 other claims.

Also, the City has a policy, custom, and practice of this ex parte warrant system. The official policy is anyone from probation gets on an email and sends it over to a judge requesting a warrant without any prima facie showing that a violation occurred, a defendant or counsel is never notified of anything, and there is no appeal, no anything. However, a lot judges do not issue the warrant unless it is a serious allegation of either a direct or technical violation. Here, if the email went to any other judge, they would have denied it. It's still an illegal policy in general for the above reasons, in addition to an illegal act by Dembe, in which Plaintiff had no appellate procedure, the crucial thing in establishing absolute immunity for alleged judges.

24.   Plaintiff was however unaware of the bogus warrant when it was issued. On Monday,  June 18th, at about 4 p.m., Plaintiff saw Ford had just called his phone. Only Austin was given the number to that phone, so Plaintiff knew Ford spoke to him. Ford did not leave a message however, the whole thing they got going there is one big red flag, but the fact that  he didn't leave a message was another small one because anyone with

anything legitimate would. Nothing in writing, no notice of anything, no voice mails that can be saved and presented, it's what Ford does, it's what they do, it's their practice and custom.

25.   The next day on June 19th, Plaintiff called Ford, and Ford said he was calling about the "missed appointment", before Plaintiff can say anything he says, "oh I got your message that you needed to reschedule". Plaintiff asked why would you call it a missed appointment when it was anything but, Ford said "my fault" and "don't worry about it". Plaintiff asked about the rescheduling in which Plaintiff thought could be a legitimate reason why Ford called, although Ford's prior behavior and current on the call speaks for itself and Plaintiff has to assume otherwise, nonetheless Plaintiff asked about it. Ford told Plaintiff he wanted Plaintiff to come in to get a new evaluation date. Plaintiff said why would he need to come in for the date, he has no plans to come in before the required time of July 12th, and he needs it in writing to begin with, it can be sent. Ford said I don't know I was just thinking it would be easier but we can talk about on your next visit. Ford never mentioned the bogus warrant in the conversation.

26.   The next day, June 20th is when Plaintiff got wind of the warrant- on his own. He placed a call to Boyd, who of course did not pick up. He left a message demanding the bogus warrant be removed, the underlying facts, a p/o change request. He did the same with Austin. In late June, an attorney Patrick Link attempts to stop the injustice. Ford of course is not picking up the phone, not returning messages. Finally, Ford decided to communicate with Link. Link said Ford refused to tell him why the warrant was issued, give him a summary sheet anything in writing.  He said Ford did speak about an evaluation date rescheduling and that he wanted us to come to the office on Arch street to

take the evaluation. Plaintiff told Link that doesn't make any sense because the evaluations are done at CJC not Arch St.

To verify this, Plaintiff called a director's office of CJC and explained to them the problem, they contacted the evaluation unit and made supervisor Politano get on the phone. Plaintiff explained the situation and asked if there was indeed one scheduled and when. She was again rude and loud, combative, and acted as if she doesn't have to talk to people asking questions about their appointments, was extremely uncooperative. It was clear she had talked to Ford and was awaiting the call. It was also clear Ford told Link that knowing Plaintiff would investigate Ford's behavior. Plaintiff spoke with Link who ultimately clarified that Ford is claiming for Plaintiff and Link to come to Arch St, to reschedule the evaluation, not to go to the evaluation, he says he is going to remove the bogus warrant.

27. On July 3rd, Plaintiff and Link go into the building, Ford tells us he is going to take the bogus warrant off, requests Plaintiff come into the booth. Plaintiff makes Link come into the booth to be a witness to whatever Ford claims. Ford did not speak on the bogus warrant, summary sheet or anything in writing, nothing about anything he did. Instead he told both of us, that he will have a new date for the evaluation within 10 days, Boyd was on vacation that week. Ford said he will give the date both of us in writing. Link is a witness to this. We both said ok and left. The evaluation would have been the same as above, if Plaintiff passes he stays in the unit with Ford, if he fails it he stays in the unit with Ford, as that problem never got solved. Ford had given Plaintiff an August 7th next report date.

