## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Jason Collura        :

      Plaintiff        :      Civil Action

    v.                No. 13-4066

Nicholas James Ford, Pamela Pryor Dembe,:
Mary Politano, Steffen Boyd, Steven Austin,
Charles Hoyt,  Robert J. Malvesuto     :
          Defendants

## PLAINTIFF'S BRIEF/MOTION/PETITION/REPLY IN OPPOSITION TO FORD'S BRIEF IN SUPPORT MOTION TO SET ASIDE VALID JUDGMENT

First off, any filing from them is invalid on its face, since their status and appearance is

invalid it is a **conflict of interest** as relayed prior and will pursued heavily.  The name on the

**case is the above caption not what appears** on their unnecessary filing which is only a bad

faith second chance and attempt to find a better excuse for defaulting and also a second crack at

thinking of better sounding meritless non-defenses. These issue was **already** well briefed[1], and it

is prejudicial and unfair to give them a second chance to do the above, regardless whether or not

Plaintiff has to file what he already filed twice or not. It doesn't make any sense they willfully

defaulted and they have no defenses to anything, they are dead guilty on everything fact that

appeared. As set forth twice before, now a third time, they willfully defaulted, there was no

"error", they are full of culpable conduct, they have no defenses let alone a complete one.

---

[1] Plaintiff filed his Rule 55b motion in December, fully addressing, in turn they filed their response with their attempted claims and arguments with that, including that "administrative error" was the excuse they willfully defaulted. In response, Plantiff filed opposition to that with again fully addressing that, and every other assertion they made.

## I. Counter Identification Of Claims Against The Above

Unlike Jeffrey L. Scott complains, is not difficult, it rather simple because the complaint has precise facts, offenders, place, time, and set forth claims that are in relation to that. It even goes as far as to eliminate any phony or even real confusion, by mentioning the certain claim[s] in actual conjunction with the facts.  The complaint states a number of valid federal and states claims for the crimes against Victim, the latter which is accurately relayed in a proper detailed fashion. The only rambling occurs from whatever that filing that he calls a brief in support of false, misleading and meritless contents. He then states that he presumes that every claim is against above six, which is really something given the fact that he had the case in July, with one defendant, and he very easily put forth only one frivolous defense to one claim (even though there was no "clarification done for him).

Their "facts" in their fantasy world, are universe, away from the actual ones. Plaintiff was on probation for years for a statute that did not exist, not contends, **fact**. In April of 2012, Plaintiff **discovered his** probation officer **had changed**, it was now what Plaintiff said before Ford. The change was done in February of 2012, just a few days after Maguire got served with the suit. Plaintiff knew there was going to be punishment, so he intentionally served Maguire on February 15th, three days after he reported, to give Plaintiff a two month jump. The degree of punishment was shocking that day in April, Maguire really outdid himself this time. In the real world Boyd is Ford's supervisor, and Austin is his, as well as Hoyt and Malevesuto, given their roles, were their supervisors. Finally, Politano is "**an employee of probation, not only that, the same unit as Ford. Her supervisor is Boyd"** and during this time she was down to the **evaluation unit** which is **in the basement** of CJC. Complaint. at 19. Not an employee of  CJC, or any "clinic". Next, Scott's delusion continues as he attempts to putforth what the facts and

1

claims would be in the fantasy world. Plaintiff's claims here concern, illegal retaliation, a total

lack of due process numerous times, falsified arrest warrant requests and probation sheets, a

bogus arrest warrant,  as well as a hundred other crimes against Victim. Plaintiff has less than

zero respect, so nothing can be lost, they are exactly what Plaintiff said they are, and they have

no business being here to begin with. It continues in their interpretation of Plaintiff's claims, the

real claims appear in count 2 of the complaint, including retaliation for indisputable exercise of

his right to free speech[2]

## II. Lack Of Meritorious Defenses For The Above

This test requires more than frivolous summary assertions of a "meritorious defense", as

here. Instead it requires when the script in "the defendant's answer, if established on trial would

constitute a complete defense to the action. United States v. $55,518.05 in U.S. Currency, 728

F.2d 192, 195 (3d Cir. 1984).  An affirmative defense strictly involves the **complaint being true.**

Sterten v. Option 1 Mortgage, 546 F.3d 278, 284 n.9 (3d Cir. 2008) (affirmative defense as "[a]

matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to

it).[3] As already set forth twice prior, they don't have and defenses, let alone complete defenses,

after admitting to the facts and allegations of the complaint.

## A. There Is No Defense For The Claims in Official Capacity, Nor Individually

This is the first of many frivolous and hopeless claims by him. Here they invent claims so

they can pretend to have a defense to them. He states the claim against the above are in

---

[2]  Their purported legal conclusions are discarded as well. Fifth Amendment equal protection claims, concern
Fourteenth Amendment equal protection claim that has been "reverse-incorporated" into the Fifth Amendment's Due
Process Clause. See Bolling v. Sharpe, 347 U.S. 497, 499-500 (1954); Fernandez-Bernal v. Attorney
Gen., 257 F.3d1304, 1312 (11th Cir.2001) ("[T]he Due Process Clause of the Fifth Amendment incorporates the
guarantees of equal protection.").
[3] "An assertion of facts and arguments that, **if true**, will defeat the Plaintiffs or prosecution's claim even if all of the
**allegations in the Complaint are true.** Black's Law Dictionary, 451 (8th Ed. 2004). Boldstar Technical,L.L.C. v.
Home Depot, Inc., 517 F. Supp. 2d 1283, 1291 (S.D. Fla. 2007) (affirmative defense is established when a defendant
**admits to the essential facts of the complaint,** "but sets forth other facts in justification or avoidance")

individual and official capacity but **they don't state there is no monetary claims on the complaint against the above in their official capacity.** Opp at 6. Instead he goes on to purport a "defense" on his made up claims, even though it is apparent on the face all the damages on the above are individually. [4] Plaintiff has had more, more than enough of Scotts and Nudelman's act, and he vigorously pursue this type of Rule 11 violating conduct from now on including any future suit. The complaint lists prospective relief, obviously we know it has to be official capacity for that to occur.[5] As we also know, this is not treated as a suit against the government.[6] Whether or not it is a state agency, we know there is never any immunity for this. [7]

After all of that, at the end, he attempts to argue that somehow they have this purported soverign immunity in their *individual* capacities to the state claims. Opp. at 6. Whatever, this attempt at some form of a claim of immunity, it fails very quickly.  It was not motivated at all by a desire to serve their  employer[8], as the truthful underlying facts on complaint pleads, they knowingly or purposefully committed those violations, actions, the unlawfulness was apparent. They do not have any immunity for any individual capacity claims, and they also have no immunity for the above official capacity, period. They have no defense, let alone a complete defense.

