## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| Jason Collura | | |
|       Plaintiff | : | Civil Action |
| | | |
| v. | | No. 13-4066 |

Nicholas James Ford, Pamela Pryor Dembe,:
Mary Politano, Steffen Boyd, Steven Austin,
Charles Hoyt,  Robert J. Malvesuto    :
               Defendants

## PLAINTIFF'S FOURTH OPPOSITION TO FORD, POLITANO, BOYD, AUSTIN, HOYT, MALVESUTO'S , MOTION TO SET ASIDE DEFAULT

This is a fourth or fifth reply in opposition to a purported Rule 60 (b) motion to set aside default, this one dated April 11th,  2014, by the above offenders and their disgraceful perjured counsel. Plaintiff has won a default in the matter. They have willfully defaulted, offered no valid excuse, Plaintiff is prejudiced, and have no defenses. He moves to strike certain claims that were not previously made. As proved, they have not come anywhere close to set aside a valid default. Plaintiff  references and relies on exhibits in support for this motion, however due to avoid unnecessary  duplication, he is providing all exhibits in support of this motion, also his motion to strk. aff. "defenses" in his motion for judgment on pleadings motion. Those exhibits are part of and for this motion as well as the other one, only one set of exhibits are going to be filed, and they will be filed with the judgment on pleadings. Once again, **the exhibits are for support for all three motions including this one**.

### A. Factual Background

For the purposes of truth, an event occurred prior to these crimes against Plaintiff. Due tineffective counsel and against his will, he was convicted of three counts of 18 § 3933, and

spent an entire year in jail and years on probation solely for that, even though the **statute was repealed three years prior.** Any supposed determination is not valid. The sentencing sheets were not signed by Plaintiff as they allege. The bogus plea **did not contain a provision**or condition to go into any **specific unit in probation.** That was put on **after**theinvalidly, unknowingly, and unintelligently entered the bogus plea. Nor were there any fines or other costs, other than the normal court fees. At the time, nothing indicated that there were supervision fees assigned , even their own exhibits only state court costs. There was no "electronic monitoring when paroled" that ever took place.

Prior to the sentencing, Plaintiff never had any official thorough health evaluation. They filed what they are claiming to be this supposed evaluation/report, it is only a half a page, a few categories and a few lines in them, it appears as it was whipped up in a minute or two by someone. This alleged reportdoes not qualify as an official and thorough evaluation. Just as important, a lot of what appears in this "report" is erroneous, in terms of information and Plaintiff did not make those statements. In the examination portion of this alleged report, a "PietroMiazzo" supposedly notes there are no symptoms of that kind noted, along with no problems in another similar area. In the assessment portion, there was absolutely no definitive proclamation made, no does it remotely allege in the recommendation portion that Plaintiff should be in that unit, it allegedly notes that even what appears there, "is limited" giving in more evidence that Plaintiff should have never been in the unit. To make matters even worse for their meritless claim, thier purported exhibit H describes a criteria to be in the unit that we know was never met, as there was no history at all as evidence indicates, let alone "diagnosed" with a "severe" problems, nor was he ever "listed as eligible" by anyone. Matter of fact, the only

1

official, sanctioned, legal document signed and authorized in court by Plaintiff himself, which will be described shortly indicates otherwise.

Also contrary to no ethics Nudelman false' declarations there was no "intense" supervison request anywhereto be seen on the alleged report. On the second part of exhibit E, which they was created by a **probation officer,** one of them, **nota licensed doctor**, not any other professional. In that sham labeled and alleged to be a "pre sentence investigation[1]", it claims that the probation officer recommended "community service" and as far as the unit evaluation standpoint it deflected a conclusion to the other so called report by a supposed licensed doctor who they claim was Maizzo, see the first part of exhibit E. Again, this "Dominic Brunelli" who is claimed to author this**, was a probation officer not a licensed doctor of any kind**.

Like the first part of exhibit E just spoke about, this second part of a sham that is alleged to be p.s.i., contains wholly erroneous informationincluding statements Plaintiff never made, at best extremely incomplete of misleading. It is unclear where they got their information from, but it was most certainly not from Plaintiff.**None of the pages of these so called reports were signed or initialed by Plaintiff, not one.**  Like most if not all of the exhibits that were unlawfully filed, they contain completely false statements about a variety of things and fact, or incomplete and misleading. Once again, it is unclear where they got that information and statements from, but it was certainly not Plaintiff. It is believed that possibly they spoke to the excuse of an attorney that Plaintiff had, who did not know Plaintiff at all, knew and did nothing about the criminal case expect force Plaintiff to plead guilty to four chargesthat didn't exist and wouldn't apply, and two is factually innocent of.

As evidence, there is conflicting information on both of those so called exhibits (first and

---

[1] They doctored the title of the title of it, it is clear what the alleged document is, a probation officer conducted it, and it has the categories as a psi.

2

second part of E) about the same questions/ facts. The supposed probation officer which claimed to do his alleged report while meeting with Plaintiff, in exhibit E, part 2, has down Plaintiff is a "African American Male", the other exhibit E first one, claims to have a report date of 2000. Virtually all of the information on both "reports" are false and inaccurate, including even more irrelevant personal information, facts, and at best extremely incomplete and misleading. Note everything that was filed was irrelevant beyond that, it was done out of malice, bad faith, attempt to injure, defame, scandalize, victimize.

What they conveniently left out, was more evidence of the contrary, in the only **document that Plaintiff was involved in, had in front of him, and signed/authorized**, which was a paper involved in the actual court plea, **which states exact opposite in terms of any history** that would be used to place any person in that specific unit Plaintiff was put in. It reads, "I have never seen a doctor or been to the hospital for any mental problems- I can understand what is going on" which was answered in the affirmative. This was **not** for strictly competency to plead. It does not ask I have seen doctors and/or I have been in the hospital for any mental problems **but I can understand** what is going on. This is the only document that pertains to any information in regards to that subject that Plaintiff saw, was in front of, answered himself, signed, authorized. It's funny, that was nowhere to be found in their illegal filings, and Ford long had been given a copy of it. It's funny this legitimate and authentic document was nowhere to be seen.

Also, as we know, Plaintiff only underwent a fully thorough actual health evaluation in October, **what was the result of that**? **What happened there?** The indisputable evidence of the only official authentic document containing information relating to this subject at that time, that was authorized and signed by Plaintiff, and also the only actual health evaluation taken proves the alleged exhibit E, 9-12-00 report, by a "Miazzo", then part 2 of it, some type of a report by a

3

Dominic Brunelli a probation officer  were bogus or at best false, erroneous, invalid- just like plea itself.

In addition to being inaccurate, completely false, defaming, at best incomplete or misleading, all of their exhibits are completely irrelevant to anything in this matter as explained prior. It makes no difference what the original sentence was  relation to illegal acts that happened years later, including scheduling  a unit evaluation for retaliatory malicious purposes, including Ford saying and doing what he did, including if Plaintiff passed their test he was still going to be in the same unit,planning on giving Plaintiff 20 hours notice, telling him he can reschedule then agreeing to reschedule, then arraigning the unit to refuse to reschedule, then after  having Plaintiff follow through and contacting him to reschedule, puts out a bogus warrant, and a hundred other things. None of the false, scandalous, defamatory exhibits are material to any of the claims here, both in fact or law.

They then purport to describe dates of the sentence, which is not relevant in anyway. Next they characterize what they allege to be "rules and regulations". Once again, this makes no difference on anything here, Plaintiff never signed up for illegal, retaliatory and malicious acts, period. Even victims who are forced to sign the form for what it contains still does not mean the conditions are lawful, as their owns courts have consistently struck down many as unconstitutional, whether "agreed" to or not, like their search policy. Moreover, like no ethics Nudelman concedes, all persons "**should be given a drug test on the first office visit." In** Plaintiff's case this was mid 2006. **See their own exhibit H.** On page 4 of that same exhibit it states "**monthly urinalyses are conducted on all offenders if drug testing is ordered by the Court." It was never order by anyone, and every already retaliatory drug test forced upon Plaintiff by Ford was illegal from the door.**

4

He then states that the policy of that unit is that all victims must report once a month, that in fact is not the case, or at least during the time of this complaint and before, as the report time was a **two month** maximum, as Plaintiff has relayed the fact that he was reporting bi monthly in that same unit for 3.5 years until he served Maguire with the suit and Ford started his illegal campaign.The evidence doesn't lie, the cards speak for themselves.