24

28. Time goes on, days turn into weeks, Plaintiff hears nothing. On August 2nd, 2012, at about 10:30 a.m., Plaintiff opens up a letter from Ford, instead of anything relating to the above, it is a**, "Gagnon II Hearing Summary" violation of probation** notice, for a hearing **23 hours** away, on August 3rd at 9:00 a.m. He gave Plaintiff **23 hours notice** of a bogus vop hearing, which entails the strongest of liberty interests. Plaintiff did an investigation and learned that Ford turned right around on July 3rd, after our conversation, and requested the vop hearing, which was either granted the 3rd, or fell over to July 5th (because of holiday). First, Ford continues his illegal and rights violating behavior after telling Plaintiff and Link about an evaluation then turns right around after we walk out and schedules a bogus vop hearing.

Second, he knew about it July 5th at the latest, but chose to give Plaintiff 23 hours notice, trying to get Plaintiff to miss it because an automatic warrant is issued. The mailing date on the envelope is July 30th, 2012, but their mail system is such that there is a delay when mailing something, it goes to another department and there is normally a 3-7 day delay from the time it is mailed out. In prior years, it was up to 10 days as Plaintiff had gotten something that wasn't time sensitive but still asked, that's how he knows. So Ford timed it so that Plaintiff would not receive the notice until August 4th at the minimum, but they must have been on a good schedule that day, it must have gotten out with only minor delay and the post office happened not to be backlogged. It was only by that good fortune that it was received on August 2nd, and it was also the same that Plaintiff decided to open it immediately. Just in terms of the no notice of the hearing, a violation of due process, and others, would be an understatement, and a clear violation of 40 year old long standing case law, which will appear later on.

29. Not only did he attempt to have Victim miss the hearing, he obviously never gave him a hearing summary sheet as well. This again is more than major violation of due process and others, and a clear violation of 40 year old long standing case law,which will appear later on.  In sum, Plaintiff was not given in writing which is the law, what he was accused of doing wrong, he was never even orally told, never even told about the hearing and by chance happened to find out by luck 23 hours before.

30. Plaintiff obviously attempted to reschedule the bogus hearing, even that had to be a hard time, but did, the new date was August 14th. On August 2nd, Plaintiff filed a grievance in writing with Deputy Chief Charles Hoyt and Chief Robert Malvesuto, which contained  the same detailed things with Boyd and Ford, plus the addition of everything afterwards, including the bogus warrant, no notice of hearing, no summary sheet, and much more. Plaintiff also called Hoyt who never picked up or returned the call. Both did nothing at all, Hoyt actually, as what will be explained, told Boyd about Plaintiff recounting Boyd is a liar. No accountability at all. Both failed to supervise, discipline, control, train all employees like Ford, Boyd, Austin, and acted with  deliberate indifference to the needs of Plaintiff and other victims. Boyd, Austin, Hoyt, and Malvestuto also participated in violating plaintiffs rights, directed others to violate them, all had knowledge of and acquiesced, approved, ratified, Ford and whichever subordinates were below them's violations. All four have  established and maintained a policy, practice or custom  of this which directly caused Plaintiff's harm.

   Malvesuto has policymaking authority given to him. See attached. It reads:

The Chief's office facilitates uniform application of work rules, enhanced communication within the Department regarding policy and procedure, implementation of meaningful performance standards and evaluations and issues related to merit based evaluations, accountability and labor relations.

Malvesuto occupies a sufficiently high policymaking role to create liability on the part of the City. Also, like everything else, there is Monell claim, for the City for failing to, train, discipline, and control and being deliberate indifferent to the needs for all above and below.

31. On August 7th, 2012, Plaintiff reported to the visit, Ford asks, "Do you have any questions" and Plaintiff says "No, you actions speak for themselves". Ford immediately goes on a tirade, starts yelling, "I'm going to put you in jail", becoming verbally abusive. Plaintiff said I'm calling Boyd and leaves the booth, Ford says if you leave the booth "I'm calling the warrant unit up". Plaintiff tells the people behind the glass to get Boyd out here. Ford is on the phone with a person behind the glass threatening to again call the warrant team up. Once they confirmed Boyd was coming out, Plaintiff went back into the booth. Plaintiff demands the hearing summary sheet for the bogus hearing, Ford says "you're not getting it". I tell him he can't do that, he could care less. Boyd comes in and doesn't do anything about anything. Instead he angrily asks you wrote a letter to Hoyt didn't you?

Instead of referencing and acting on the 50 issues of disgraceful and illegal behavior the grievance complained, Boyd wanted to talk about the fact it made mention he is a proven liar. In other words, deputy chief Hoyt is sitting back playing a game, like Austin, Boyd and Ford, instead of controlling, supervising, training, disciplining, acting on any of the 50 illegal acts he tells Boyd hey guess what I got a letter from a victim, he said you were a liar. Plaintiff demanded the hearing sheet from Boyd, he said ask for it at the hearing. Plaintiff said you can't do that, he was suppose to long have it. Boyd could care less.