**B. Plaintiff's Claims Are Not Barred By Heck v. Humprey**

---

[4] (b) Punitive damages against every offender **individually,** except offender City, in the amount of 300,000
(c) Compensatory damages against every offender **individually**, in the amount of 300,000 dollars
Complaint at Relief
[5] Koslow v. Com of Penn., 302 F.3d 161, 179 (3d Cir. 2002) (In order to obtain injunctive relief a complaint would have to allege that such a violation of federal law occured by an official acting within his official capacity); Community Mental, Belmont v. Mental Health, 150 Fed Appx. 389, 401 ( 6th Cir. 2005) (Plaintiff cannot "sue a defendant in his individual capacity for injunction in situations in which the injunction relates only to the official's job, i.e. his, official capacity."); Ameritech Corp v. McCann 297 F.3d 582, 586 (7th Cir. 2002).
[6] Will v. Michigan, 491 U.S. 58, 71 n.10 (1989) (an agent "in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against" the government")
[7] They have not met their burden to show FJD is a state agency or entitled to any supposed sovereign immunity. But it is irrelevant.
[8] They are city employees.

3

Again they continue to raise this frivolous and hopeless claim, again in violation of Rule 11. Scott and Nudelman have repeatedly done so, **even after they were already told** in the January 27th filing, page 2 footnote, that it Heck would not apply here in these claims. Despite this, they still proceed forward with this hopeless "defense". They attempt to be what Plaintiff said they were move the facts to their fantasy world, these don't have to do with "requirements" for anything including a unit evaluation for this supervision unit Plaintiff was in, and Plaintiff doesn't "take issue" as Scott foolishly claims. This is a civil rights lawsuit, that contains claims against the above of pure illegal First Amendment retaliation, a substantial amount of due process violations, bogus arrest and summary request reports, a bogus warrant, and a hundred other things, that are **not requirements** of anybody's real or phony original conviction or imprisonment nor are they "ordinary components" of it. As plead, at all times did the act one-hundred percent unlawfully and illegally, improperly, unreasonably. Obviously as we know, it is completely independent, there is no "relitigation" of anything. Whether these separate and independent violations double illegal like Plaintiff is sure it is, they are still **illegal alone.** Moreover, Heck deals with confinement and imprisonment and concerns municipalities. "Having concern" and "taking issue" is exactly what is going to happen with Rule 11. They have no defense let alone a complete defense, admitting the facts which they must or not.

**C. Plaintiff's Claims Are Not Barred By Rooker-Feldman**

First off, unlike they claim, all of their "defenses are both waived and forfeited. And this is yet another frivolous and hopeless "defense" claimed by Scott again, it is the same preposterous attempted and baseless claim as the one before it, this time choosing a similar legal mechanism and it fails for the exact same reason. There never was any case filed in state court, let alone a loss or adjudicated one. Yet again, as a blind man can see and we know the claim prosecuted by

4

the commonwealth against Plaintiff and his § 1983 claim are not the same causes of action we

are dealing with here. They have no defense let alone a complete defense.

**D. Nothing Is Barred By Younger Abstention**

They next, frivolous, hopeless, pathetic attempt at some type of a "defense", is abstaining-

from fantasy proceedings in state court. There aren't and they never were proceedings to affect

anything in this suit, as explained prior. Under Younger, a district courts may abstain from

enjoining state judicial proceedings when (1) there is a pending state proceeding that is judicial

in nature, (2) the proceeding implicates important state interests, and (3) there is an adequate

opportunity in the state proceeding for the plaintiff to raise his constitutional challenges. See

Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). [9]. As

already stated well prior, it stops at the first. Also, it has been well established by the Supreme

Court that "federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction

conferred on them by Congress" and only "exceptional circumstances" would warrant dismissal

on the basis of abstention. Wilton v. Seven Falls Co., 515 U.S. 277, 284 (1995); Colorado

River, 424 U.S. 800, 813 (1976). They have no defense let alone a complete defense.

**E. No One Is Immune From Anything Including Absolute**

They next, frivolous, hopeless "defense" is that they enjoy absolute immunity to violate a

victim's human rights a hundred times, they in fact do not, as again they ignore the facts, claims,

---

[9] Just to show how meritless the argument would be, Younger would not even apply if there were, which they are not. "The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." McClellan v. Carland, 217 U.S. 268, 282 (1910). Younger doctrine does *not* pose a jurisdictional bar, it is a judicially created doctrine counseling federal courts from interfering in certain state actions. Ohio Civil Rights Com'n. v. Dayton Christian Sch., Inc, 477 U.S. 619, 626 (1986). "Abstention rarely should be invoked"… and is only appropriate  in a few carefully defined situations". Addiction Specialists Inc. v. Township of Hampton, 411 F.3d 408 (3d Cir. 2005). Younger abstention is not appropriate if the federal plaintiff alleges (1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present potential for harm to the federal interests asserted. Schall v. Joyce, 885 F. 2d 101, 106 (3d Cir. 1989).

and law that was already cited on the complaint. It is well established in order for a court to

award absolute immunity , "the defense must clearly appear on the face of the complaint."

Wilson v. Rackmill, 878 F.2d 772, 777 (3d Cir. 1989). It is apparent, apparent that they cannot

ever deserve it. The Supreme Court was adamant that there is a heavy burden that the defendant

must show[10]. "Giving the sparing recognition of absolute immunity by the Supreme Court and

this court, one claiming such immunity must demonstrate clear entitlement." Robinson v.

Volkswagenwerk AG, 940 F.2d 1369, 1370 (10th Cir. 1991). The rationale underlying the need

for absolute immunity must be closely scrutinized before the Court will hold that a government

official is protected from liability by an impenetrable shield. Scott v. Dixon, 720 F.2d 1542, 1546

(11th Cir.1983). Plaintiff and his filings have admitted not an ounce of ingredients of an

impenetrable defense. Courts long ago realized there should be no emergency exit for offenders

when it's time to face justice. "Immunity fosters neglect and breeds irresponsibility, while

liability promotes care and caution, which caution and care is owed by the government to its

people." Rabon v.Rowen Memorial Hosp., Inc., 269 NS 1, 13, 152 SE 1d 485,493 (1967). "

   The Supreme Court also recognized this common sense approach in Butz v. Economou,

438 U.S. 478 (1978):

Indeed, the greater power of such officials affords a greater potential for a regime of lawless
conduct. Extensive Government operations offer opportunities for unconstitutional action on a
massive scale. In situations of abuse, an action for damages against the responsible official can
be an important means of vindicating constitutional guarantees

---

[10] "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the
function in question", and that there is a "[p]resumption that public officials are entitled to qualified rather than
absolute immunity." Burns v. Reed, 500 U.S. 478, 486-87 (1991)."Most public officials are entitled only to qualified
immunity" from section 1983 actions. Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir.2006); see Buckley
v. Fitzsimmons, 509 U.S. 259, 273, (1993) (noting that ordinarily, "[q]ualified immunity represents the norm.") In
light of the Supreme Court's "quite sparing" recognition of absolute immunity to § 1983 liability, we begin with the
presumption that qualified rather than absolute immunity is appropriate. Carter v. City of Philadelphia, 181 F.3d
339, 355 (3d Cir.1999) (citing Burns)). A prosecutor bears the "heavy burden" of establishing entitlement to
absolute immunity. Light v. Haws, 472 F.3d 74, 80-81 (3d Cir.2007), here it would be much heavier.