Plaintiff's reporting times didn't "vary" as they claim, although it did "vary" when Ford started his campaign. Their exhibit H's assertion does not change anything, it was updated in April 2013, just two months before Plaintiffs filed this suit. Whether or not they changed the report time later on, it most certainly was what it was in the time in question, as numerous p/o 's were not doing Plaintiff a favor and doubling his report time despite the rules stating one month.

## B. The Offenders Unlawful,  Retalatory, Malicious, Non Compliance With Due Process And Clearly Established Law

   No ethics Nudelman then starts violating Rule 11, 3.3, 8.4, and more, like the     that he is, in what is a second attempt at a script. First and foremost, they are limited to their first script labeled an "answer", especially changing what they had already claimed. No ethics Nudelman has knowledge that a fews days after  Maguire was served in mid February of 2012, all of the sudden Ford became his p/o. Ford was an employee that had just been removed from his job probation, he also was in high school when Plaintiff started going to the building. Right away it is clear he has a vendetta and his own agenda. He starts giving attitude to Plaintiff from virtually second one. and he gets more and more abrasive and demanding, and Plaintiff says wait a minute, you are not going to run roughshod over me, there was no issue with anything coming in today, Plaintiff has done more than what he should have over the years, he knows probation law

5

also the rules and regulations, exactly what he needs to do, and his rights will not be violated. To

condense space in this motion, the following happened[2].

   Unlike the script, the only thing that happened throughout was Ford abusing his power,

acting out of control with his baseless actions. Contrary, as mentioned, after threatening Plaintiff

with getting him "locked up" in retaliation, and after finding nothing against Plaintiff,

---

[2]Ford says, ok you wanna be smart, here you have a urine (drug test). Plaintiff told him he wouldn't get him on that, he hasn't been tested for years because they know he is clean, and this retaliatory test will be clean as well. Not happy he will get his way for Plaintiff sticking up for himself, Ford said we'll see and you know what, your reporting time [ which was 2 months], you are now weekly. Plaintiff said what, you cannot do that I have been coming every two months for years, you cannot change it at all unless you have established a valid reason, let alone 2 months to 1 week. Ford got angry again when his misuse of authority was challenged, went back and forth with Plaintiff, trying to establish that dominance and control that Ford has, and said I'm definitely "going to have you locked up" even though he had no even remote reason other than Plaintiff sticking up himself and his human rights. Then he resorted to looking at the screen and reading, he was trying to find something else to retaliate against Plaintiff, even though he was a model probationer for more than a half a decade. He then said you are going to be stuck with me, I'll make sure of that we'll give you a unit evaluation and I'll hit you with conditions and you won't do them and wind up not reporting. Plaintiff did not have any specific conditions and he was never suppose to be in the unit to begin with, the information at sentencing confirmed that, Ford knew that there never was an evaluation, so his path to jail Plaintiff here was to order an evaluation so he can put special conditions of Plaintiff and have Plaintiff not follow through, so he then violate Plaintiff and jail him. He was looking for anything conceivably to manufacture. Mind you, all of this was within five or six minutes of the very first meeting, Plaintiff never had seen the excuse of a probation officer in his life before.
    Plaintiff mentioned the above, what Ford all ready knew, and he responded he doesn't care Plaintiff is going to take an evaluation whether he wants to or not and he will then be subject to special conditions that Ford thought would lead to incarceration for non-compliance. Plaintiff said the evaluation would come up in a negative result for Ford. Ford said one of their own doctors does it at CJC, and that if it did, Plaintiff would not get out of the unit. Plaintiff said, "what?" He said if you pass it, we do nothing, you are still in the unit. Plaintiff said "what" again, and said so if your doctor gives you a positive result, then you do exactly what you said, but if he doesn't then you don't do anything at all, including taking Plaintiff out of the unit. Ford said that is correct.
    This is equivalent a person being told to take a lie detector test, if they fail charges will be brought against them, if they pass charges will still be brought but they cannot mention it was passed in court. It makes absolutely no sense whatsoever. Plaintiff said there is no way why anyone would do that whatsoever, and said if he took it would have to be fair. Ford said you don't have a choice, Plaintiff said he definitely move to change that, because the eval has to be fair if it is taken. Plaintiff earlier in this meeting demanded to speak with a supervisor and tried to call them. At this point he walks in, it is the only supervisor, and failure of one, in the unit Steffan Boyd, which Plaintiff will describe shortly.
    Plaintiff lets Boyd know about Ford's behavior, and the above issues condensed. Boyd does nothing at all, except change the report time from Ford's 1 week to 1 month, which even that is still a rights violation as there was not an ounce of reason other than illegal retaliation to be dropped from 2 months to 1. After Boyd leaves, Ford says he will email the judge's chamber to get a date for the evaluation, he says only a judge can order it. Plaintiff said give him at least 20 days notice  and he says in the meantime,  he will be bringing these issues up including the illogical eval demand, complaining about him, moving to change him. Plaintiff then took the drug screening in the building and passed.

Fordhimself proactively brought up an evaluation as an attempt to obtain his goal. The only thing Plaintiff expressed, was exactly what was happening, and that it was anything but proper and lawful, including the fact that after all the above, Ford specifically told Plaintiff he would have to see one of their doctors, in one of their units, and that if he passed, Ford would not take him out of the unit, it would be on himself to take that issue up by filing something,which is a monumental problem because nothing gets heard, as he filed a motion to terminate fees almost three years ago, and it still as of late April has not been decided. The retaliatory attempt to get Plaintiff under the guise of an evaluation, had that as a conclusion, meaning there was no point in taking it.

Unlike the script from no ethics Nudelman, never at any point in time did Plaintiff tell Ford he was homeless. At no point did this appear in the first script by the above, and never even in any of the bogus "summary sheets" by Ford. This is another poor attempt by them to come up with something as a justification. Prior to Ford's start of his campaign, Plaintiff had a residential address on file, in March of 2012, it changed and Plaintiff notified the last p/o he saw in February, right before he served Maguire, by first class mail. It was unbeknownst to Plaintiff that his p/o changed, but it was not at all a problem, because the old p/o's simply give it to the new one, or enter the new information in then give it to the new one, it was done before by Plaintiff. So when the old p/o gave the letter to Ford, they are implying either he intentionally didn't enter in the information and changed it to no address, or if it was entered in by the old p/o he then changed it to no address, or he entered it but they somehow now think it is potential help for their script, it is not for numerous reasons.

Starting from April of 2012, the first out of control meeting with Ford, and then subsequent meetings, when it was asked to Plaintiff if there was any changes in the personal information, he

7

answered no changes, because there was not any. Plaintiff was not aware at that point what Ford did with the address, again he assumed he entered. During that period, when he actually decided to send something to Plaintiff, which as we know was intentionally late and a violation, it was to a p.o. box. This was normal as he always strongly requested the department to send mail there because of obvious privacy and sensitivity concerns, as well as being a more secure method for legal oriented mail. In late July, Plaintiff notified Ford of an address change via first class mail addressed to him and no one else. Plaintiff did not get this back, Ford got it. It wasn't until Plaintiff saw the bogus retaliatory "arrest warrant warning" in late October of 2012, did he realize what Ford did, at least with the second change. Plaintiff did not see any real affect from it however, one that could negatively impact Plaintiff. They request an address solely to harass, search and/or arrest if needed, so if Ford didn't put it down, Plaintiff's feeling was it was on him, meaning it couldn't negatively impact Plaintiff[3]. He was still somewhat concerned because it Ford again being himself, again doing the wrong thing so it had to be addressed.

After Ford continued to play games with appointment times, Plaintiff came in on October 25th, 2012. In that meeting Plaintiff brought it up, Ford attempted to claim he never got the letter. Plaintiff then said it was addressed to you, and I never got it back. He again claimed ne didn't get it. When Plaintiff began to press, Ford loudly said "just give it to me right now". Plaintiff saw him typing, but never confirmed he put it in because the screen faces the other way. Incidentally, not too long after this, Plaintiff sent in a address change to Ford, this time certified, return receipt, somebody signed for it, and he included the that fact (if he was reading it had to have

---

[3] He didn't envision a no ethics supposed lawyer down the line using 10 year old erroneous information to a pathetic attempt to justify one illegal action after another by this absurd claim.

8

already been signed) in the letter. Not surprisingly, it appears Ford actually entered it in the system at that point, because since it was signed for, they don't frivolously again attempt to claim otherwise.