Ford signs Plaintiff's card as 8-14-12 "vop" as the next reporting date. Plaintiff asked for an actual reporting date, not the hearing, said that is not an office visit, and it should be a normal date, Ford refused to give Plaintiff a next actual reporting date for a visit.

32. On August 14th, Plaintiff shows up to the bogus vop hearing. He sees a probation official John Harrison not Ford, Plaintiff has to plead with Harrison to give him a copy of the hearing summary, finally he does. He refuses to give Plaintiff any evidence with it like they were long suppose to do. Ford did shows up and never offered Plaintiff anything. He did not know Harrison gave him partial requirements, he fully intended to have that hearing without saying a word prior, let alone a summary sheet, let alone Plaintiff seeing any "evidence". The judge in the matter, who was not Dembe, had to postpone to counsel time issue. However, Ford was standing on the side, protesting, saying wait a minute, is there any way we can get this done, waiving his arms, making frustrating noises. Plaintiff was watching his body language and aura it was like a dog trying to be tugged away from a park. He virtually was begging for a chance to complete his final piece in his retaliation puzzle.

After his latest  little mini tantrum didn't work, Ford finally started to exit, Plaintiff in front an attorney, he proactively asked Ford about the next appointment date, because he did not have one. Ford signed the card for the 9-26-12 hearing, which he now was calling status. This meaning, Plaintiff again had no true reporting time for an office visit.

33. Ford had already prepared and gotten bogus warrant and knew the violation report had to be phony also, and it sure was. In describing the first meeting with Plaintiff he mentions none of his above behavior at all, that Boyd was called and changed the time

28

from 1 week to 1 month, nothing. Instead he lied stating that Plaintiff proactively brought up the evaluation, despite not mention it in the prior seven years one time, said he did not speak about wanting to do it, had no plans. Lied about the entire meeting and/or left out what actually happened which is equivalent to a lie. He then describes Plaintiff's grievance  call to Boyd the same day about Ford's disturbing behavior, he was going to lock Plaintiff up,  a p/o change, the report time, the evaluation situation, and ten other things as Plaintiff complained that Ford was "not friendly". If anyone accesses Plaintiff's grievance to Boyd that as Ford not being "friendly" then they either have rocks in their head, or they should be committed to a mental institution- on the spot.

He states Plaintiff was told about the evaluation on June 7th- but that's it, nothing else at all, no truth, no facts. No mention about the illogical scenario issue of it and Plaintiff's issue with it, that he planned on giving Plaintiff 19 hours notice, he had it from May 11th, that Plaintiff demanded a postponement, that the form says a person can reschedule one time, that he agreed to it, that he said to leave a message, that Plaintiff called and left a message. Nothing, just more lies on the phony violation report prepared by Ford.

He states that Politano faxed him information that said Plaintiff called and "the last thing the offender said to her was that he was not coming into his evaluation. The offender never did report". Once again the jury had long decided, Plaintiff knew to expect that. Nothing upon what Plaintiff said to Politano above  appears in the bogus summary sheet, including the important fact that Plaintiff called to reschedule the appointment for numerous valid reasons. What a joke. Referencing when Ford told Link to meet him for a unit evaluation, it states Plaintiff called Politano in early July, but doesn't mention anything else, the background, the reason, what was asked. Politano conspired with Ford

to violate Plaintiff's rights and also engaged in specific direct behavior that contributed to Plaintiff's harm and rights being violated.

Nowhere on the bogus violation sheet does it mention agreement to reschedule, the problem of Ford's purported procedure of it, Plaintiff's voicemail to reschedule, and more. Nothing. Ford doesn't mention Plaintiff's May 31st call to Austin attempting to discuss Ford's behavior, mentions the June 11th to Austin call but doesn't mention any of the hundred issues brought up in the grievance, that the message that he had left on may 31st, ignored, nothing, only that Plaintiff will get a lawyer involved if needed- which he can do. Ford did the same thing with the June 14th call, falsified it then in regards to the message, did the same as above, this time it was Plaintiff "generally complaining" about the system and things. Again, either rocks in the head or he needs serious help now.  He states on it Plaintiff called Boyd after he learned about the bogus warrant on June 20th, but yet again did not mention any of the hundred issues in the grievance, instead just stating if Plaintiff continues to have his rights violated the obvious will happen which were we are at now. Likewise for the June 20th call with Austin, mentions nothing other than he left a message.