Id. at 506

Then went on

Our judicial system assumes that all individuals, whatever their official position, are subject to law. No man in this country is so high that he is above the law. No officer of the law may set that law of defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of the law, and are bound to obey it.

Id. (quoting United States v. Lee, 106 U.S. (16 Otto) 196, 220, 1 S.Ct. 240, 261, 27 L.Ed. 171

(1882)).

"Foreclosing a victim's ability to bring suit (only realistic method for vindicating

constitutional guarantees) thus increases the potential of lawless conduct by an official."

Austin Mun. Securities v. Nat. Ass'n Of Securities, 757 F.2d 676, 686-87 (6th Cir. 1985). The

use of absolute immunity under § 1983 turns on whether the official historically enjoyed such

immunity at common law plus a practical analysis of the official's functions in modern times.

Harlow v. Fitzgerald, 451 U.S. 800, 811-12 (1982). In 1871 when §1983 was enacted, no such

positions existed, therefore their attempt at an argument fails again.

In any event, it fails in additional ways. Every circuit that has decided it including ours,

ruled it cannot apply to this situation here. See Harper v. Jeffries, 808 F.2d 281 (3d Cir. 1986)

(probation officer conspiring to imprison plaintiff on bogus charges); Scotto v. Alemas, 143 F.3d

105 (2d Cir. 1998) (probation officer accused of preparing bogus violation report and warrant);

Swift v. California, 384 F.3d 1184 (9th Cir. 2004) (parole officers investigating parole violations

and recommending initiation of parole revocation proceedings); Ray v. Pickett, 734 F.2d 370,

374 (8th Cir. 1984) ("we do not find that the function of a probation officer  in submitting a

parole violation report is either adjudicatory or prosecutorial in nature); Galvan v. Garmon, 710

F.2d 214 (5th Cir. 1983) (to probation officer who **mistakenly** caused the arrest and

incarceration of a person on probation);  Draine v. Leavy, 504 Fed. Appx. 494 (6th Cir. 2012)

7

(parole officer and supervisor **mistakenly** issuing a invalid violation report and parole bench warrant); Mee v. Ortega, 967 F.2d 423, 426-29 (10th Cir.1992) (parole officer issued invalid report and arrest); Russ v. Uppah, 972 F.2d 300, 303 (10th Cir. 1992) (parole officer issued invalid report[11]).

    A probation's officer issuing an warrant is an investigative function akin to a police officer requesting an arrest warrant and in that situation, absolute immunity fails. See Malley v. Briggs, 475 U.S. 335, 341 (1986) (rejecting police officer's argument that absolute immunity applies when seeking an arrest warrant instead of qualified immunity). See also Gray v. Poole, 275 F.3d 1113 (D.C. Cir. 2002) (finding social worker's recommendation that county initiate a neglect action entitled to qualified immunity). It is supported by the Supreme Court's again in a different context: "[A parole] officer is not by this recommendation converted into a prosecutor committed to convict." Mee, at 426 (quoting Gagnon v. Scarpelli, 411 U.S. 778, 785 (1973). When prosecutors act as investigators or administrators, qualified immunity applies[12]. Absolute immunity does not extend to administrative or investigatory acts. Ernst v. Child & Youth Services of Chester County, 108 F.3d 486, 497 n.7 (3d Cir. 1997). By statute, a probation officer only performs those duties directed by the court. See 42 Pa. C.S. §6304(a) (e.g., "Make investigations, reports, and recommendations to the court...");

**§ 6304.  Powers and duties of probation officers.**

    **(a)   General rule.**--For the purpose of carrying out the objectives and purposes of this chapter, and subject to the limitations of this chapter or imposed by the court, a probation

---

[11] In yet more cases, McBride v. Cahoone, 820 F.Supp.2d 623, 637-38 (E.D.Pa.2011), ( probation officer was not entitled to absolute immunity for seeking a bench warrant based upon the probationer's alleged violation of the terms of probation);S piker v. Allegheny Cty. Bd. Of Probation & Parole, 920 F. Supp. 2d 580, 605 (W.D.Pa 2011.) ("Whittaker is not entitled to absolute immunity for seeking the bench warrant or the detainer because those actions are executive in nature.")

[12] Kalina, 522 U.S. at 122–23 (holding that a prosecutor who swore to false facts in an affidavit is not entitled to absolute immunity); Buckley, 509 U.S. at 272–76 (holding that a prosecutor who conspired with police to manufacture false evidence is not entitled to absolute immunity); Burns, 500 U.S. at 492–96 .

```
officer shall:
      (1)  Make investigations, reports, and recommendations to
   the court.
```

As we know and see clearly, once again, there is **not one second of open court proceedings** in the complaint. None of them have a shred of any immunity. They have no defense let alone a complete defense.

### F. No One Is Immune From Anything Including Qualified

They next, frivolous, hopeless "defense" is that they somehow deserve qualified immunity, they didn't know they could not violate Victim's right in numerous different ways 100 times. They had no idea, it's just a big misunderstanding. Qualified immunity is a judge-made doctrine based on a legal question, rather than a jury or trier of fact[13]. Limone v. Gordon, 372 F.3d 39, 43-44 (1st Cir. 2004); Henry v. Purnell, 619 F.3d 323, 336 n.12 (4th Cir. 2010); Keylon v. City of Alberquerque, 535 F.3d 1210, 1217-18 (10th Cir. 2008); Bell v. Irwin, 321 F.3d 730, 735 (8th Cir. 2003) (judges rather than juries determine what limits the Constitution places on official conduct). The burden is on the offending defendant to establish that they are entitled to qualified immunity[14]. Under the qualified immunity doctrine, a government official will be liable if the plaintiff can show that the official violated clearly established law of which a reasonable person should have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In this regard, a court must determine whether the defendant's actions were objectively reasonable under current federal law. Gruenke v. Seip, 225 F.3d 290, 298-99 (3d Cir. 2000).

---

[13] Limone v. Gordon, 372 F.3d 39, 43-44 (1st Cir. 2004); Henry v. Purnell, 619 F.3d 323, 336 n.12 (4th Cir. 2010); Keylon v. City of Alberquerque, 535 F.3d 1210, 1217-18 (10th Cir. 2008); Bell v. Irwin, 321 F.3d 730, 735 (8th Cir. 2003) (judges rather than juries determine what limits the Constitution places on official conduct).
[14] Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001); Gomez v. Toledo, 446 U.S. 635, 640 (1980); Korats v. Rogers, 822 F.2d 1303 (3d Cir. 1987).

In other words, the question is what a reasonable person in the defendant's position should know about the constitutionality of the conduct. Amore v. Navarro, 624 F.3d 522, 533 (2d Cir. 2010). However, a public official is considered to have constructive knowledge of established law. Cannon v. City of Denver, 998 F.2d 867, 874 n.6 (10th Cir. 1993). "A reasonably competent public official should know the law governing his conduct.'" McBride v. Village Of Michiana, 100 F.3d 457, 460 (6th Cir. 1996) (citing Harlow, 457 U.S. at 818-19). A plaintiff can overcome an official's damages qualified immunity by showing that those rights were clearly established at the time of conduct at issue. Davis v. Scherer, 468 U.S. 183, 197 (1984).