Again, at no point ever in that April 12th, meeting with offender Ford did Plaintiff ever inform Ford of anything of the such, nor did he offer any "assistance" with the fantasy assertion to make sure everything was "stable". Again Plaintiff never told Ford he was homeless and, like everything is, he has black and white proof he wasn't. There is numerous bogus, almost one hundred percent falsified documents labeled "summary sheet"s, and others, created by Ford, and there is not one mention of any of this anywhere in a two year period. There is not a single solitary mentioning in any fraudulent document. It's nothing but no ethics Nudelmandoing what he does. From a legal standpoint, the allegations themselves don't amount to anything at all, it would not be a violation, nor could it ever be a reason to change a 2 month reporting time to 1 week. What was Plaintiff going to do, come back in 1 week to tell Ford he was still homeless? Again, it's no ethics Nudelmman. The desperate attempt fails both factually and legally. Ford changed Plaintiff's time from 2 months to 1 week**almost immediately from the door** in the start of his tirade because of everything stated and nothing else. Plaintiff complained about the above entirety of the unlawful and out of control actions  to Boyd, none of them included this phantom issue. Boyd changed the date to 1 month because he knew it was outrageous for Ford to cut Plaintiff down from the proper 2 months to 1 week for no reason other than punishing Plaintiff for standing up for himself. He failed to supervise, control, train correctly, he did nothing about anything. Even the change should have been back to the proper 2 months, he failed in that.

As mentioned, Plaintiff rightfully had been at 2 months for 3.5 years, again, numerous

9

p/o's didn't decide to do Plaintiff a favor. If the limit at any time in that period was 1 month, then **somebody would have changed it in the 3.5 years**, since they look at the card and give a new dateeverytime. The maximum time was not 1 month at that time, whether or not it allegedly was changed as the suit was filed has no bearing on anything.

"Further", the retaliatory urine test was nothing but that, and as recounted in the complaint, "Ford says, ok you wanna be smart, here you have a urine (drug test)". Again this occurred at the right at the beginning of his tirade. Plaintiff, again, has gone out of his way, in which he did not have to do, to distinguish **why this is illegal**. He did so on the complaint itself, No even actions that would be lawful are not in punishment, here. But as we know, and as he conceded earlier **"monthly urinalyses are conducted on all offenders if drug testing is ordered by the Court."** See their ownexhibit H, that unit's policies and procedureson page 4. **It was never ordered by anyone, and every already retaliatory drug test forced upon Plaintiff by Ford was illegal from the door to even start with.**The only special conditions Plaintiff have was to pay court costs. See their own exhibit G, Rules and regulations of probation. He then tries to make up some type of a schedule for Ford's urine tests, as if to again attempt to argue this was legal, for reasons mentioned was all illegal, every time, by their own policy.

Later that same day, April 12th, 2012, Plaintiff did the natural thing a filed a grievance with the excuse of a supervisor Boyd, about all of the out of control and unlawful actions earlier. Boyd, of course did nothing positive, again to supervise, train, control. They are limited to their first script which stated Plaintiff left "several voicemails messages", no ethics Nudelman, after given an unlawful chance to come up with something better sounding, turns it in to "left numerous threatening messages". That is struck, they are limited to their first script. And Plaintiff will advise them of a suit of a suit that is going to be filed or that has been anytime he wants. Matter

10

of fact, I feel like filing another 10 suits right now. No, in wake of Ford proactively bringing up a evaluation in the meeting to achieve his goal, he determined **there** he was going to have an evaluation done, again for an improper motive.

He **had already emailed a request** to get it signed off judicially, because he was unaware a supervisor there can do it. The only thing that was determined by the grievance to Boyd, was that he again showed he is an excuse of a supervisor. The only thing evidence showed is that they violated Plaintiff's rights over and over again,and they can benefit from treatment in the form of judgment against them. In the no ethics Nudelman's first script, Plaintiff's no. 16, he **denied everything** except that the first retaliatory urine test was negative. This includes that Plaintiff met with Ford with that month, although he didn't explain how Plaintiff found this out, or the fact he reporting time was once a month, but he didn't see Ford in May, it was two months. They are limited to the first script, which denied everything except the negative urine test. In this struck one, he states Plaintiff met with Ford on May 15th, 2012, this is despite, again, knowing that there was a meeting and it was May 10th, 2012. **He has the dates.** Second time he bad faith denied a meeting on May 10th, 2012. In the first script, no ethics Nudelman denied that Plaintiff was given another urine test on that date (he denied a meeting), they are limited to that. In this struck one, all of the sudden Plaintiff was given one. Contrary to what they attempt to argue, as explained "**monthly urinalyses are conducted on all offenders if drug testing is ordered by the Court.**" See their ownexhibit H, that unit's policies and procedureson page 4. **It was never ordered by anyone, and every already retaliatory drug test forced upon Plaintiff by Ford was illegal from the door to even start with.** It was not lawful or done with proper motives asPlaintiff let Ford know that he was still going to pursue his complaints. Ford said, oh and before you leave here is another urine [drug test].

11

No, the in meeting, Ford tells Plaintiff he never heard back from a judge to schedule the evaluation that he will let me know, Plaintiff said he needs 20 days notice. Plaintiff again reminded Ford he still has an issue with what all that was described prior, including the illogical and unlawful lose, lose scenario with the proposed evaluation, but Ford did not care. Nor did he care about changing Plaintiff's time back or anything else that was complained about. Then after denying there was even a meeting, this script has Ford mentioning an upcoming status hearing in the meeting, and that Plaintiff could express his feelings then. **No,** no such thing occurred, as recounted. Again he didn't know he could get a supervisor to schedule  what is supposed to be a lawful eval, with a proper motive, and proper action if the person passes, etc., so he told Plaintiff he emailed to get a judge to sign off, he never mentioned a status hearing or anything or the sort. No June 7th, 2012, Plaintiff showed up and learned Ford planned to tell him late on June **12th, about a scheduled eval 20 hours later, one that he was given on May 11th. This is "in accordance" with Ford's practice of not giving any notice about anything.** Far, far from the script's fantasy assertions, from no ethics Nudelman. 20 hours, no notice on other important things, no summary sheets**, that's Ford's practice.**He also can't add very well either. Also, conveniently makes more bad faith general denials about everything else that went on in the meeting[4], that the eval could be rescheduled once, that Ford agreed to do it, told Plaintiff he

---

[4]It states on the form Boyd gave him which he then gave me "I have not contacted the p/p about his appointment. You will need to do that". Plaintiff asked Ford if he received on May11th, why did he not immediately send it to Plaintiff. He said I just thought I give it to you when I see you. So even though he had it on May 11th, he was planning on giving it to Plaintiff on June 12th at 4:00 p.m. for a June 13th, 12 p.m. appointment, giving him 19 hours notice as opposed to 31 days. The due process and retaliation as well as other claims continue.

   Plaintiff asked how Boyd did it, when he just said only a judge can do it, Ford said he didn't know he thought only a judge can do it. Of course the evil intent and illogical premise of the evaluation had not been addressed due to the fact there is zero accountability in that building and FDJ. Plaintiff, and everyone else, needs due process and just basic notice of anything, but in this case Plaintiff still had to rectify or attempt to, the above crucial problem. Plaintiff tells Ford he needs more time and it has to be rescheduled and Ford agrees with Plaintiff, and said "you can reschedule once, second time is a foul." It also states on the form, "The p/p will only get one chance at a rescheduled appointment." Despite this agreement  he says he can't reschedule it now to call him before the 13th. Plaintiff  said give me an email where I could write you to reschedule, because Plaintiff wanted documented writing, he said I can't give it out but just leave a message. Plaintiff said he will call on the 12th and Ford said ok, fine. However once

couldn't do it then, refused to give an email, knew Plaintiff was going to call to reschedule and agreed to it.

No,on May 31st, 2012, and June 11th,  2012, Plaintiff properly filed grievance with Steven Austin and left a message for the call to be returned, which the excuse of supervisor did nothing with. Again, they are limited to their first script, and again Plaintiff will advise them of a suit of that is going to be filed or that has been anytime he wants. Matter of fact, I feel like filing another 10 suits right now. Then he decided to call Plaintiff back 15 days later, but Austin did not want to do his job, handle a grievance, properly supervise, train, control, not act with deliberate indifference. More specifically,[5].No, in fact it was Austin himself that did not want to talk about his subordinates, refused to return the messages, waited a full 15 days, refused to let Plaintiff speak, and everything else recounted.