He also put in the "violation history" of the bogus sheet, that Plaintiff has appeared in front Dembe on "1 occasion for a Violation Of Probation Hearing", and at the "last violation  hearing in 2006, the result was probation/parole continued. As Ford knows, it was a status hearing not a vop. Yet, he intentionally put false information in hopes of getting that final piece of his retaliation puzzle. That status hearing was only held because of Dembe's best friend Swift called it and tried to claim there was no merit on the appeal that she was running to the ground for her friend, despite three counts not existing and

never applying, another count that never could apply, and two remaining counts that were invalid because of both the overall conviction being invalid, ineffective assistance of counsel, and ten other reasons. The City has a custom and practice of letting Ford and other excuses of probation officers do it.

Also, the violation sheet says, "Gagnon II Hearing Summary", it was after Ford issued a bogus violation of probation warrant- for which  Gagnon I would take place, was listed as a vop hearing, Ford wrote "vop" on the report card, and more, but claimed to Plaintiff it was only a status hearing. A person has the right to not only get proper notice of a hearing and violation sheet well ahead of time, all of the evidence  against well ahead of time, but also the exactly the type of hearing/proceeding taking place, if not it is a due process violation.

34.  On September 26th, Plaintiff showed up for the vop. He was immediately informed it was canceled, the court crier said "your p/o is mad at you".  Plaintiff asked why in the world was that. He said I don't know, but he thinks it is because you appealed your case. Defendant said he can appeal anything he wants, it was on appeal on the prior dates as well, and he did not cancel this hearing, he showed up. At that point Plaintiff called Ford who did not answer. Plaintiff left a message stating that he was there, and will be waiting for him, or to call him back. Defendant waited 90 minutes, neither Ford or anyone from probation was there or ever showed up. Ford knew he signed Plaintiff card as that date, **there at the courtroom**. Plaintiff left and, Ford never contacted him with further instructions.

35.   On October 10th, Plaintiff  received an "arrest warrant warning" from Ford, that was created on September 28th, 2012 and a mail date of  October 2nd. It states "you have

failed to report to your probationer officer as required" That obviously was not correct, Plaintiff did report to the scheduled place and time he was given, that Ford insisted on, but Ford did not show up. The form also states "The arrest warrant will be issued on October 10th, 2012". Plaintiff checked with CJC, Ford actually sent in a warrant request on October 6th, but was declined. The standard operating procedure of the probation department is it has to be two missed office visits before any type of action can be requested, here it was not one, and intentional just like everything else.

Plaintiff spoke with Ford the same day, the 10th, and Ford proclaimed Plaintiff had until the 25th to come in. Plaintiff told Ford to send it in writing him or an attorney Ford refused and hung up the phone. Plaintiff was downtown on the 24th, called in to see if Ford's story changed, sure enough it did, Ford claimed he was busy, Plaintiff could not come in that day. Ford said he changed it to the 25th. Just Ford doing what he does, more retaliatory harrassment.

36. On October 25th, he came in and Ford declared he was going to request the vop hearing again, although he didn't say why. He also claimed he didn't know why the hearing was canceled. He also claimed he never told that to the court crier, "don't believe everything you hear", Plaintiff believed it however. He was implying it was Plaintiff's fault without referencing an appeal. He also hit Plaintiff with another unwarranted urine. Plaintiff has already explained the distinction of a normal situation with this, those same assertions which they will attempt to plead here, will be pretextual here. Plaintiff passed the others he gave.

Additionally, the drug test is not just about seeing if somebody is clean, the person has to go to another floor which is packed with 75-125 people in a small area, and the

process takes no less than 90-120 minutes in a stuffy area. Ford obviously knows that and that malicious intent is also part of it. The person must fill the cup or it's a violation, if you don't fill it or can't go to the bathroom, you cannot leave the building, if they close down for the day, you are detained and brought to jail until a hearing, so there is also a liberty interest as well.