Federal courts must apply all relevant precedents within their knowledge in deciding an issue of qualified immunity. Elder v. Holloway, 510 U.S. 510, 516 (1994). This includes law from other federal circuits. Barnes Foundation v. Township of Lower Merion, 242 F.2d 151, 160 (3d Cir. 2001); Clark v. Wilson, 625 F.3d 686, 690 (10th Cir. 2010), as well as their district courts Osolinksi v. Kane, 92 F.3d 934, 936 (9th Cir. 1996) ("we look to all available decisional law, including the law of other circuits and district courts"). Even dicta clearly establishes a right. Hanes v. Zurick, 578 F.3d 491, 496 (7th Cir. 2009). If a court concludes that the defendants could have violated a clearly established right[15], it must deny the defendant the protection afforded by qualified immunity. Burella v. City of Philadelphia, 501 F.3d 134, 139-140 (3d Cir. 2007).

"This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Later on, the Supreme Court, lowered this already low threshold, that there is no rigid rule that for law to be clearly established, the facts of the existing precedent must be

---

[15] "Clearly established" means "some but not precise factual correspondence" between relevant precedents and the conduct at issue, McLaughlin v. Watson, 271 F.3d 566, 571 (3d Cir. 2001).

"materially similar" to the facts of the instant case. "Officials can still be on notice that their conduct violates established law even in novel factual circumstances". Hope v. Pelzer, 536 U.S 730, 741 (2002). Law might be clearly established even in the absence of controlling precedent. Type of conduct engaged by the defendant may be so unconstitutional that there was no need to litigate the issue previously. Wilson v. Layne, 526 U.S. 603, 620 (1999).

The above law is useless, obviously the all of them knew or should have known you cannot violates somebody's civil and human rights one time, let alone a hundred times. The right to be free from illegal retaliation was established by 1800 and the million cases afterwards why he won't waste his time with, also the right to have due process and equal protection, not to be maliciously prosecuted, right to unreasonable searches and seizures, not to be inflicted with distress and so on, was long clearly established. He also long had a clearly established right not to have supervisors, decision and policymakers be deliberately indifferent to the needs of Plaintiff and other victims.They had every reason to think that a reasonable official involved in the factual scenario would know it was unconstitutional to be willfully blind and deliberately indifferent, among other things, which includes directly signing off on the bogus warrant, refusing to give Victim his "summary sheet" numerous times, and a whole lot more[16].

See also Stidham v. Peace Officers Stanards & Training, 265 F.3d 1144, 1156-57 (10th Cir. 2001) (public official is not entitled to qualified immunity when an affirmative link has been

---

[16] They were long put on notice, including Gutierrez Rodriguez v. Cartagena, 882 F.2d 553 (1st Cir. 1989) (Police supervisors were liable for deliberately indifferent in carrying out their disciplinary obligations. The police disciplinary system went through the procedural motions without any real objective of finding the truth, (mirrors the instance case), substantial punitive damages awarded) Fundiller v. City of Cooper City,777 F.2d 1436, 1443 (11th Cir.1985) (police supervisor held liable for subordinate rights violation of civilian because of practice allowing violation to occur); Diaz v. Martinez, 112 F.3d 1, 4 (1st Cir. 1997) (denying qualified immunity, that "a reasonable police supervisor, charged with the duties that Vazquez bore, would have understood that he could be held constitutionally liable for failing to identify and take remedial action concerning an officer"); Sockwell v. Phelps, 20 F.3d 187 (5th Cir. 1994) (punitive damages against prison supervisors for by knowingly permitting equal protection violations of prisoners).

shown connecting him or her to a clearly established violation of constitutional law.) They have

no defense let alone a complete defense.

## G. No Defense To First Amendment Retaliation

The next frivolous, hopeless "defense" is that low and behold, there is somehow no

actionable First Amendment claim against him, no adverse action. In the fantasy world that is.

For instance, in the public employment context, deminimis and trivial acts will suffice.[17]

Here it is a much lower "ordinary citizen" threshold than the already low employment because

an employer's interests "in regulating the speech of its employees that differ significantly from

those it possesses in connection with regulation of the speech of the citizenry in

general." Pickering v. Board of Education, 391 U.S. 563, 567- 568 (1968). [18] "The First

Amendment is violated in 'ordinary citizen' cases if the individual engaged in conduct protected

by the First Amendment and the government took action against the person because of that

protected conduct." Kinney v. Weaver, 367 F. 3d 337, 358 (5th Cir. 2004).

With First Amendment retaliation, "the motives of government officials are indeed

relevant, if not dispositive, when an individual's exercise of speech precedes government action

affecting that individual." Anderson, 125 F.3d at 161. It has long been established "that official

retaliation for the exercise of any constitutional right creates an actionable claim under Section

1983." Anderson v. Davila, 125 F.3d 148, 161 (3d Cir.1997). "Government actions, which

---

[17] The "'deterrence threshold,' . . . is very low"... "even 'an act of retaliation as trivial as failing to hold a birthday party for a public employee,' if 'intended to punish her for exercising her free speech rights,' may be actionable . . . ." O'Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir. 2006). Again, we know it is a much lower threshold in a ordinary citizen test than this already low one in employment, we also know this was much was than failing to hold a birthday party.

[18] See also Waters v. Churchill, 511 U.S. 661, 674 (1994) ("[C]onstitutional review of government employment decisions must rest on different principles than review of speech restraints imposed by the government as sovereign ... because the speech interferes with the government's operation. Speech by private people can do the same, but this does not allow the government to suppress it."); Garcetti v. Ceballos, 547 U.S. 410 (2006) (First Amendment does not protect statements and actions made as part of one's job). This is exactly why when the government acts an employer the First Amendment does not apply with full force. Arndt v. Kaly, 309 F.3d 1247, 1251 (10th Cir. 2002).

12

standing alone do not violate the Constitution, may nonetheless **be constitutional torts** if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)[19]. Here they are alone violations to begin with.

We have well established case law dealing with the crimes and violations here , just a sample include, Losch v. Parkesburg, 736 F.2d 903, 907-08 (3d Cir. 1984) (institution of criminal action to penalize the exercise of one's First Amendment rights is a deprivation cognizable under 1983); Smith v. Plati, 258 F.3d 1167, 1176 (10th Cir.2001) ("`Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom"); Garcia v. City of Trenton (8th Cir. 2003) 348 F.3d 726, 729 (8th Cir. 2003) (retaliatory issuance of parking citations sufficient to show injury); Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001) ("the timing of the search raises an inference of retaliatory motive"). Even a "`the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,'" can show constitutional violation. White v. Lee, (9th Cir. 2000) 227 F.3d 1214, 1228 (9th Cir. 2000).

Back into the fantasy world, unlike they attempt to invalidly claim, there could not be more of a causal connection to indisputable protected conduct, and the concrete illegal retaliation. No action or procedure was "properly" or reasonably applied, nor was there a scent of any misconduct or "non-compliance from Plaintiff, as shown by the black and white facts, and law, already at this stage. They have no defense let alone a complete defense.