No, on June 11th, 2012, Plaintiff called down to the evaluation unit which is in the basement of CJC, to confirm he indeed had a valid appointment given the fact that Boyd made it, and also

Ford told Plaintiff he was not rescheduling it then and also to have Plaintiff not give it to him in writing in an email, then Plaintiff knew what the agenda was. Ford knew Plaintiff knew what he was going to as well.

[5]Plaintiff said his first name and began to cite the above factual background so he can progress the proper relief, Austin cut Plaintiff off and rudely asked why he was complaining to him and Plaintiff said he is going to explain why, just let him relay the facts, Austin said no we'll get to that later, and repeated the question, Plaintiff again repeated what he said but Austin was not letting me talk, Plaintiff said either you are going to let him finish talking so he relay the issues of we cannot talk, Austin continued and the conversation was terminated. No accountability combined with extreme arrogance and ungraciousness.

Austin called back and left a message claiming that he was willing to talk if he got his way, which he was not ever going to get. It was clear Plaintiff could not have a live conversation with the excuse of a supervisor so later that day on June 14th, he left Austin a message detailing the deaf earred grievance, that Plaintiff knew was going to get more deaf.  Plaintiff relayed with precision everything above that was told to Boyd, Ford's behavior, a p/o change, a report time reset, correcting the evaluation situation, and more, including a complaint about Boyd who failed to do his job correctly. They specifically have their voice mail set to about 90 seconds so people can't leave any type of real message, so Plaintiff had to use more than recording to get the facts, issues, and relief requested, this does not factor into anything but that.

13

to reschedule it directly with that department, in other words to cover himself both ways because

he had a feeling that Ford was going to do what he had been doing. Further, as recounted.[6]

No, as just restated, he placed one 20 minute call, got an employee was

extremely rude, loud, belligerent, said she didn't know anything about scheduling, who does it,

how to reschedule, nothing.Plaintiff mentioned on the form it states the rescheduling is made

here, so obviously the scheduling would be. She responded with more rudeness and more

non-cooperation, Plaintiff then asked for a supervisor, and was transferred by this employee to

the excuse of one Politano. From there, again it was clear what was going on, Plaintiff had two

---

[6]However, Plaintiff expected a problem with it, and sure enough he was right. This even though Plaintiff didn't know anybody in that unit, matter of fact he had no idea the unit even existed. In the back of Plaintiff's mind he was strongly believing Ford or possibly Boyd called in. He first talked to a clerk, it almost seemed as if they were on cue, extremely rude, loud, belligerent, said she didn't know anything about scheduling, who does it, how to reschedule, nothing.

Plaintiff mentioned on the form it states the rescheduling is made  here, so obviously the scheduling would be. She responded with more rudeness and more

non-cooperation. Plaintiff naturally asked for a supervisor, and they transferred him to  MaryPolitano. Politano is actually an employee of probation, not only that, the same unit as Ford. Her supervisor is Boyd. Even though Plaintiff never knew of the unit's existence nor ever spoke or heard of anyone there, it almost seemed as if she was expecting the call. She pretty much picked off where the clerk left off in terms of loudness attitude and rudeness. Plaintiff was trying to work through that so he can resolve a very crucial issue.

It took six or seven minutes and Plaintiff finally after being cut off, over talked, plus more, got an answer to the first question that they claim after post trial a probation supervisor can request a unit evaluation as opposed to pre-trial where only a judge can.

After having established that the appointment was valid on its face, Plaintiff had one simple objective needed to reschedule it, which she had to have known from Ford prior to the conversation. In between her cut offs and over talking, extreme rudeness, Plaintiff explained his situation in detail, illogical scenario, lack of time, from states you can reschedule once, etc. Plaintiff simply requested to reschedule the evaluation. At that point she looked and her listings and said Plaintiff is not on the list for that day. Plaintiff at that point knew for a concrete fact Ford and/Boyd spoke with her prior. He had, had a strong feeling based on some things, but now the jury had spoken. Notably, as we learn in the future, Ford had attempted to give Plaintiff notice of a vop hearing after it had taken place, so this behavior from his co-worker falls right in line.

When Plaintiff began to respond, she got loud and would not let him speak, cutting him off, over talking, to which at some point he had to  blurt out he had the form right in front of him, explain why it says that. She responded by again getting loud and argumentative and this went on for a couple of minutes. After Plaintiff asked who her supervisor was, she then coincidentally claimed somebody had found it, and it was for that day and time but instantaneously proclaimed can't do anything with it, they don't make schedules, you're your probation officer can. Plaintiff asked her if she was joking, and said it's common sense that this unit handles the evaluations not the probation department, so obviously they call here and get a schedule from you, they would not call up to your place, with your staff, and say ok you are doing this at this time, ok you are seeing him now. In other words, how can somebody outside  tell them what time they are going to do things. Plaintiff also brought up the form says it in writing that, that unit reschedules. However, she again got loud  and declared that's how it was. When Plaintiff went to respond she cut him off, and got loud trying to over talk again. After 20 minutes Plaintiff did not accomplish a simple goal, and also because of Politano's behavior, Plaintiff could not even cancel the appointment and have it rescheduled later by whoever.

14

simple objectives, to establish the validity of the appointment since Ford had repeatedly said only a judge can order aeval, then reschedule the eval due to numerous reasons already explained. First, contrary, Plaintiff was only told a supervisor can do it, not that his was lawful or proper. After establishing that apparently supervisor can do it, Plaintiff requested to reschedule and explained why, **Politano told Plaintiff he did not have one scheduled for that day.** Only after he asked to speak to her supervisor, did she admit it was scheduled, but then refused to reschedule it, **even though on the form an employee Jules, in which she supervises for,  can reschedule it**. A full 20 minutes Plaintiff did not accomplish a simple goal, and also because of Politano's behavior, Plaintiff could not even cancel the appointment and have it rescheduled later by whoever.It was pre arraigned plan with Ford. In addition the entire timewas extremely rude, loud, cutting off, over talking, belligerent, and more.

No ethics Nudelman submitted what looks to be some type of sloppy writing on napkin. The summary sheet, which was never, ever given to Plaintiff by Ford, rather after he had to beg another at a hearing, did not contain this alleged note. This looks tailor made, and in addition nothing happened but the above, in was one  continuous, because the first employee refused to do her job properly, she transferred Plaintiff to a supervisor. That supervisor, on the same call, made no mention of anything on the napkin they submit, it's wouldn't be a violation of probation, or crime, but they attempt to bring it forward afterwards as if it was, but very interestingly, after the same employee transferred me to Politano never said a thing about it, just even in passing. Nor does the alleged email that was purportedly submitted by Politano on that same day, which again, Plaintiff  never received. This also looks tailor made, because they were aware, like the alleged,  napkin type note Plaintiff never received it.  And to address what is on that alleged email- he already did, it is completely false in most regards for reasons stated, and in

15

some minor regards, incomplete, misleading. The whole point the whole time was to get it rescheduled, at no point did Plaintiff tell the excuse of a supervisor he was not coming, conversely, indeed Plaintiff never failed to appear for the eval, because Ford agreed to reschedule it and directed Plaintiff to call and leave a message, in which he did, this was after he told Politano and the unit to shut Plaintiff out. There was no eval to appear to. Also, the form in which no ethics Nudelman**did not submit**, does not lie. They are claiming Politano left right after they were served, so if that doesn't tell the story, then it can't be told.

No,the arrest warrant was issued on June 15th, 2012, was **anything but** proper and lawful. Boy, no ethics Nudelman is already past the bottom of the sea, this time he had the name changed on the warrant form to read a "Frank Romeo". Plaintiff has never heard of this mysterious character, and most certainly did not order the warrant. Another disgrace, and more Rule 11, 3.3, and 8.4 violations. What a joke, all of the sudden, Ford the p/o, who orchestrated every single unlawful action in a two year span, admitted several times he put the warrant on, remarkably somehow did not sign this warrant form, but a "Frank Romeo" did. They did this because obviously Plaintiff never had this form. Anything to attempt to keep Ford from justice, anything, no matter how despicable. Ford's signature appears on the real form, and since they want to be slick, Plaintiff is added Ford's alter ego, "Frank Romeo" as a named offender is this matter. There are other several problems both factual and legally. First, Plaintiff **never absconded from anything**. He reported on his June 7th, 2012 date, and once again, rescheduled the evalon June 12th, 2012for the reasons listed , like it was agreed on June 7th, 2012 He did not abscond anything. Legally, **it is not sufficient for a violation, let alone an instant arrest warrant.** In their own exhibit H, which they claim is the procedures and policies of probation and that unit from March of 2011 on, it reads:

16

Absconder Status

**After one missed appointment, the probation officer must send an arrest warning warning to the offender. If the offender fails to report on the date given in the arrest warning letter, the officer will issue a violation of probation warrant.**

Moreover, again, even though it is maybe the most crucial piece of evidence, or at least one of a couple, coincidentally, no ethics Nudelman did not submit this form. The form has everything that Plaintiff said ti has on it, including black and white that an employee Politano supervises for in the unit, can reschedule the eval. In addition to that, the eval form states the probationer will get **"one chance at a rescheduled appointment"**. The reason why no ethics Nudelman didn't deny that it states the latter was because he knows Plaintiff has it. If Plaintiff did not, then it would be he was never allowed to reschedule. Wow, it is remarkable, he submitted all of this completely false, doctored, immaterial, scandalous, irrelevant, defamatory, erroneous, misleading, exhibits and purported documents, but not this utmost important one. Wow, what a coincidence.