37. The next month, on November 29th, Plaintiff reported Ford told him he put in another request for the bogus violation hearing on November 20th, 2012, although he wouldn't tell Plaintff what the "official" reason was for. Plaintiff reported in early January, and asked Ford about the status of the hearing, Ford didn't answer at first, Plaintiff asked him again and Ford dispiritingly said he didn't hear back yet, and in a tone that was barely audible. He clearly looked dejected when speaking about it. Plaintiff reported in early February and asked the same, Ford said he there has been no change in the status. In March he was not there and Plaintiff did not inquire. On April 11th, Plaintiff reported and inquired about the status. Ford stated that they denied the request for the hearing, because it lacked both merit and also substance in terms of a violation. Put differently, the false unsubstantiated one-way accusations would not amount to any violation if assumed true, which they were not. Ford specifically declared he was not going to request it any further. He had found out that it was because of him and his behavior that his bogus hearing was canceled, not because of any appeal. Again, he put it in on November 20th, and then was informed that it was not going to be rescheduled based on those reasons, he did not send in another  request during this entire time, this has been confirmed.

38. Plaintiff reported on May 16th, Ford did not mention anything to Plaintiff about anything.

39. While the above was going on Plaintiff in October, after his grievance was ignored by the probation department, went to FDJ administration. He first spoke to a high ranking official who stated he would not be the correct person to speak with that he did not oversee that department. As it was discovered later, they were the exact person for this. But, Plaintiff had to move on in the deaf ear grievance process. In November he spoke to another high ranking person in the FDJ. He did state he had authority to do something but of course brushed it off, said he was busy and suggested to write a letter a person in a specific department that handles city employees. Note with the first person, the question was asked first if they had oversight authority which they claimed they didn't, so they did not know the specific information because they didn't get the grievance, they didn't know who it was about so they could not have told anybody. Likewise with the second person, they did not know it was about Ford.

40. In March, Plaintiff tried to contact the person he was given to bring the grievance to, he didn't get them but instead got a person higher than them. They confirmed that in fact that person can handle grievances and that they could address Plaintiff's. In very late April, Plaintiff filed an extremely detailed grievance in writing, filled with an in depth factual history and included exhibits. In short, they knew everything Ford did from the first second on. On May 6th, Plaintiff spoke with the same person he did before, and they confirmed that they have it, and just gave it to person to investigate, which happened to be one of the people that said they have no authority to handle it. On May 10th, after he no doubt was informed of the complaint against him, Ford turned around and requested the vop hearing again, and he didn't say anything to Plaintiff on May 16th when he saw him.

In early June, Ford mentioned this to Plaintiff over the phone, and Plaintiff has written proof of the May 10th request of a vop hearing. So Ford puts in a request for the canceled bogus vop hearing on November 20th, 2012, waits, and finds out that it got canceled because lack of merit and substance, and that he is not getting another one. He conceded this to Plaintiff on April 16th. He also explicitly declared that he was not going to put in another request, based on it being an exercise of futility given the fact that it got canceled, subsequent request was denied and what they told him why. Plaintiff has written proof that from November 20th, 2012 to May 9th, 2012 he in fact did not- for that clear reason.

So Ford is informed of the grievance most likely May 8th or 9th or by it, and retaliates on May 10th. Plaintiff would not surprised if it was May 10th, and he dropped everything he was doing to do it within hours or even minutes. He would not be shocked at all. Plaintiff has to wonder if Ford also put in another warrant request, Plaintiff at this point does not have knowledge but would not be shocked if he found that at the future.

41. Once again, all the illegal actions described above happened while Plaintiff was on probation and serving a sentence on statutes that didn't exist making everything double illegal and unconstitutional.

## 42. **Victim Impact Statement**

Victim has suffered severe loss of liberty, due process, emotional and psychological injuries, anger, rage, personal humiliation, public embarrassment, fright, horror, grief, ongoing mental anguish and harm, anxiety, chagrin, mortification, worry, nausea, nightmares, loss of trust, fear, loss of enjoyment of life, impairment of reputation and a lot more. Even though the offenders knew what they were doing was illegal, they fully

intended to commit the acts and chose to do it anyway. The offenders' illegal actions

extreme and outrageous, caused severe emotional distress, and just like all their other

crimes, they acted with intention to cause it. Just for the one entire year of imprisonment

on statutes that didn't exist the amount of injuries Victim suffered is immeasurable, so is

the loss of liberty, due process and many others. Then we factor in all the bad acts

continuing to this day from Dembe and the City makes it worse. Plaintiff is still suffering

adverse affects.

43. **Clearly Established Rights**

Although revocation of probation is not part of the criminal prosecution, it entails the

loss of liberty, revocation of probation is a serious deprivation,  and due process must

therefore be accorded. Commonwealth v. Davis, 336 A.2d 616 (Pa. Super 1975).