---

[19] Moreover, actions that are otherwise proper and lawful may nevertheless be actionable if they are taken in retaliation against a person for exercising his or her constitutional rights. Doyle, 429 U.S. at 283-284; DeLoach v. Bevers, 922 F.2d 618, 620 (10th Cir. 1990); Matzker v. Herr, 748 F.2d 1142, 1150 (7th Cir. 1984) Worrell v. Henry, 219 F.3d 1197 (10th Cir.20000. Here they and never would or could be proper, including issuing a warrant for something that is not a violation of probation let alone one so extreme to have a warrant issued on the spot.

13

## H. No Defense To Due Process And Equal Protection Claims

The next frivolous, hopeless "defense" is with  everything plead, which illegally robbed

Victim of due process and equal protection a billion times over, well that's somehow not

violative of state and federal protection. Plaintiff and his complaint narrowly sets out those

claims. Obviously, Plaintiff has a strong liberty interest being under control of the government, a

substantive right, and Plaintiff was constitutionally entitled to an appropriate level of process[20],

in which he did not receive. The Fourteenth Amendment protects individuals from "state

---

[20] As relayed in the complaint, Although revocation of probation is not part of the criminal prosecution, it entails the loss of liberty, revocation of probation is a serious deprivation, and due process must therefore be accorded. Commonwealth v. Davis, 336 A.2d 616 (Pa. Super 1975). Commonwealth. v. Ferguson, 761 A. 2d 613, 617 (Pa. Super. 2000); Gagnon v. Scarpelli, 411 U.S. 778, 781-82 (1973); Morrissey v. Brewer, 408 U.S. 471, 481-82 (1972). Due process safeguards means at minimum:

(1) written notice of the claimed violations of probation or parole; (2) disclosure to the probationer or parolee of evidence against him; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses, unless the hearing officer specifically finds good cause for not allowing confrontation; (5) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (6) a written statement by the factfinders as to the evidence relied on and reasons for revoking probation or parole.

Commonwealth v. Allshouse, 969 A.2d 1236, 1240 (Pa. Super. 2009);  (citing Gagnon v. Scarpelli, 411 U.S. at 786.
An essential component of these due process rights is that individuals be given fair warning of acts which may lead to revocation. United States v. Simmons, 812 F.2d 561, 565 (9th Cir.1987); United States v. Dane, 570 F. 2d 840, 843 (9th Cir 1977); US v. Gallo, 20 F. 3d  7, 11 (1st Cir. 1994) (fair warning of conduct that may result in revocation is an integral part of due process in such situations.) Here it was mandatory since five decades ago that written notice of each alleged violation and an adequate opportunity to prepare is required prior to hearing. Champion v. Com. Board Probation and Parole, 399 A.2d 447 (Pa. Cmwlth. 1979). Probation/parole officer must strictly comply with requirement that notice of alleged violations must be writing. Commonwealth v. Davis, 418 A.2d 669 (Pa. Super 1980). Requirement of written notice is a simple and straight forward requirement that the probation officer  must comply. Commonwealth v. Harris, 380 A.2d 471 (Pa. Super. 1977). With respect to right to receive written notice of alleged probation violation, actual notice by the way of oral advice or existence of a prior revocation proceeding was irrelevant. Commonwealth v. Parker, 378 A.2d 970 (Pa. Super 1977). However, here to form a point, it was so bad Plaintiff had no idea of anything, Ford put a bogus warrant out without saying a word let alone in writing, tried to notify Plaintiff of the hearing afterwards, all that time beforehand never even mentioned there was one, never said anything about violations let alone in writing, Ford didn't even  give Plaintiff the notice at the hearing.. See also Snyder v. Com. Dept of Transp. Bureau of Motor Vehicles, 977 A.2d 55, 57 (Pa.  Cmwlth. 2009) "adequate notice for procedural due process purposes requires at a minimum that the notice contain sufficient listing and explanation of the charges against an individual"."Due process also requires that notice of what is being charged be made against the accused and be given in sufficient time to prepare a defense as to all the issues raised by the state). Id.
Again, fundamental fairness is a key issue in a violation hearing. United States v. Hamilton, 708 F.2d 1412, 1414 (9th Cir.1983). Additionally it is well established revocation is limited to violations of the criminal law and specific conditions of probation or parole to even begin with. Knight v. Com., Board of Probation and Parole, 510 A.2d 402 (Pa. Cmwlth. 1986); U.S. v. Simmons, 812 F.2d 561 (9th Cir. 1987); Commonwealth v. Carver, 923 A.2d 495, 498-99  (Pa. Super. 2007).

deprivations of life, liberty, or property without due process of law." Unger v. National Residents
Matching Programs 928 F.2d 1392, 1395 (3d Cir. 1991). In the fantasy world, "Plaintiff appears
to allege" that he did not receive anywhere near adequate notice and in some cases no actual
notice to the bogus, illegal, retaliatory, non-authorized, illegitimate, improper, requests from
Ford, and his co-offenders.

And as mentioned a defense cannot allege different facts, but like everything else in no way can
they now or will they ever even begin to claim Plaintiff received proper notice on any of the
illegal things involved. **It's in black and white, the dates on documents, envelopes,** public
records. It's not up for debate- ever. Nudelman and Scott and already violated Rule 11, and also
3.3 and 8.4 in their prior filing by making false statements of material fact, bad faith denials on
**these facts that they knew to be true to them, because it was in front of them.** Plaintiff has
had enough of their act, and there will be steep consequences.

Then in another ludicrous attempted claim, Plaintiff did not plead any equal protection
facts, contrary nothing was "broad", the complaint adequately pleaded[21] intent to discriminate,
discrimination, and unequal treatment by the above, obviously it shows exactly how Plaintiff was
treated unlawfully and dissimilar from other probationers. They have no defense let alone a
complete defense.

## I. No Defenses To Prospective Relief

The next frivolous, hopeless "defense" is that the complaint does not establish the need for
this relief. They claim that Plaintiff would not be able in the future to show he will face a repeat
of the all the concrete human and civil rights violations he suffered. As support of this attempted
claim, they allege that Plaintiff has been voluntarily transferred from the unknown specific unit

---

[21] "[A] civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." Evancho
v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), as this one explicitly did.

he was in, and that he does not he was in, and Ford and Boyd are not supervising him. Once again, a defense solely involves the facts on the complaint, their unproven allegations do amount to anything, the test for mootness is heavy even formidable, and it has long been established that voluntary alleged cessation of actions by a defendant do not make the case moot. Moreover, the relief of removing Ford and Boyd only amount to a fraction of the relief to begin with. They again declare again, in violation of Rule 11, 3.3 and 8.4, that they will prove in the future that Plaintiff had proper notice of the bogus events and actions pleaded, also make other claims that are also in violation of that in regards to the validity of the case and facts. Again, they would not and could not ever prove they acted lawfully, period, and a defense is from the facts on the complaint to begin with.

The complaint states numerous injuries and irreparable harm balance of any hardship is in Plaintiff's favor, relief is in public interest, there most certainly adverse legal interests, prospective relief is needed. The complaint states Plaintiff is still on probation, therefore he is susceptible to more illegal violations and practices. They then attempt to cite their version of the law, conversely, nothing bars injunctive or declaratory relief[22].