They openly admit penalizing Plaintiff for First Amendment rights of filing grievances. At no point in that sequence or any other, did Plaintiff ever violate probation or and law, nor did he do anything improper at all. The only thing that is delineated, is all of the above, including the fact that Plaintiff's rights were violated, they refused to do their job lawfully and properly, and on top of that that the employees were disrespectful, rude, belligerent, loud, abusive in some conversations. No doubt, no ethics Nudelman, after switching Ford's name, put the word "disrespectful" in the tailor made form, because his friend just used that in total baseless accusations about alleged inferences that would be wholly proper and just. What a joke. Also the warrant was only put out by Ford and Boyd after Plaintiff filed a grievance with Austin on June 14th, not June 15th.

17

Bottom line, legally, just like factually, they have no defense, no claims, no case, it's open and shut situation. Incidentally, on box 17 of the warrant request form when it asks if there is any issues to be in **the unit Plaintiff was in the box is checked off no,** yet  moreevidence that Plaintiff was never supposed to be in the unit.

No, Plaintiff filed a grievance with Austin on June 14th,  2012, not 15th,  after Austin refused to do his job and to have a proper conversation, after he refused to return messages. Also a grievance was filed with Boyd and Austin on June 20th,  2012. The messages contained complaints about all of the above unlawful and out of control behavior, including failing to supervise, train, control. The excuse of a p/o put down the calls were "an attempt to voice issues he has with the probation department". If anything ever said was actually accurate from Ford, this would be it, as it is always going to be just an attempt. Again, Plaintiff will them they will be sued or have been, whenever he wants, matter of fact I feel like filing another 10 suits, and deserve to. "Rambling tirade" is what you would call these filings from no ethics Nudelman, also Ford's behavior in the booth, and elsewhere, during that time.

Contrary, Plaintiff called Politanoon or around June29th, 2012, after Ford intentionally confused Link in that he wanted us to come in to Arch for an eval, which they don't take place there, (plus none of the issues had gotten worked out).Plaintiff obviously needed to verify this information, so he called down to that unit, they told Plaintiff a supervisor (it was believed she was the only one) was not available then. Consequently, he tried two more times, they claimed the same thing. After the third call, not fourth, he called administration in the building and talked to a director/supervisor, who then forced Politano to get on the phone, which is the only way she did. Plaintiff explained the situation to Politano in hopes of making some leeway to figure out what was going on. Not surprisingly, she was again extremely uncooperative, rude, loud,combative,

18

over talking, belligerent, and more of such. It was clear this time as well there was a meeting of the minds with Ford, and probably Boyd. Like everything else, this is a far cry from what appears on the farce coming from them.

Plaintiff was however unaware of the bogus warrant when it was issued. On Monday, June 18th, at about 4 p.m., Ford called Plaintiff but never left a message because he did not want to incriminate himself further then he already was. No, the next day on June 19th, Plaintiff called Ford, and Ford said he was calling about the "missed appointment", before Plaintiff can say anything he says, "oh I got your message that you needed to reschedule". Plaintiff asked why would you call it a missed appointment when it was anything but, Ford said "my fault" and "don't worry about it"[7]. They claim it was potential "flight risk", in that after Ford launched a campaign of retaliation then put out a one hundred percent bogus warrant, to divulge the fact there was bogus warrant would not have been proper. This is despite they have filed an exhibit that states they must send out arrest warrant warnings before requested a warrant.

In late June, an attorney Patrick Link attempts to stop the injustice. Ford of course is not picking up the phone, not returning messages. Finally, Ford decided to communicate with Link. Link said Ford refused to tell him why the warrant was issued, give him a summary sheet anything in writing. Ford then intentionally confused Link in regards to coming into Arch Street for an eval, which made no sense. Plaintiff spoke with Link who ultimately clarified that Ford is claiming for Plaintiff and Link to come to Arch St, to reschedule the evaluation, not to go to the evaluation,

---

[7]Plaintiff asked about the rescheduling in which Plaintiff thought could be a legitimate reason why Ford called, although Ford's prior behavior and current on the call speaks for itself and Plaintiff has to assume otherwise, nonetheless Plaintiff asked about it. Ford told Plaintiff he wanted Plaintiff to come in to get a new evaluation date. Plaintiff said why would he need to come in for the date, he has no plans to come in before the required time of July 12th, and he needs it in writing to begin with, it can be sent. Ford said I don't know I was just thinking it would be easier but we can talk about on your next visit. Ford never mentioned the bogus warrant in the conversation.

19

he says Ford is going to remove the bogus warrant. On July 3rd, Plaintiff and Link go into the building, Ford tells us he is going to take the bogus warrant off, requests Plaintiff come into the booth. Plaintiff makes Link come into the booth to be a witness to whatever Ford claims. Ford did not speak on the bogus warrant, summary sheet or anything in writing, nothing about anything he did. Instead he told both of us, that he will have a new date for the evaluation within 10 days, Boyd was on vacation that week. Ford said he will give the date both of us in writing. Link is a witness to this. We both said ok and left.Ford had given Plaintiff an August 7th next report date.

**No,** the warrant was "promptly removed" because Plaintiff got an attorney breathing down offender Ford's neck and nothing else. Plaintiff **never had stop reporting**, he had made every single report in up to that time 7 years, including June7th, 2012, and his next report date was not until July 12th,  2012. **No,** Plaintiff's attorney did not agree on anything, Ford stated he would give **both of us a new date in writing,** for what he was calling the unit evaluation. Plaintiff realizes no ethics Nudleman, like what he calls his client, has severe mental issues, but delusion shouldn't be as strong form him not to realize Link will be at this trial and stating the truth.

Time goes on, days turn into weeks, Plaintiff hears nothing. On August 2nd, 2012, at about 10:30 a.m., Plaintiff opens up a letter from Ford, instead of anything relating to the above, it is avop notice, for a hearing **23 hours** away, on August 3rd at 9:00 a.m. He gave Plaintiff **23 hours notice** of a bogus vop hearing, which entails the strongest of liberty interests. Plaintiff did an investigation and learned that Ford turned right around on July 3rd, after our conversation, and requested the vop hearing, which was either granted the 3rd, or fell over to July 5th (because of holiday). First, Ford continues his illegal and rights violating behavior after telling Plaintiff and Link about an evaluation then turns right around after we walk out and schedules a bogus

20

vop hearing. Second, he knew about it July 5th at the latest, but chose to give Plaintiff 23 hours notice.

**No,**he punched in the postage through on the envelope reads, on **July 30th, 2012**, and knew it was even longer after that to reach Victim. So Ford timed it so that Plaintiff would not receive the notice until August 4th at the minimum. It was only by that good fortune that it was received on August 2nd, and it was also the same that Plaintiff decided to open it immediately.

**No, he did not ever contact Link about anything.** Again, he realizes no ethics Nudelman has issues, but delusion should not be that strong to realize reality that Link is going to be at this trial. **No ethics Nudelman makes no attempt to come up** why Ford 1) **never rescheduled the eval**2) **instead turned right around and requested and got a vop hearing.**After Ford tried to give him notice after the bogus hearing occurred, thankfully things went quicker than he planned and Plaintiff got it 23 hours before, **he himself** got is postponed until August 14th, 2012. The fact that they claim Ford gave Plaintiff a sheet of a the hearing postponed with the August 14th date on it, **does not mean anything Plaintiff was the one who obtained the date himself,** you cannot give notice to someone who **themself instigated the exact thing in question.** More insanityby no ethics Nudelman.