Commonwealth. v. Ferguson, 761 A. 2d 613, 617 (Pa. Super. 2000); Gagnon v. Scarpelli,

411 U.S. 778, 781-82 (1973); Morrissey v. Brewer, 408 U.S. 471, 481-82 (1972).

Due process safeguards means at minimum:

(1) written notice of the claimed violations of probation or parole; (2) disclosure to the
probationer or parolee of evidence against him; (3) opportunity to be heard in person and
to present witnesses and documentary evidence; (4) the right to confront and cross-
examine adverse witnesses, unless the hearing officer specifically finds good cause for
not allowing confrontation; (5) a neutral and detached hearing body such as a traditional
parole board, members of which need not be judicial officers or lawyers; and (6) a written
statement by the factfinders as to the evidence relied on and reasons for revoking
probation or parole.

Commonwealth v. Allshouse, 969 A.2d 1236, 1240 (Pa. Super. 2009);  (citing Gagnon v.

Scarpelli, 411 U.S. at 786.

An essential component of these due process rights is that individuals be given fair

warning of acts which may lead to revocation. United States v. Simmons, 812 F.2d 561,

565 (9th Cir.1987); United States v. Dane, 570 F. 2d 840, 843 (1977); US v. Gallo, 20 F.

3d  7, 11 (1st Cir. 1994) (fair warning of conduct that may result in revocation is an integral part of due process in such situations.

Here it was mandatory since five decades ago that written notice of each alleged violation and an adequate opportunity to prepare is required prior to hearing. Champion v. Com. Board Probation and Parole, 399 A.2d 447 (Pa. Cmwlth. 1979). Probation/parole officer must strictly comply with requirement that notice of alleged violations must be writing. Commonwealth v. Davis, 418 A.2d 669 (Pa. Super 1980). Requirement of written notice is a simple and straight forward requirement that the probation officer must comply. Commonwealth v. Harris, 380 A.2d 471 (Pa. Super. 1977). With respect to right to receive written notice of alleged probation violation, actual notice by the way of oral advice or existence of a prior revocation proceeding was irrelevant. Commonwealth v. Parker, 378 A.2d 970 (Pa. Super 1977). However, here to form a point, it was so bad Plaintiff had no idea of anything, Ford put a bogus warrant out without saying a word let alone in writing, tried to notify Plaintiff of the hearing afterwards, all that time beforehand never even mentioned there was one, never said anything about violations let alone in writing, Ford didn't even  give Plaintiff the notice at the hearing.

Again, fundamental fairness is a key issue in a violation hearing. United States v. Hamilton, 708 F.2d 1412, 1414 (9th Cir.1983). Additionally it is well established revocation is limited to violations of the criminal law and specific conditions of probation or parole to even begin with. Knight v. Com., Board of Probation and Parole, 510 A.2d 402 (Pa. Cmwlth. 1986);  U.S. v. Simmons, 812 F.2d 561 (9th Cir. 1987); Commonwealth v. Carver, 923 A.2d 495, 498-99  (Pa. Super. 2007).

44. The offenders are going to attempt to argue that offender Ford and possibly other offenders in that building have absolute immunity, and that does and will fail as absolute immunity does not apply to:  Probation officer conspiring to imprison plaintiff on bogus charges. Harper v. Jeffries, 808 F.2d 281 (3d Cir. 1986); Probation officer accused of preparing bogus violation report and warrant. Scotto v. Alemas, 143 F.3d 105 (2d Cir. 1998); Parole officers investigating parole violations and recommending initiation of parole revocation proceedings.  Swift v. California, 384 F.3d 1184 (9th Cir. 2004); Ray v. Pickett, 734 F.2d 370, 374 (8th Cir. 1984) ("we do not find that the function of a probation officer  in submitting a parole violation report is either adjudicatory or prosecutorial in nature); To probation officer who **mistakenly** caused the arrest and incarceration of a person on probation. Galvan v. Garmon, 710 F.2d 214 (5th Cir. 1983). See also Malley v. Briggs, 475 U.S. 335, 341 (1986) (rejecting police officer's argument that absolute immunity applies when seeking an arrest warrant instead of qualified immunity); Gray v. Poole, 275 F.3d 1113 (D.C. Cir. 2002) (finding social worker's recommendation that county initiate a neglect action entitled to qualified immunity). Of course in the alternative, they attempt to argue that they did not know what they were doing when they intentionally robbed Plaintiff of his constitutional rights 100 different times, just a mistake that's it. Plaintiff  has already demonstrated the inapplicability any immunity to the offenders, the unlawfulness was apparent. If any offender is given any immunity then Plaintiff will be filing an interlocutory appeal and fully pursuing it immediately.