---

[22] The need for an injunctive relief arises out of a past injury. Milliken v. Bradley, 433 U.S. 267 (1977); Russell v. Dunston, 896 F.2d 664, 668 (2d Cir. 1990) (existence of past harm does not render an otherwise forward looking injunction retroactive). Likewise, "the declaration is a form of judicial relief which serves to affirm the plaintiff's assertion that the defendants' actions **were** unconstitutional and which will serve as a standard of conduct to guide [government] officials **in the future**"). Helms v. Hewitt, 780 F.2d 367, 370 (3d Cir.1986). See also Green v. Branson,108 F.3d 1296, 1299-1300 (10th Cir.1997) (Plaintiffs' claim for declaratory relief is not moot where the district court must determine whether a past constitutional violation occurred which will in turn affect the parties' current rights or **future** behavior). As well as Balgowan v. New Jersey, 115 F.3d 214, 217-18 (3d Cir.1997) (because there were constitutional violations, the plaintiff's relief in the form of a declaratory judgment was granted); Lippold v. Cole, 468 F.3d 1204 (10th Cir. 2006) (declaratory judgment that the city had violated the First Amendment after event took place and no future events on par). Moreover, Plaintiff does have nominal damages in this suit and a claim for a declaratory judgment is "retrospective to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred." PETA v. Rasmussen, 298 F.3d 1198, 1202 n. 2 (10th Cir.2002); Faustin v. City & County of Denver,268 F.3d 942, 948 (10th Cir.2001).

## J. No Defense To PA Constitution

The next frivolous, hopeless "defense" is that, admitting there were violations of the PA

Constitution, they attempt to claim there are no damages from it. They have not listed any cases

with conclusive effect to support their position, and contrary to what they attempt to claim,

nothing bars it.[23] Then they purport that somehow there is no standing for prospective relief that

is not the case either, it can very easily be awarded.[24]

## K. No Defense To I.I.E.D. Claims

The next frivolous, hopeless "defense" is somehow Plaintiff does not have a claim for I.I.E.D.

That fails as the complaint specifically relays the requirements for it, see comp at 42[25]. There is a

demanding level of fault present. In their fantasy world, the violations are "petty, trivialaties,

annoyances, threats, and insults", their friviolous filing at 20. They constituted anything but a

---

[23] Although the Pennsylvania Supreme Court has not yet expressly recognized a right to recover <u>damages</u> for their Constitution, it has not expressly rejected such a claim either.

When deciding an issue of state law that has not been addressed by the Penn Supreme Court, a federal court must 'forecast the position of the supreme court of the forum would take on the issue." JewelCor Inc. v. Karfunkel, 515 F.3d 203, 206 n.4 (3d Cir. 2008). Persuasive data would show they would decide that in fact their was a right to damages. For starters, <u>Jones v. City of Philadelphia</u>, 68 Pa. D. & C. 4th 47 (C.P. Phila. County 2004), provides the best insight into the probable resolution of this issue by a Pennsylvania court. There a court thoroughly analyzed the history of the issue and properly found there was such a right. See also <u>Christie v. Borough of Folcroft</u>, 2005 WL 2396792, at *12-13 (E.D.Pa. 2005) (finding damages were available under Article I Section of the PA Constitution.) Moreover, Pennsylvania was formed for the common good, common consent of the people, and being able to obtain money for basic human rights violations was what the founding fathers have expressed.

[24] See <u>Johnson v. American Standard</u>, 8 A.3d 318, 327 n.9 (Pa. 2010) ("While standing in a federal court is derived from the United States Constitution, the same is not true in Pennsylvania, as the Pennsylvania Constitution contains no reciprocal Article III requirement.") "The core concept in any standing analysis is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge." Soc'y Hill Civic Ass'n v. Pa. Gaming Control Bd., 928 A.2d 175, 184 (Pa. 2007). A person does not have a direct interest if he has not been *harmed* by the specific constitutional concern at issue. <u>Id.</u>; see also <u>Commonwealth v. Haldeman</u>, 135 A. 651, 652 (1927). Past not future. But Plaintiff has established current and future harm, still under their strings.

Plaintiff has standing and a court can hear the case to "elude similar scenarios in the future" from others. See e.g., <u>Colonial Gardens NursingHome, Inc. v. Bachman</u>, 473 Pa. 56, 59, 373 A.2d 748 (1977) (a court may decide cases with substantial questions, otherwise moot, which are capable of repetition unless settled. Here, in an effort to ensure the ability to elude similar scenarios in the future, this Court will decide the case."); <u>Flynn–Scarcella v. Pocono Mountain School District</u>, 745 A.2d 117 (Pa. Cmwlth. 2000) (review of a disciplinary decision that had expired deemed not moot because school district's ability to enforce conduct of great public importance).

[25] The elements that must be satisfied to prove intentional infliction of emotional distress are that (1) the officer's conduct was extreme and outrageous, (2) her conduct caused the plaintiffs severe emotional distress, and (3) she acted intending to cause such distress or with knowledge that such distress was substantially certain to occur. <u>Brown v.Muhlenberg Twp.</u>, 269 F.3d 205, 218 (3d Cir. 2001). Plaintiff has sufficiently pled just that. See42.,

typical, lawful handling of a probationer, that were not at all reasonable nor justified under any circumstances, and were so extreme and outrageous, and intentional, that they inflicted a severe amount of emotional distress against Victim sufficient for a claim[26].

## I. "False Imprisonment Claims"

The next frivolous claim is dealing with false imprisonment, they have not established at all that they even have a PA False Imprisonment claim against them.[27] They would not cannot demonstrate that any actions were lawful or based on probable cause, developed in the context of facts and circumstances of this matter. They have not proved a claim, they have no defense, let alone a complete defense.

## M.  No Defense To Malicious Prosecution Claims

The next frivolous, hopeless "defense" is that Plaintiff cannot establish a malicious prosecution claim. He already has, for both state and federal. Under Pennsylvania law, there are four common law elements of malicious prosecution that a plaintiff must prove: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing plaintiff to justice. See Hilferty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996). The complaint, exhibits (and public record) clearly establishes that these four elements are met. As we know the first bogus and illegal prosecution terminated in Plaintiff's favor, when a judge actually cancelled it. Offender Ford was then able a year later to get a second bogus and illegal prosecution, and that *too* ended in Plaintiff's favor, that ethics violating

---

[26] Emotional distress includes "fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea." See Restatement (Second) of Torts § 46, cmt. j (1977). Emotional distress can also include depression, nightmares, anxiety and ongoing mental and physical harm. See Corbett v. Morgenstern, 934 F. Supp. 680, 684-85 (E.D. Pa. 1996) (citing Love v. Cramer, 606 A.2d 1175, 1179, (Pa. Super. 1992), app. denied, 621 A.2d 580 (1992)) . Plaintiff also has that adequately plead.  Additionally punitive damages are available. Chuy v. Philadelphia Eagles, 595 F.2d 1265 (3d Cir. 1979).
[27] The illegal actions that constitute seizure and detainment could be under 1983 and the Fourth and Fourteenth Amendment.

one attached the public record docket to his filing. Both malicious prosecutions ended in

Victim's favor, and neither had an ounce of probable cause, neither had allegations that would

be an **actual probation violation if true.** Plaintiff was subjected to a baseless criminal

prosecution not once but twice.