Next up, is more of the same. **No** Ford did not on August 8th, 2012 attempt to call Plaintiff on the phone with "instructions on how to pick a copy of the hearing summary sheet". Again pure insanity.**No**, **he never**gave it to Plaintiff, **never even offered** it at the August 14th, 2012 hearing, Plaintiff had to plead with another one of those whatever they are. **Ford maliciously scheduled the vop hearing** on either **July 3rd, 2012 or at the latest July 5th, 2012,** never told anybody, **he would have had to submit and possess the sheet then and should have immediately sent it out.** The bogus hearing was for August 3rd, 2012, despite having it for at

21

least a month prior to the scheduled hearing,**he never gave it to Plaintiff.** No ethics Nudelman

drew his script up so fast that he didn't stop and think again. After it was rescheduled and

Plaintiff came in on August 7th, 2012, he demanded he get this farce of a sheet from both Ford

and Boyd, **that they had for more than a month at this point,**and they deny.

Why would no ethics Nudelman insanely ignore all of this, then claim **Ford called him**and the

**next day**August 8th, 2012, **to pick up the sheet.** There are several extremely devoid of common

sense things. Anyone without delusion, pathological lying, and a whole slew more of mental

illness and disorders, would obviously **know he would gave the sheet to Plaintiff in July**,

before the August 3rd hearing. Past that, in his above scenario, Ford **would have given it in the**

**August 7th, 2012 meeting** if he was to give it at all before the August 14th hearing, in which he

wasn't because he would have already given it long before the August 3rd date, so he wasn't for

the next date. Obviously, he **wouldn't call the next day, after he had the sheet for more than**

**a month, never gave it to Plaintiff and Plaintiff was just there demanding it the day**

**before.**Plaintiff's phone was operating fine, there was never a call. Next, obviously he**would**

**not call for Plaintiff to pick it up, he would have mailed it. Why would he call on August**

**8th, to have Plaintiff pick up the sheet he had for more than a month and was just there the**

**day before demanding it.** Totally asinine again, Mark Maguire Jr. Yet another clear sign needs

intensive treatment.

On August 14th, 2012, Plaintiff showed up to the bogus and had to plead with another one

of those whatever they are, to give him the fraud summary sheet, even still, he not give the

attachments referenced in the sheet (the alleged napkin note and alleged Politano fraud email),

Plaintiff never received them. Ford threw a mini-tantrum when Plaintiff's lawyer postpone the

bogus hearing until September 26th, 2012. Ford was going to leave without giving Plaintiff a

report date, since he had refused an actual one prior just the date at this hearing, in another attempt to get manufacture something on Plaintiff.In front an attorney, he proactively asked Ford about the next appointment date, because he did not have one. Ford signed the card for the 9-26-12 hearing, which he now was calling status. This meaning, Plaintiff again had no true reporting time for an office visit. No, **Plaintiff's attorney did not inform Plaintiff anything was appropriate.** Again no ethics Nudelman is having issues, this attorney will be at trial. It was never proper to give that report date as a court date, like the previous time, **because court dates change obviously**.

On September 26th, Plaintiff showed up for the vop hearing, he was immediately informed it was canceled. It was later found out what Plaintiff thought, that the reason was because it was as frivolous, baseless, and malicious. At that point Plaintiff called Ford who did not answer. Plaintiff left a message stating that he was there, and will be waiting for him, or to call him back. Plaintiff waited 90 minutes, neither Ford or anyone from probation was there or ever showed up. Ford knew he signed Plaintiff card as that date, **there at the courtroom**. Plaintiff's attorney who was in another courtroom, text him to go home, Plaintiff left and, Ford never contacted him with further instructions. Again no ethics Nudelman attempts to create another absurd story. **No,** Plaintiff **reported to the courtroom which is how he found out it was canceled.** How could Plaintiff check in with Ford "in court" when **Plaintiff was in court and waited 90 minutes and Ford wasn' there?** Again Ford insisted plaintiff report in that courtroom on that day which he did, he wrote 1103, not 1401 Arch. Also, **how could Ford be at both places at once** either he was in the courtroom or at Arch not both. He was never in that courtroom that day, and never picked up or even returned the call at Arch.

23

On October 10th,Plaintiff received an "arrest warrant warning" which Ford mailed October 2nd. It states "you have failed to report to your probationer officer as required." Obviously, as just recounted, that is anything but the truth, like everything else in their campaign. It wasn't in accordance with anything, but his campaign, **obviously it should have never been sent.** Their friend earlier spoke about it as due process, except for this notice…., **no**

**the notice is not due process rather evidence of retaliation because Plaintiff did report to where he should have, waited, called, etc. It's not anything positive- at all.** To top that off, Plaintiff checked with CJC, he put in a warrant request on October 6th, 2012, which was obviously turned down for being baseless and malicious.

Plaintiff spoke with Ford the same day, the October 10th, and Ford proclaimed Plaintiff had until the Oct. 25th to come in. Plaintiff told Ford to send it in writing him or an attorney Ford refused and hung up the phone. Plaintiff was downtown on the Oct 24th, called in to see if Ford's story changed, sure enough it did, Ford claimed he was busy, Plaintiff could not come in that day. Ford said he changed it to the Oct 25th. On October 25th, he came in and Ford declared he was going to request the vop hearing again, although he didn't say why. He also claimed he didn't know why the hearing was canceled. He also hit Plaintiff with another unwarrantedand unlawful urine test, **in which was never ordered by any court**[8]. It would have been unlawful even it otherwise lawful. It was illegal.

**No,** Ford said and wasthe bogus hearing was being requested again, not rescheduled. It was done for being frivolous and malicious, he was going to abuse the process.The next month, on

---

[8]Contrary to what they attempt to argue, as explained "**monthly urinalyses are conducted on all offenders if drug testing is ordered by the Court.**" See their ownexhibit H, that unit's policies and procedureson page 4. **It was never ordered by anyone, and every already retaliatory drug test forced upon Plaintiff by Ford was illegal from the door to even start with.** It was not lawful or done with proper motives as Plaintiff let Ford know that he was still going to pursue his complaints. Ford said, oh and before you leave here is another urine [drug test].

November 29th, Plaintiff reported and Ford told him he put in another request for the bogus vop

on November 20th, 2012, although he wouldn't tell Plaintff what the "official" reason was for, it

was abusing the process again. Consequently, on April 11th, 2013 Plaintiff reported and inquired

about the status. Ford stated that they denied the request for the hearing, because it lacked both

merit and also substance in terms of a violation. Put differently,it was they saw right through the

baseless and malicious prosecution.. Ford specifically declared he was not going to **request it**

**any further**. He had found out that it was because of him and his behavior that his bogus hearing

was canceled, not because of any appeal.Again, he put it in on November 20th, and then was

informed that it was not going to be rescheduled based on those reasons, he did not send in

another request during this entire time, this has been confirmed.

   As explained, Plaintiff filed a complaint with the higher ups at the end of April, in which

records indicate was received on May 4th, 2013, and a call was placed on May 6th, 2013 to see

what they plan on doing with itand they confirmed it was given to a person to investigate. Ford

without question was informed of the complaint against him by May 10th, in response turned

around and requested the bogus vop hearing again. There is no other reason than more

punishment, he conceded on April 16th, 2013 that he found out the original hearings were

canceled because they were baseless and malicious, and the same for the Nov 20th, 2012, which

was denied for the same reasons.He also explicitly declared that he was not going to put in

another request, based on that.

   Next they go outside of this suit, with more of their script. They also submit more extremely

fraudulent documents they call summary sheets. Just like everything above, no ethics Nudelman

does what he did for everything inside of the suit. These violations will be addressed in another

suit. Very quickly, Ford abused the process as explained, got his probation  hearing scheduled for

July 23rd, which was listed as a vop on the criminal calendar, and Plaintiff has that as proof. It was continued until September 6th, 2013. Ford never gave **Plaintiff the summary sheet for the Sept. 6th hearing, Plaintiff did not get it in court either**. The next summary sheet, does not contain the "material" that was the Sept 6th, that they attached, Ford omitted it. The final one was held on October 31st, 2013, that to like the first run that was canceled, terminated in Plaintiff's favor.