45. Dembe has no absolute immunity for her illegal acts, if she does because she is a policymaker the City is liable for them, also these acts amount to  a widespread practice

within the City and its First Judicial District, amounting to a well-settled custom. Both are liable however. If Dembe did have immunity for everything else, she would not for issuing the bogus retaliatory warrant which has no appellate procedure on it. In any event injunctive relief can be issued against her, if that is incorrectly ruled not available, the declaratory.

46. Prospective relief can be issued in this matter in official capacity without a Monell showing as Plaintiff will expound on later. Also prospective relief can be issued directly from the Fourteenth Amendment as well. Damages are available for all of Plaintiff's private cause of action under the PA Constitution. Plaintiff does recognize this presents a novel question of state law and agrees that after Dembe's claims are disposed of in Plaintiff's favor, it should be remanded to Common Pleas,

47. Plaintiff will unmercifully be pursuing this case right to the end, he will exhaust all appeals, will be filing a response to everything, every time, as no one will get any type of a break. He needs the full amount of time, 14 days, allotted to him to respond to motions and 21 days for anything else.

48. When, not if, but when, if would be in another case, when there is retaliation, which will be instantly the same day they are notified of this, if not minutes, a suit will be filed within days, not years, months, weeks, a few days. It does matter how minor it will be filed practically the next business day, as the draft is already done, the only thing Plaintiff needs to do is fill in the new facts and he is ready to roll. Ford is the king of retaliators and he will take action within minutes. Plaintiff expects somewhere between 3-10 subsequent suits, Plaintiff will not let anything build up, he is filing immediately and everyone is going to a jury. Plaintiff will unmercifully pursue any retaliation

If Plaintiff spends one minute in handcuffs, behind bars, loss of freedom the suit will jump to one million, if anything more than a short period of time then five million. Plaintiff will be notifying the offenders as soon as this suit is docketed, so they cannot attempt to argue in subsequent suits the City did not tell them until a certain date, they didn't know, they would have taken the meritless and completely illegal actions anyway etc. That won't be happening, they will know long before their offending employer is served and whenever they claim to notify them. There is a preliminary injunction\ request against Ford and Boyd because it could help a court from having more cases. Any motion to strike anything will be vigorously opposed and appealed.

## DEMAND FOR RELIEF

(a) A jury trial on all issues

(b) Punitive damages against every offender individually, except offender City, in the amount of 300,000

(c) Compensatory damages against every offender individually, in the amount of 300,000 dollars

(c) (1) Compensatory damages specifically for Victim's 1 year illegal imprisonment which was at the beginning of the continuing illegal and bad act practice, in the amount of 1,000,000 against offender Dembe and City. Everything else would go to the amount above.

(c) (2) Nominal damages of 1 dollar against Dembe

(d) A declaration that the acts and omissions described herein violated plaintiff's rights under the Constitutions and laws of the United States;

40

(e) (1) Preliminary Injunction removing Ford and Boyd from Plaintiff's case, this will be done without a hearing as there is no need to have one for this, declaration of the same

(e) (2) Permanent injunction removing Ford and Boyd from Plaintiff's case, declaration of the same

(f) Permanent injunction barring Dembe from handling any of Victim's matters including, warrant requests, opinions, resentencing, any type of proceeding, declaration of the same in an injunction is not available

(g) Declaration that Plaintiff's three convictions of phantom 18 § 3933 are illegal and should be vacated; either by state court or when it reaches a federal habeus corpus, which it should by 2014 but nte this doesn't have to be called in question, there is no "question" to call

(h) Permanent injunction forcing the Commonwealth, FDJ, and/or probation department to give Plaintiff at least 14 days notice plus 3 day mail time, for a total of 17 days of any hearing, proceeding, appointment, etc that is taking place, to describe it accurately in detail as to exactly what type of proceeding it is, also be given at least 17 days notice of the hearing violation summary sheet along with all evidence against Plaintiff, declarations of the same.

(i) Permanent injunction forcing any warrant request from adult probation/parole against Plaintiff to go to two judges, a first one , then a supervising judge, neither which are Dembe, a declaration of the same.