Moreover, an officer is liable for initiating a criminal prosecution if the officer "fails to

disclose exculpatory evidence to prosecutors, makes false or misleading reports to the

prosecutor, omits material information from the reports, or otherwise interferes with the

prosecutor's ability to exercise independent judgment in deciding whether to prosecute." Telepo

v. Palmer Twp., 40 F. Supp. 2d 596, 610 (E.D. Pa. 1999.)[28] As Ford, Politano, Boyd, Austin,

and the rest did just that and are liable once again under for that.

The elements of a malicious prosecution claim under section 1983 are derived from

applicable state law. See Swartz v. Insogna, 704 F. 3d 105, 111 (2d Cir. 2013). Additionally, as a

fifth element, the plaintiff suffered a deprivation of liberty consistent with the concept of seizure

as a consequence of a legal proceeding. Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009)

(en banc). Travel restrictions and court appearances "are appropriately viewed as seizures within

the meaning of the Fourth Amendment." Murphy v. Lynn, 118 F.3d938, 946 (2nd Cir.1997).

---

[28] As well as: Brockington v. City of Phila., 354 F.Supp.2d 563, 569 (E.D.Pa. 2005);Henderson v. City of Philadelphia, 853 F. Supp. 2d 514, 518 (E.D.Pa. 2012); White v. Brommer, 747 F.Supp.2d 447, 459 (E.D.Pa.2010); Stango v. Rodden, 2001 WL 1175131, at *4 (E.D.Pa. Aug. 21, 2001); Gallo v. City of Phila., 161 F.3d 217, 220 n. 2 (1998) ("Decisions have recognized that a § 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed information from, prosecuting authorities.");Garcia v. Micewski, 1998 WL 547246, at *9 (E.D.Pa. Aug.24, 1998); quoting Torresv.McLaughlin, 966 F.Supp. 1353, 1364 (E.D.Pa.1997), rev'd on other grounds, 163 F.3d 169 (3d Cir.1998)). See also Merkle v. Upper Dublin School Dist., 211 F.3d 782, 794 (3d Cir. 2000) ("The action of the School District in initiating the criminal proceedings and pressing unfounded criminal charges against Merkle can render the District liable for its *major role* in a malicious prosecution."

Plaintiff was compelled to make repeated and compulsory courtroom appearances, for a span of two years, in which he did. His travel was restricted during that time, he could not leave the state. He was also compelled to retain counsel, as mentioned Victim hired Link to deal with the bogus warrant, then he hired an attorney, (as can be seen on the public record docket, which is their exhibit admitted) for all of these bogus hearings, which were seven in total. It cost Victim a small fortune, and he wants that money back from Ford and the gang. The complaint, together with the public record, constitute a deprivation of liberty consistent with the concept of a seizure under the Fourth Amendment, therefore establishing the fifth element a 1983 malicious prosecution claim.

For Plaintiff's 1983 abuse of process claim, the Court of Appeals has indicated that "using legal process primarily to harass and cause direct injury to an adversary . . . could constitute a perversion of that process." General Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 307 (3d Cir. 2003). For his state abuse of process, "Abuse of process" is defined as "the use of legal process against another primarily to accomplish a purpose for which it is not designed." Werner v. Plater-Zyberk, 799 A.2d 776, 785 (Pa.Super.2002). Plaintiff has established it for both, as Ford, Boyd, Politano, Austin, and the gang still pressed on, kept going with their baseless prosecution filled with malice, didn't stop, they even kept re-filing requests, six months and a year later, long after and beyond it had been dismissed in its authorized conclusion. It was not designed to punish people for protect speech and proper and reasonable actions.

Contrary to their frivolous claims there the criminal proceedings could not be more unlawful, could not lack less probable cause. The bogus and illegal warrant was issued, occurred after what was plead, including Ford did not give Plaintiff enough notice, agreed to reschedule, the notice **stated you could reschedule** one time. Plaintiff spoke with Politano do so, she first claimed I

was even down for that day, then absurdly refused to reschedule, told him to go to Ford, Plaintiff

left a message with Ford, which in turn he did not honor the agreement and reschedule. Just as

important, it was not a violation of probation because of that, and because of the prior facts, so if

it isn't a v.o.p, it can't be an **extreme one to require an instant arrest warrant.** And just to

address the message, in their "answer" at 20, on page 4, Nudelman and Scott declared as officers

of the court, that they were "without sufficient knowledge or information to form a belief" as to

Plaintiff's complaint at 20 which relayed he left a message for Ford rescheduling the retaliatory

evaluation. They have an obligation to investigate cases, in which they apparently had to do

because they filed an "answer". So their "investigation" would have to discover that answer.

They had it in black and white, because the same people who really hired them, FJD, gave

them documents and evidence, including the complaint plaintiff filed with their administration,

**which included black and white proof in regards to this call and message,which they gave**

**to Nudelman and Scott.** Because they were afraid to lie yet again, like they did with everything

else (even other black and white things) they put that they did not have the information, because

they know what is coming to court and trial, that. This is remarkable, not only because of this,

but also because somehow they didn't "investigate" creating a wholly falsified script) but they

didn't mentioned why they couldn't ask Ford about it, or why they didn't. Both Nudelman and

Scott were again in violation of Rule 11, and 3.3 and 8.4.

Further, the warrant was not put out until after right **Plaintiff complained to Austin about**

**Ford**. Back into the fantasy world, to round this section out, they assert the complaint did not

state the proceedings terminated in his favor, and that they if fact did not and they can prove it.

This is again in violation of Rule 11, and **not in the real world as the complaint plainly has it**

**on there, so does the docket he just submitted**. The complaint was filed before the second

malicious prosecution terminated in Victim's favor, but it is on his exhibit. And he just asserted earlier his brief that Plaintiff was moved from that specific unit and Ford. They have no defense, let alone a complete defense.

## III. THEY WILLFULLY DEFAULTED AS A RESULT OF CULPABLE AND INEXCUSABLE CONDUCT

They introduce that they were given a second chance to create a better sound excuse, create a better sounding story. They then claim without any merit, that their conduct wasn't willfull or inexcusable, they are wrong. There could more clear that they had a dilatory intent and bad faith. They mention the above FDJ were properly served On November 7th, 2013, **but then insanely claim the City Law Department is responsible for representing them.**

Boy this is really, really something here. They are exactly what Plaintiff said they are and nothing less. Zero respect is too much. This is after last **Straw and the City were served with the lawsuit on July 22nd, 2013**, and they, Scott, and Nudelman, **declared over and over and over again they are not their employees, it is a separate entity, they do not provide representation to FDJ employees.** They declared the same thing on appeal. Judicial estoppel now bars the City, Straw, and their "hiree Scott and Nudelman from representing them. Straw was fully aware and was served in July, why did they then do the above, by their attempted claim now, Straw should have immediately notified them, accepted service, and allegedly represented, they **knew in July**. They are legally barred from any FDJ employees based on their prior declarations and actions. They cannot turn around and say the opposite. Plaintiff will be raising this on appeal. That nullifies their attempt at a excuse right there.