Offender Ford was notified that he was sued, also the other offenders there at the end of July of 2013, and at no other time, and he was also instructed to continue his behavior because it will lead to another lawsuit. As expected he was furious, and did in fact retaliate numerous times against Plaintiff, he wasn't the only one, a couple of times it was literally word for word. Just like Plainitff thought he turned around and openly and blatantly retaliated. Again, what appears on the specific "summary sheets" submitted that are outside of this suit- are just like the ones inside, total, total fraud, they could not be further from truth, or a minor percentage incomplete/ inaccurate. It is again to the point of absurdity like what is inside this suit. It is unclear why no ethics Nudelman submitted them as if it helps their cause, it doesn't at all. And the fact Ford tried to save face in regards to the proceedings outside of the suit, mainly in Sept and Oct, after he was notified that he was sued (he even stupidly stated one date he was told, then in another "summary sheet stated he was told for the first time two months later) means absolutely nothing. It changes nothing. They fail, miserably- again. All these violations that occurred outside this suit will be addressed in another fashion, not here.

Very important and material, nobody did anything wrong at all in the fantasy they bring forward, but faced with overwhelming evidence of guilt, most of the offenders got outta dodge and tried to escape justice once they found out about the suit. Malvesuto left just a couple of days

26

after he was notified he was sued, Politano took off right after Plaintiff notified the other

offenders, she was still listed on a online chart as of June 2013, but not in a November of 2013,

Boyd knew about it in July, but waited until they were served on November 7th, to take off, he

was still there right just a day before that, was a supervisor for more than 10 years. Ford, is

similar to a sociopath, he doesn't understand the gravity of his offenses, he can violate

somebody's rights a ten-thousand times, and in his mind it is okay. Ford has other severe mental

disorders includinglike, Nudelman delusion, pathogical lying, other personality disorders. Like

Nudelman, Ford needs intensive treatment. Plaintiff has discussed this with Ford, Ford said "how

do you know I'm not seeing someone", Plaintiff responded it's not working you should see

somebody else. However, Ford refused any mental health services that Plaintiff was offering.

Out of the three of us, Plaintiff is the only one who is sound mind and deals with reality as well[9].

Plaintiff hopes that this case can start the intensive treatment that both Nudelman and Ford

needs.

## II. Argument

---

[9] As we know Plaintiff never, ever was supposed to be in the unit to begin with, *even with* that supposed 10 year documents that came from them, was fully erroneous, still was never recommended by any doctor nor remotely qualified via criteria set forth by policy. The he recently passed another test by their own doctor. Contrary to what appears by Ford, no, in fact that is not accurate or complete, Plaintiff was unlawfully told after a bogus conviction that he had to be in that unit, therefore he was told by that unit that he had to sign up for counseling. Plaintiff first went to a place two times, he told them he was there because he was forced to show up and sign up. They did an intake, the second time Plaintiff went they said it since he had no issues it did not make sense for him to be there. About 10 months after this, the unit began asking about it, Plaintiff signed up at another place, went there about 6 times in 18 months, did nothing in terms of any phantom problems, not even counseling in that sense, Plaintiff spent the time talking about and explaining about his bogus conviction, appeal, the legal system- and that was it. Plaintiff went to have something fulfill the unlawful command. Contrary to what Ford put down, there was no "treatment" of anything let alone what he , in order to treat a problem, there has to be a problem. If somebody tells John Doe that he has to go see a foot doctor or else, and he has no problems with his foot, and he goes in to the appointment, is he going to say he got his foot treated or he went to the foot doctor? Now, obviously Plaintiff should have taken issue the for all of the above reasons, even after the bogus conviction, as established he never belonged in the unit both on fact and law, he decided to go the legal route with the case thinking it would be reversed because of statutes that never existed and wouldn't apply, as well as factual innocence. He is just a victim all around.

As already clearly found, the default was a result of willful and culpable conduct with dilatory intent, and Plaintiff will be prejudiced in a default is not entered.Also as long found, they have no defense to anything, let alone a complete defense. This test requires more than frivolous summary assertions of a "meritorious defense", as here. Instead it requires when the script in "the defendant's answer, if established on trial would constitute a complete defense to the action. United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984).Moreover, an affirmative defense strictlyinvolves the **complaint being true.**Sterten v. Option 1 Mortgage, 546 F.3d 278, 284 n.9 (3d Cir. 2008) (affirmative defense as "[a] matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it).[10] As already set forth twice prior, they don't have and defenses, let alone complete defenses, after admitting to the facts and allegations of the complaint.

The factors involved in setting aside a default and a default judgment are the same, In re ArthurTreacher's Franchisee Litig., 92 F.R.D. 398 (E.D.Pa.1981). Therefore, "[E]xtraordinary circumstances are essential" to vacate a default of any kind.Budget Blinds, Inc. v. White, 536 F. 3d 244, 258 (3d Cir. 2008).But extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices, like here. Id at 255.There are no extraordinary circumstances present at all, nor is their good cause."We require **doubtful cases** to be resolved in favor of the party moving to set aside the default judgment `so that cases may be decided on their merits.'" Budget Blinds, at 258, (quoting Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir.1951)). There is nothing to doubt about the facts and law here.

---

[10]"An assertion of facts and arguments that, **if true**, will defeat the Plaintiffs or prosecution's claim even if all of the **allegations in the Complaint are true.**Black's Law Dictionary, 451 (8th Ed. 2004).BoldstarTechnical,L.L.C. v. Home Depot, Inc., 517 F. Supp. 2d 1283, 1291 (S.D. Fla. 2007) (affirmative defense is established when a defendant **admits to the essential facts of the complaint**, "but sets forth other facts in justification or avoidance")

28

Contrary to what they attempt to claim they have raised not a single meritorious defense to anything, let alone, let alone a complete one. In the fantasy world that Nudelman, Scott, and Gene Pratter are in, the suit challenges imposition of probation. I am filing the appropriate things for this repeated and continuing  frivolousand hopeless defense. Just because a robeowner yet again violates the constitution and other things by attempting to adopt it does not do anything. I'm filing a another recusal motion,  a writ,  a complaint, also Justice Ginsberg is getting a letter. Just for spite, for this absurd frivolous repeated assertions I'm filing another suit as well.  As stated**IT DOESN'T MATTER WHETHER  THE CONVICTION OR SENTENCE WAS, ANY PLACEMENT IN THAT UNIT, ANYTHING ELSE, WAS VALID OR NOT, THE VIOLATIONS IN THIS PART OF THE CASE ARE ILLEGAL, REGARDLESS WHETHER IT IS DOUBLE ILLEGAL OR NOT.**

Going by this present, then explain all the probation cases listed and not listed, why didn't they get dismissed with Heck? There is nothing not to understand, it is a couple of lower than the bottom of the sea what Plaintiff said before and a friend who desperately what to get rid of Plaintiff. Like I said I will tolerate it, I am vigorously pursuing ethics issues on everybody until I get justice, like in the other matter. I don't care how many attempts I need, justice will be served. For spite I'm filing another suit against these same offenders as well, and if the same preposterious claim is asserted and even partially given credit, there will also be the same as in this case. I have had more, more than enough. No ethics Nudelman, keeps rambling on, "Plaintiffnow improperly claims that his probation was illegal and challenges certain probation requirements,…hearings, appointment attendance, drug screenings", unit evaluation". No, that is in the fantasy world.

29

Anybody is else whose mind and vision works fine can see about a thousand unlawful acts against Victim n a two year campaign of retaliation, which included all of the above. There is no requirement for any conviction or sentence, that a person's rights to free from f.a. retaliation, to have due process, to be free from malicious prosecution, and twenty others things get extinguished. The offenders have no specific facts that support any defense, it is just the opposite, as their new "facts' and claims support a verdict for Plaintiff right now, and the exhibits dealing policy and procedure the submitted, makes the case even more solid for Plaintiff than the already concrete case he had, now it is a fortified concrete case. They shot themselves in the foot.

No, contrary again to fantasy, it couldn't be more of a case that shows  that protected speech and activity was a motivating factor in all the illegal actions recounted, over and over again. Also, the temporal proximity cannot be and more telling as well. No, again contrary to fantasy, no facts show their actions were proper or lawful with the facts of this case. For instance, Plaintiff was given four tests that extracted urine from him (the fourth on August 22nd, 2013 the first visit after Ford learned he was sued), that were illegal from the door because they were not authorized by any court via their own policy in which they submitted. And if they were other lawful, which they weren't, the Supreme Court precedent establishes that they still would have been unlawful.  Further, offender Ford started retaliating almost from the door as soon as Plaintiff stuck up for himself, changed three report time from 2 months to 1 week, from the door. See complaint, "Ford said we'll see and you know what, your reporting time [ which was 2 months], you are now weekly", also I'm definitely "going to have you locked up. As already stated, the actual facts appear on the complaint, 1) at no point ever did Plaintiff tell Ford he was homeless, 2) as mentioned, nowhere in two years worth of bogus, fraudulent, perjured, criminal

like documents labeled a "summary sheet" or other submission does it even remotely suggest this

3) he is doing it again for this one, nowhere on exhibit "H" does it even suggest that "stability" is

involves a residence or that somebody's time should be changed for that, let alone from 2 months

to 1 week. Matter of fact, in this situation, in addition Plaintiff never said he was homeless, he

could not be more stable, at that point he had been on parole/probation for 6 years, and never

missed one appointment, (still hasn't), never violated in anyway, complied in every way. No, as

established the report time was 2 months and properly, Boyd changed it from1 week to 1 month

because he knew it looked to bad in terms of unwarranted punishment for Plaintiff speaking up.