(j) Plaintiff's costs in this suit

(k) Any additional relief this court deems just, proper, and equitable.

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of a perjury that the foregoing is true and correct.

Executed at Philadelphia, Pennsylvania

Jason Collura, pro se
Box 934
Philadelphia, PA 19105

Dated: July 10th, 2013

# Philadelphia Adult Probation and Parole Department
## First Judicial District of Pennsylvania
### Criminal Trial Division
### 1401 Arch Street
### Philadelphia, PA 19102
### Information: 215-683-1000
### Hours of Operation:
### Monday - Friday, 9 am - 5
### First Wednesday Each Month, 9 am - 7 pm

The Adult Probation and Parole Department (APPD) serves as the community corrections agency within the Philadelphia Criminal Justice System. APPD staff supervises all probation and/or paroled offenders who receive a county or probationary sentence. Staff improves and maintains public safety by providing services to the courts, protecting the community, providing opportunities to offenders to improve their lives, and assisting victims. Staff also supervises offenders who were convicted in other jurisdictions but live in Philadelphia. Overall, APPD supervises approximately 49,000 offenders and 62,000 cases on an ongoing basis.

## Mission Statement

The mission of the Philadelphia Adult Probation and Parole Department is to protect the community by intervening in the lives of offenders. We hold them accountable by enforcing the orders of the Court. Through a balance of enforcement and treatment strategies, we afford offenders the opportunity to become productive, law-abiding citizens. APPD provides all possible assistance to the victims of the offenders we supervise.

## Vision Statement

To become a leading organization in the field of community supervision by implementing evidence-based strategies.

## DEPARTMENTAL ORGANIZATION

The Adult Probation and Parole Department is under the administration of Chief Probation and Parole Officer Robert Malvestuto who is responsible for assuring that the Department's overall mission and goals are being met. All divisions report directly to him.

## Chief Probation/Parole Officer

| | | |
|---|---|---|
| Robert J. Malvestuto | 215-683-1278 (voice) | 215-683-1280 (fax) |
| Judy Wallace, Secretary | 215-683-1279 (voice) | |

**Personnel:** Counseling and advice, record maintenance, information dissemination, and other personnel services are offered through the office of the Chief.

**Personnel Issues:** The Chief's office facilitates uniform application of work rules, enhanced communication within the Department regarding policy and procedure, implementation of meaningful performance standards and evaluations and issues related to merit based evaluations, accountability and labor relations.

**Research:** Research and development provides departmental support for independent research activities and meets with local university representatives to generate interest in studying available data related to crime and recidivism. A new risk tool is being developed using advanced data mining techniques. The research department recently completed a one year evaluation of an experimental protocol for supervising low risk offenders. Additionally, in the past year the research team completed a review of the Department's specialized units which focused on ways to improve the efficiency and effectives of those units. The research department is also responsible for analysis of the Weapons Related Injury Surveillance System data which tracks all gunshot victims in the city.

## About the Chief: Robert Malvestuto

**Website Edits (03/09)**

Clerk of Courts
601 Market Street
Philadelphia, PA 19106

Enclosed find a copy of Plaintiff's Complaint and payment. The summonses can be mailed to the address on the complaint. The clerk's office has a mistaken practice that whenever a person files a complaint, as long as it is in the same category, i.e. civil rights, etc. as the last one he filed even though it is completely unconnected, it is assigned to the same judge as before or the last judge. So in other words, the practice is for an example if a pro se litigant filed a civil rights case and it got assigned to a judge,, got disposed of, then 10 years later he filed another one, that has nothing at all to do with the first, they would get the same judge as 10 years prior, because it was the same litigant and the same class of action. This practice is very mistaken because complaints that are unconnected to a previous filing should be randomly assigned to the next judge.

This case is completely unconnected to any other case Plaintiff has had. More importantly, Plaintiff will not go in front of McLaughilin or DuBois, it would be a conflict of interest based on actions, complaints, and recusals, against them which are currently pending. Also Pratter has another unconnected matter of Plaintiffs and it would be prejudicial to give them this case for numerous obvious reasons. That leaves more than 35 current judges. Another judge must be assigned to this case, whether it needs to go to the chief judge for reassignment or whatever the case is, unequivocally this must go to another judge. If it does not, then that would mean I have to write the chief judge, file things, and make a big deal about it when this could easily be avoided tp begin with.

Jason Collura
Box 934
Philadelphia, PA 19105