Then their story is, Rossi's law clerk Baiocco allegedly thought Rossi, and Rossi allegedly thought Baicco, was going to due the invalid forwarding to **the City, who refused to accept service, declared repeatedly it is a completely separate entity, they don't represent them.**

22

They create this story to claim that it was "an administrative error" and then make a general claim that due to that "it didn't reach" a place where it should not have gone to until December 3rd, 2013. Excluding the above that it was a invalid target, they don't attempt to explain what happened in between this bogus goof up on November 11th, between those two. In other words, what happened 30 days later, on 12-3, that they just stumbled upon this **5 days after a court order to answer.** It is also implausible, **that they each thought the other** were going to send it out to that invalid source. This is bogus, Rossi as he boss, as their counsel **must have been told by Biacco about the suit, service, very soon after it happened.** As her boss, he had to have told her what to do, to send it out to the invalid source, to do something else, or **to not** respond, which is exactly what happened. If he didn't say anything to her, and didn't do anything, obviously **he would know she didn't do it, so he knew nothing would get done.**

They would have had to have a conversation on this. It's also bogus because if there was somehow legitimate alleged confusion of some sort, which there wasn't, **he would have long checked** on it before Dec 3. Hey, Erica, did you forward this suit to [it's invalid source]. Mr. Rossi, I just wanted to check to see if you fowarded the suit.... . They don't at all attempt to explain this. Next the claim, Rossi requested counsel to Straw via an alleged email on December 3rd, 2013, then they loosely throw out, that "due to his error" Straw did not act on this December **3rd**, 2013 request until **December 20th,** 2013, because of the **default that was entered.** They don't attempt to explain this bogus assertion of Straw's "error", nor why he only acted on it after a default was entered.

Contrary to what they claim, there was no "administrative errors" on the part of anybody. Indeed, Rossi is the above's real counsel, he must be served, and it directly affects them.

23

Their behavior amounts to dilatory intent as described by their bland, illogical, attempt at a story, there is no way if the "first "alleged" bogus error if it even happened would take that long to notice, the second bogus "error" by Straw, well that's not even attempted to be explained. It's a dilatory intent. It is also bad faith, because they only followed court orders and filied something **in response to the suit days after a default was entered, which was 45 days afyer they were served.** Plaintiff gave them double the time to answer the suit before he filed the default, **42 days, they only took some type of action afterwards.** Moreover, they did not answer the suit until an additional 27 days, (which was more than 21 days after these what Plaintiff said before were hired), making it 75 days after they were served. Then filed an untimely response in opposition to Rule 55b. It's nothing but bad faith.

Even if those two elements are decided to be lacking which is dead wrong, their conduct was still willful, intentional, and inexcusable based on the above. Under the circumstances Plaintiff has proven that with the facts we know and also what came from them. It doesn't add up- at all. They have culpable conduct, their actions are inexcusable, period. "[E]xtraordinary circumstances are essential for a grant of Rule 60(b)" motion to vacate a default. Budget Blinds, Inc. v. White, 536 F. 3d 244, 258 (3d Cir. 2008). But extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices, like here. Id 255. They do not meet the threshold to vacate the default and their attempt must be denied.

Plaintiff will briefly address the "declaration" of Jeffrey Scott. A declaration by Scott or Nudelman is just as good as one from Maguire. Malvesuto left right after Plaintiff served the complaint. It is not know at all,whether Politano is still employed, Plaintiff has found nothing to indicate otherwise, she was never listed in the phone directory. He cannot verify these assertion.

Boyd, isn't the same,he is listed both at the current chart as an employee
http://www.courts.phila.gov/pdf/site/APPD-org-chart.pdf   also at the phone directory
http://www.phila.gov/phonedir/. In addition he has found nothing to indicate Boyd is not there,
and he questions the validty of his assertion. It's not an excuse to begin with, they already had
gotten heir side of the story when Plaintiff filed a complaint with administration. This is also not
a way out, they will be at depositions,discovery, and trial, regardless whether they are still
employed there or allegedly not.

## IV. Plaintiff Will Be Prejudiced

As stated twice prior, now a third time, Plaintiff will be severely prejudiced if a default is not
entered if no default judgment is entered, because he has no other means of vindicating his
claims, he is being forced to prosecute now stale claims, his claims are materially impaired
because of the loss of evidence, an increased potential for fraud or collusion, substantial reliance
on the entry of default, and other  substantial factors such as relying so heavily on the default and
expected this case to be closed out in his favor, that he now does not have enough funds to
prosecute  this case on merits, also health issues, it's flu season, issues down the line, the lack of
funds and health issues, would interfere all the time and work, attending hearings, conducting
discovery (everyone of them would get deposed extensively), trials, appeals, etc. Also, the
defendants  which have not offered any valid excusable reason for their default.This is just a
drop in the bucket, it would devastate Plaintiff if a default judgment was not entered.

### CONCLUSION

25

They have no defenses let alone a complete defense, just Rule11 violations and summary denials, they willfully and inexcusably defaulted, and Plaintiff would be severely prejudiced if a default judgment is not entered. [29]

Jason Collura,victim
Box 934
Philadelphia, PA 19105

March 13th,  2014

---

[29] Unless the mind is changed because of reading this, Plaintiff believes he knows what the plan is for this. Plaintiff knew when they didn't respond to this suit it was intentional, he didn't understand at that point why, he knew something was fishy. It is a somewhat clever and unique way to get rid of a plaintiff likes this one, without any hearings, court appearances, trials, nothing. No long lengthy case. Don't have to deal with this plaintiff saying and doing something about every improper and unethical thing that would go on. He is going to be shocked when a default judgment is entered, but low and behold he has no actionable claims-(something that should not be done with this by law), probably 5 out of the 6 are going to be let off the hook, or he has one or two claims but, he doesn't get any money, maybe a dollar, maybe 50. He is shocked now, he really is, he will have a heart attack when it is another biased,  rotten, evil move against him, which will mark 35 months and not a single decision for him. The default is just the prelude for some evil negative, against Plaintiff,  move, just like the granting of Plaintiff's misinformed motion in December. Still be batting a .1000, no doubt. Plaintiff can carve it stone, he knows it, it didn't take him long to figure it out, he knew long before the January 27th, filing. Like he said, he is already shocked.

26

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| Jason Collura | : | |
| Plaintiff | : | Civil Action |
| v. | | No. 13-4066 |
| Ford,    et al | : | |
| Defendants | | |

## CERTIFICATE OF SERVICE

I do hereby certify that service of a true and correct copy of  Motion For Reconsideration

Motion For Recusal, Brief In Opposition To Ford's  Brief In Support Motion To Set Aside Valid

Judgment has been served upon the following individuals by first class mail

Martha Gale
1420 Locust St # 14f
Philadelphia, Pa 19102

Jeffrey L. Scott
1650 Market, 32nd Floor
Philadelphia, PA 19103

Jason Collura
Box 934
Philadelphia, PA 19105

Dated: March 14th, 2014