It is another case of factually they are done, legally they are done, common sense they are done.

The facts of why the time changed are in the complaint and nothing else.

Moreover, once again, Plaintiff was ordered to have an unit evaluation after Ford brought it

up proactively, in a effort to get Plaintiff on something, see above or complaint.[11]**Why in the**

**world would Plaintiff bring it up on his own more than 6 years into the unit, almost a**

**decade he never brought it up, why did he all of the sudden coincidentally bring it up then.**

Also, even though both are part of their fantasy, they state Plaintiff brought it up on his own- but

---

[11]Ford says, ok you wanna be smart, here you have a urine (drug test). Plaintiff told him he wouldn't get him on that, he hasn't been tested for years because they know he is clean, and this retaliatory test will be clean as well. Not happy he will get his way for Plaintiff sticking up for himself, Ford said we'll see and you know what, your reporting time [ which was 2 months], you are now weekly. Plaintiff said what, you cannot do that I have been coming every two months for years, you cannot change it at all unless you have established a valid reason, let alone 2 months to 1 week. Ford got angry again when his misuse of authority was challenged, went back and forth with Plaintiff, trying to establish that dominance and control that Ford has, and said I'm definitely "going to have you locked up" even though he had no even remote reason other than Plaintiff sticking up himself and his human rights. 14.    Then he resorted to looking at the screen and reading, he was trying to find something else to retaliate against Plaintiff, even though he was a model probationer for more than a half a decade. He then said you are going to be stuck with me, I'll make sure of that we'll give you a unit evaluation and I'll hit you with conditions and you won't do them and wind up not reporting. Plaintiff did not have any specific conditions and he was never suppose to be in the unit to begin with, the information at sentencing confirmed that, Ford knew that there never was an evaluation, so his path to jail Plaintiff here was to order an evaluation so he can put special conditions of Plaintiff and have Plaintiff not follow through, so he then violate Plaintiff and jail him. He was looking for anything conceivably to manufacture. Mind you, all of this was within five or six minutes of the very first meeting, Plaintiff never had seen the excuse of a probation officer in his life before.

later stated he didn't cooperate, he brought it up himself so they didn't explain then why he didn't cooperate after he was dying to get an a evaluation. No ethics Nudelman did not answer any of that. Again, Ford proactively ordered the evaluation, it was determined through that particular day's campaign, not by Boyd later on after Plaintiff filed a grievance with that excuse of a supervisor about the ten million things that went on that day. I already have and I will file another 10 lawsuits if I want, there is more coming soon. The evidence and record shows that no ethics Nudelman and his main offender client need help, serious help, and can ebenfit in the form of intensive treatment, also sanctions, discipline, and judgments against them.

No, after Ford tried to give Plaintiff 20 hours notice of a improper motive eval, one of which if he passed he was still going to be in the unit, black and white on the form it had you can reschedule once, Ford agreed to reschedule, refused to provide an email, told Plaintiff to leave a message, told the eval unit not to it when Plaintiff called, as the supervisor tried to tell Plaintiff he wasn't even on the listfor that day and was rude, loud, overtalking, belligerent, evasive, and more, Plaintiff called and left a message for Ford that he needed reschedule, mentioned the agreement, and to give 20 days notice of the new date, then Ford turned around and put a bogus warrant out. Plaintiff did not fail to appear for anything, like the prior 6 years and the last 3. It was anything but lawful and proper unlike they attempt to claim. No, Plaintiff never stopped reporting, the warrant was only taken of because Ford did not like heat from Plaintiff's attorney.

No, Ford, Boyd, and the crew issued a bogus warrant, then Ford said he would let Plaintiff and Link and rescheduled date for the eval, like he did the first time, there was no "order" needed as stated, turned around and then set up a bogus vop hearing, didn't tell neither of us, tried to send a notice so that Plaintiff got it after the hearing, never gave the "summary sheet", didn't even offer it at the hearing, kept abusing the process afterwards, hearings were so baseless they

32

got canceled. Anything but normal course of probation.Ford didn't explain anything but all of the above. Accordingly, they have alleged no facts nor documentary that support any type of defense let alone a complete one, again the only thing they did was take a concrete case for Plaintiff and fortified it.

With respect to due process, the script plead by the above does nothing to change Plaintiff consistently did not receive proper notice or no notice. For example, Ford got the notice of the eval on May 11th, 2012 but planned on telling Plaintiff June 12th, 2012, about it 20 hours later. Plaintiff admitted on the complaint that he was robbed of his rights about a thousand times. Did not reschedule it after the agreement and then phone call/message, would not let Politano or the unit reschedule it, all of the rest of the facts. No, after telling Link and Plaintiff Boyd will get a date about 10 days out for the rescheduled eval, he turned around and got a bogus vop hearing on July 3rd, 2012, but put postage on an envelope containing the notice on July 30th, 2012 and mailed it out afterward in an effort and attempt to notify Plaintiff of the hearing after it happened. Ford did not contact any attorney any time, about the hearing and he is going tosubpoenaed in this matter to say so.

Then in a footnote, they attempt to sneak in the another one of their ludicrous assertions in regards to the "summery sheet", no, Plaintiff never got it before the August 3rd, 2012 hearing, and never got it before the August 14th, hearing, he had plead with somebody else, and even so did not get the "evidence" it listed, never got it, Ford had never offered it and he was not aware that Plaintiff had it, he would have started the hearing without Plaintiff having it. The Sep. 26th, 2012, hearing was canceled that day, Ford never gave him the summary sheet for that hearing either. Going outside of the suit, he continued his illegal behavior as he never gave Plaintiff the summary sheet for the July 23rd, 2013 bogus vop hearing, not the September 6th, hearing that

33

did take place. Plaintiff never received this at all, the first time he saw this is when no ethics Nudelman submitted it. It also has certain substance on that sheet convenientlyomitted on the next sheet, so Plaintiff never saw it at all.

No Plaintiff himself, rescheduled the August 3rd, 2012 vop hearing that Ford tried to give him notice afterwards, he got the new date himself, he could not be given any notice of it by Ford. This, the record and evidence, along with common sense and proper vision already shows a one duep process violation after another. Therefore, the Rule 11, 3.3., 8.4 violating, perjured, fraud claims in what is labeled a "amended proposed answer" are wholly invalid on their face. None of "the defendant's answer, if established on trial would constitute a complete defense to the action. United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). "We require **doubtful cases** to be resolved in favor of the party moving to set aside the default judgment `so that cases may be decided on their merits.'" Budget Blinds, at 258, (quoting Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir.1951)). There is nothing to doubt about the facts and law here.There are no extraordinary circumstances present at all, nor clearly is their good cause. They do not meet the threshold to vacate the default and their attempt must be denied.

## CONCLUSION

There attempt fails and Plaintiff wins the case by default.

_____

Jason Collura, victim

Box 934
Philadelphia, PA19105

May 5th,  2014

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|                           |   |              |
|---------------------------|---|--------------|
|                           | : |              |
|                           | : |              |
| Jason Collura             |   |              |
|    Plaintiff | : | Civil Action |
|                           |   |              |
| v.                        |   | No. 13-4066  |
|                           |   |              |
| Ford,  et al        :     |   |              |
|    Defendant |   |              |

## CERTIFICATE OF SERVICE

I do hereby certify that service of a true and correct copy of Motion To Strike Waived

"Affirmative Defenses", Motion For Full Or Partial Judgment On The Pleadings, Fourth

Opposition To Ford, Motion To Set Aside Default has been served upon the following

individuals by first class mail

Oleg W. Nudelman
1650 Market, 32nd Floor
Philadelphia, PA 19103


                                  Jason Collura
                                  Box 934
                                  Philadelphia, PA 19105


Dated: May8th, 2014