## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| J.C | : | |
| Plaintiff | : | Civil Action |
| v. | | No. 13-4066 |
| Ford,  et al | : | |
| Defendants | | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### 1. Introduction

This motion is moot because we know Plaintiff's motion for default judgment should have been granted first in 2013, the next year, the year after that, the year after that, and now. Plaintiff's motion full or partial judgment on the pleadings. should have been granted at least twice and this point dating back pretty much just as long, and now, if the oppression continues it gets granted. If the oppression continues on both of those motions, then this renewed motion for full or partial summary judgment is to be granted.

There is a long-standing obligation to liberally construe the submissions of a pro se litigant. Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). See also Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244 (3d Cir. 2013) ("[W]e tend to be flexible when applying procedural rules to pro se litigants"). This does include summary judgment. Bennet v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (courts must interpret pro se summary judgment filings 'to raise the strongest possible arguments they suggest"). However, none of this is needed here at all.

### 2. Summary Judgment Standard

The purpose of the rule is to eliminate a pointless trial in cases where it is unnecessary and would only cause delay and expense, like here. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976); Northwest Motorcycle Ass'n v. United States Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).[1] "A [genuine] disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law." Doe v. Luzerne County, 660 F. 3d 169, 175 (3d Cir. 2011), Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992); Anderson, 477 U.S. at 248. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

3.   The nonmoving party cannot survive summary judgment merely by restating the assertions in his pleadings. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Also unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment. Betts V. New Castle Youth Development Center,  621 F.3d 249, 252 (2010)[2], as are

---

[1] **We already have all the facts of the case and no significant unnecessary discovery or anything else can help them out.** See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1188 (11th Cir. 2005) (there is no reason to assume that a district judge will stubbornly refuse to rule on a motion for summary judgment at an early stage of the litigation if the moving party clearly apprises the court that a prompt decision will likely avoid significant unnecessary discovery). In fact, we expect that district judges will be open to such motions.) citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy a and inexpensive determination of every action.'" (quoting Fed.R.Civ.P 56.); Humphreys v. Roche Biomedical Labs., Inc., 990 F.2d 1078, 1081 (8th Cir. 1993) ("Rule 56 of the Federal Rules of Civil Procedure does not require trial courts to allow parties to conduct discovery before entering summary judgment. ) quoting United States v. Light, 766 F.2d 394, 397 (8th Cir.1985); Willmar Poultry Co. v. Morton-Norwich Products, Inc., 520 F.2d 289, 297 (8th Cir.1975), cert. denied, 424 U.S. 915, (1976). (A party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a moving party as otherwise required ... and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact. Where, as here, a party fails to carry his burden under Rule 56(f), post-ponement of a ruling on a motion for summary judgment is unjustified.)

[2] The nonmoving party cannot establish a genuine dispute as to a material fact by pointing to unsupported allegations in the pleadings. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ; Schoch v. First Fidelity Bancorp., 912 F.2d 654, 657 (3d Cir. 1990) (unsupported allegations are insufficient to defeat summary judgment);

1

mere allegations, general denials or . . . vague statements. . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992). Likewise, "speculation or conjecture do not create a material factual dispute sufficient to defeat entry of summary judgment" Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990); Hedberg v. Indiana Bell Tel. Co., Inc., 47 F.3d 928, 932 (7th Cir.1995) ("Speculation does not create a genuine issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment.")[3].

Other than making Plaintiff's case for him by numerous admissions, the offenders have done nothing but attempt to assert baseless unsupported and conclusory allegations, summary denials (that are so meritless and illogical), vague unintelligible attempts at general summary denials, speculation, and delusional inferences. They have proffered nothing to stop summary judgment against them. Like any other stage, you cannot concoct purported arguments for them, cannot try to put words and baseless arguments in their mouth, they didn't say or make, to save them from a judgment against them[4].

4.    Rather, to survive summary judgment, the nonmoving party must point to concrete evidence in the record that proves each and every essential element of his case. Celotex v. Catrett, 477 U.S. 317, 322 (1986). There must be sufficient evidence for a jury to return a verdict in favor of the non-moving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir.1994). They have done and shown nothing, almost all of the garbage they call evidence, almost all is not

---

Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) ("[A] party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions ")

[3]See also Shin v. Shalala, 166 F.Supp.2d 373, 375 (D. Md. 2001) ("a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences ").

[4] See, e.g., Fils v. City of Aventura, 647 F.3d 1272, 1284 (11th Cir. 2011) (district courts cannot concoct arguments neither made nor advanced by the parties); M.R. v. Board of School Com'rs of Mobile County, 2012 WL 3778283, *4 n.5 (S.D. Ala. Aug. 30, 2012) ("Federal courts do not develop parties' legal arguments for them.")

admissible to begin with, does not prove any alleged defense or assertion by them. The one or two things that is/are actual evidence helps prove Plaintiff's claims even more than they already are.

5.      Once again **there is no genuine issue of material facts that might affect the outcome** of the suit for those claims under the governing law[5]. Likewise they have not made a showing of any, **not even close.** Moreover, "deemed admissions `are sufficient to support orders of summary judgment.'" Kelvin Cryosystems, Inc. v. Lightnin, 252 F. App'x 469, 472 (3d Cir. 2007) (quoting Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 176 n.7 (3d Cir. 1990).  Again, the deemed admissions here include them openly admitted to numerous violations including giving a boatload of illegal searches without an ounce of reasonable suspicion, not giving Plaintiff his summary sheets in most cases not at all, and about a hundred other things.

6.      Plaintiff has identified all evidence that clearly shows an absence of a **genuine** issue of material fact. Not only has he done that but likewise he has also pointed to the lack of evidence supporting the offender's script. Conoshenti v. Public Serv. Elec. & Gas, 364 F.3d 135, 145-46 (3d Cir.2004) (quoting Celotex, 477 U.S. at 323). Summary judgment should be entered where a non-moving party fails to make a sufficient showing to establish the elements essential to the party's claim and on which the party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322.  There is insufficient evidence for a reasonable jury to render a verdict in favor of the of the offenders, there is no genuine issue of material fact, and summary judgment may be granted. Anderson, 477 U.S at 248.

**Appellate Standard**

.

---

[5] "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S at 247-48.

"On review, the appellate court is required to apply the same test the district court *should have* utilized initially." Goodman v. Mead Johnson & Co.,534 F.2d 566, 573 (3d Cir. 1976); Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 181 (3d Cir.2009)

## 7. **First Amendment Retaliation Standard**

There are numerous federal and state claims in this lawsuit, the following is the applicable standard and law on one, First Amendment retaliation. " Retaliation is always reprehensible, and, regardless of whether the underlying activity is constitutionally protected it is obviously improper for officers to invoke criminal laws for retaliatory purposes." Gericke v. Begin, 753 F. 3d 1, 6 (1st Cir. 2014). They have an unreachable burden is this case (both in fact and law). "Speech involving government impropriety occupies the highest rung of First Amendment protection.  Therefore, the defendants in the present case bear a truly heavy burden." McGreevy v. Stroup, 413 F.3d 359, 365 (3d Cir. 2005)[6].

8.     To state a First Amendment Retaliation claim, a plaintiff need only show that the action was taken "at least in part because of the exercise of the protected conduct." Hill v. Lappin, 630 F. 3d 468, 472 (6th Cir. 2010); Siggers-El v. Barlow, 412 F.3d 693, 699 (6th Cir. 2005); Thaddeus-X v. Blatter, 175 F.3d 378, 394, 398 (6th Cir.1999) (en banc).  It has long been established "that official retaliation for the exercise of any constitutional right creates an actionable claim under Section 1983." Anderson v. Davila, 125 F.3d 148, 161 (3d Cir.1997). With First Amendment retaliation, "the motives of government officials are indeed relevant, if not dispositive, when an individual's exercise of speech precedes government action affecting that individual." Anderson,

---

[6] See also Connick v. Myers, 461 U.S. 138, 145 (1983) ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government"). Davis v. Ector County, 40 F.3d 777, 782 (5th Cir.1994) ("There is perhaps no subset of 'matters of public concern' more important than bringing official misconduct to light."). Baldassare v. New Jersey, 250 F.3d 188, 195-96 (3d Cir.2001) (matters of public concern include exposure of corrupt practices by government officials).. Branton v. City of Dallas, 272 F.3d 730, 740 (5th Cir.2001) (exposure of official misconduct is of great consequence to the public)

at 161. "Government actions, which standing alone do not violate the Constitution, may

nonetheless be constitutional torts if motivated in substantial part by a desire to punish an

individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.

2003); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (to prevail on a retaliation claim,

plaintiff need not "establish an independent constitutional interest" was violated). It's long been

clear that an actionable claim for retaliation "is not based on harshness of sanctions but the

imposition of *any adverse action* for the exercise of free speech". Bennis v. Gable, 823 F.2d 723,

731 (3d Cir. 1987). The "'deterrence threshold,' . . . is very low"... "even 'an act of retaliation as

trivial as failing to hold a birthday party for a public employee,' if 'intended to punish her for

exercising her free speech rights,' may be actionable . . . ." O'Connor v. City of Newark, 440

F.3d 125, 128 (3d Cir. 2006)[7]. But, even though they don't need to be all of these in fact are

separate constitutional violations/torts that have occurred.

9.     We have more well established case law also dealing with the crimes and violations here ,

just a sample include, Losch v. Parkesburg, 736 F.2d 903, 907-08 (3d Cir. 1984) (institution of

criminal action to penalize the exercise of one's First Amendment rights is a deprivation

cognizable under 1983); Smith v. Plati, 258 F.3d 1167, 1176 (10th Cir.2001) ("'Any form of

official retaliation for exercising one's freedom of speech, including prosecution, threatened

prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that

freedom"); Garcia v. City of Trenton (8th Cir. 2003) 348 F.3d 726, 729 (8th Cir. 2003)

---

[7] The circuits are clear there is no place for retaliatory harassment and it is actionable.
"[S]ince there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect]
need not be great in order to be actionable." Siggers-El v. Barlow, 412 F.3d 693, 701 (6th Cir. 2005); Suppan
v.Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) "The effect on freedom of speech may be small, but since there is no
justification for harassing people for exercising their constitutional rights it need not be great in order to be
actionable." Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982). The injury asserted is the retaliatory accusation's
chilling effect on Hines... First Amendment rights... We hold that Hines failure does not demonstrate a more
substantial injury does not nullify his retaliation claim." Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997), cert
denied, 118 S.Ct. 2339 (1998).

(retaliatory issuance of parking citations sufficient to show injury); Even a "'the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,'" can show constitutional violation. White v. Lee, (9th Cir. 2000) 227 F.3d 1214, 1228  (9th Cir. 2000).

10.     Temporal proximity alone, like what Plaintiff has proven here, supports an inference of retaliation. Gonzalez-Droz v. Gonalez-Colon, 660 F.3d 1, 16 (1st Cir. 2011); LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232-33 (3d Cir. 2007) ("Where the temporal proximity between the protected activity and the adverse action is unusually suggestive, it is sufficient standing alone to create an inference of causality). See also Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001) ("the timing of the search raises an inference of retaliatory motive"); Stever v. Independent School District No. 625, 943 F.2d 845, 852 (8th Cir.1991) (same).

Moreover, actions that are otherwise proper and lawful may nevertheless be actionable if they are taken in retaliation against a person for exercising his or her constitutional rights. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977); Bloch v. Ribar, 156 F.3d 673, 681-82 (6th Cir.1998) ("[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper"); Peterson v. Shanks, 149 F. 3d 1140, 1144 (10th Cir 1998) ("Officials may not retaliate against or harass an inmate because of the inmate's exercise of his" constitutional rights. "This principle applies even where the action taken in retaliation would be otherwise permissible."); Brown v. Crowley, 312 F.3d 782, 791 (6th Cir.2002) ("prison rules are not [to be] used as a backdoor means of punishing inmates for exercising their right[s]"); Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001), Wornell v. Henry, 219 F.3d 1197, 1215 (10th. Cir. 2000); DeLoach v. Bevers, 922 F.2d 618, 620 (10th Cir. 1990); Matzker v. Herr,  748 F.2d 1142, 1150 (7th Cir. 1984).

11.    Again, Plaintiff need only show that the action was taken "at least in part because of the exercise of the protected conduct." Hill v. Lappin, 630 F. 3d 468, 472 (6th Cir. 2010); Siggers-El v. Barlow, 412 F.3d 693, 699 (6th Cir. 2005). Without question, Plaintiff has already long proven at this point that the offenders' actions constituted retaliation from a combination of the chronological events.

12. **April 12th, 2012, May 10th, 2012, October 25th, 2012 Illegal, Retalitory, RANDOM, Warantless, Suspicionless Searches/Urine Tests**

No, not a "urinalysis", THREE ILLEGAL URINALYSES. PLURAL,THREE. The April 12th, 2012, and May 10th, 2012, October 25th, 2012 Illegal Urine Tests retaliatory forced urine test, **were illegal from the door.** Policies and Procedures of that probation unit states all persons **"should be given a drug test on the first office visit".** See attached exhibit A or see the offenders exhibit H in their Docket 50, and also the offenders exhibit H in their Docket 70, Plaintiff's exhibit in Doc. 56 and 58. In Plaintiff's **case this was mid-2006.** On page 4 of that same exhibit it states **"monthly urinalyses are conducted on all offenders if drug testing is ordered by the Court."** However it was never ordered  by anyone, as Plaintiff just had the condition to pay 235.50 of court costs. See Rules And Regulations of Probation and Parole attached as exhibit B, and also the offenders exhibit G in their Doc. 50, exhibit in their Docket 70, also see Plaintiff's exhibit in Doc. 56 and 58.

13.    They **admit this, none of the above is in dispute**, let alone a genuine dispute of material fact. Deemed admissions `are sufficient to support orders of summary judgment.'" Kelvin Cryosystems, Inc. v. Lightnin, 252 F. App'x 469, 472 (3d Cir. 2007) (quoting Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 176 n.7 (3d Cir. 1990). **THIS IS ENOUGH ALREADY FOR BARE MINIMUM FOURTH AMENDMENT CLAIMS.**

7

14.    It is not needed at all Plaintiff has won this claim already but in addition to this, all three were **RANDOM.** See attached exhibit C1 4-12-12, C2 5-10-12, C3 10-25-12 , see also exhibits from Plaintiff Docket 75. **THEY STATE RANDOM RIGHT ON THEM  NOT REASONABLE SUSPICION. FORD ADMITTED IT THEN,  THEY AGREE AND THERE IS NO GENUINE DISPUTE OF FACT.** They declare they are not only **RANDOM BUT RANDOM AS PART OF FORD'S  OFFICIAL "PRACTICE" "TO CONDUCT RANDOM DRUG SCREENINGS OF ALL PROBATIONERS"**. See their April 11th, 2014 "Answer", Docket 50 at 4, (April 12th, 2012  illegal search) also attached as exhibit C4, April 11th, 2014 "Answer",  Docket 50 at 6 (May 10th, 2012 illegal search) also attached as exhibit C5, Docket 50 at 8 (October 25th, 2012 illegal search)[8]. Ford himself then repeated his admissions a document he filed called an affidavit and that he declared under federal and state perjury was true. He multiple times that it is his "normal practice" to conduct random urine tests/searches on all probationers.  See Docket 81, "affidavit" at no. 3 and 12, also attached as exhibit C6. Again, deemed admissions `are sufficient to support orders of summary judgment.'" Kelvin Cryosystems, Inc. v. Lightnin, 252 F. App'x 469, 472 (3d Cir. 2007) (quoting Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 176 n.7 (3d Cir. 1990).  None of this was hardly a shock as again FORD ADMITTED THEN IT WAS RANDOM, that's why they all say RANDOM on them. There is no dispute of fact let alone a genuine one.

15.    Like every other filing from the offenders, on summary judgment, nobody can create purported  arguments for them.  Fils v. City of Aventura, 647 F.3d 1272, 1284 (11th Cir. 2011) (district courts cannot concoct arguments neither made nor advanced by the parties); M.R. v. Board of School Com'rs of Mobile County, 2012 WL 3778283, *4 n.5 (S.D. Ala. Aug. 30,

---

[8] See also Answer Docket 70 at 5, 6, 13, quoting Docket 50 random admissions, referring to the same above illegal search order

2012) ("Federal courts do not develop parties' legal arguments for them."). 16.  The Fourth

Amendment to the United States Constitution provides the following

protections:

> The right of the people to be secure in their persons, houses, papers, and effects, against
> unreasonable searches and seizures, shall not beviolated, and no Warrants shall issue, but upon
> probable cause, supported by Oath or affirmation, andparticularly describing the place to be
> searched, and the persons or things to be seized.

See also Wilson v. Arkansas, 514 U.S. 927, 931 (1995) (The Fourth Amendment "protects

`the right of people to be secure ... against unreasonable searches and seizures.'")[9] The people's

"effects" include their personal property. See United States v. Place, 462 U.S. 696, 701 (1983).

Personal property includes a person's bodily fluids, also being forced by the government to

produce bodily fluids is an unreasonable breach of privacy as there is a substantial expectation of

privacy in connection with the act of urination. In addition to that, Plaintiff himself was seized

because he was not free to leave the building unless he did produce his bodily fluids.  Not only

that, but it takes 60-90 minutes to have this unlawfully intrusive compelled act to take place

because of the amount of people already on that floor in line waiting. Plaintiff himself, his liberty

was seized for that entire time.

17.    "It remains a cardinal principle that searches conducted outside the judicial process,

without prior approval by judge or magistrate, are per se unreasonable under the Fourth

Amendment—subject only to a few specifically established and well-delineated exceptions."

California v. Acevedo, 500 U.S. 565, 580 (1991). "Warrantless searches and seizures are

presumptively unreasonable and are therefore prohibited under the Fourth Amendment, unless an

---

[9] The Fourth Amendment is enforceable against the states through the fourteenth amendment.  Camara v. Municipal
Court, 387 U.S. 523, 528 (1967).

exception applies." United States v. Mundy, 621 F.3d 283, 287 (3d Cir. 2010) (citing California v. Acevedo, 500 U.S. 565, 580 (1991)). "[T]he government bears the burden of proving that a search was reasonable where, as here, that search was conducted absent a warrant." United States v. Headen, 264 F. App'x 244, 246 (3d Cir. 2008) (citing United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995)). Here it is undisputed that  not only was there numerous retaliatory searches, not only were none of them were conducted with a warrant, not only were none of them conducted with probable cause, but all were conducted without an ounce of reasonable suspicion.

18.     Likewise Plaintiff/Victim is fully protected under PA State constitution and governing law the same way, which provies support for his Fourth Amendment claim and also his Article I, Section 8. Pa. Const. art. I, § 8 reads:

"The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."

"[B]oth the Fourth Amendment and Article I, Section 8 protect individuals against unreasonable searches and seizures, and warrantless searches or seizures are presumptively constitutionally unreasonable, subject to certain established exceptions" Commonwealth v. Brown, 23 A.3d 544, 553 (Pa. Super. 2011). See also Commonwealth v. Checkley, 558 Pa. 517, 738 A.2d 427 (Pa. 1999); Commonwealth v. Williams, 547 Pa. 577, 692 A.2d 1031 (Pa. 1997). They believe "Article I, Section 8 of the Pennsylvania Constitution provides greater protection against unreasonable searches and seizures than is afforded by the Fourth Amendment to the United States Constitution". Commowealth v. Brown, 23 A.3d 544, 553 n.8 (Pa. Super. 2011); Commonwealth v. Edmunds,  586 A.2d 887 (Pa. 1991)  ("Article I, Section 8 of the Pennsylvania Constitution. . . may be employed to guard individual privacy rights against

10

unreasonable searches and seizures more zealously than the federal government does under the Constitution of the United States by serving as an independent source of supplemental rights."); Commonwealth v. Sell, , 470 A.2d 457, 468 (Pa. 1983) ("Article I, [§ ] 8 . . ., as consistently interpreted by [Pennsylvania courts], mandates greater recognition of the need for protection from illegal government conduct offensive to the right of privacy.) However it is clear that the "principal" object of the Fourth Amendment is the protection of privacy Warden, Maryland Penitentiary v. Hayden, 387 U. S. 294, 304 (1967). Either way Plaintiff is without question fully covered by both constitutions.

19.     Also, longtime PA law indisputably establishes all of Appellant's illegal retalitory, RANDOM, Warrantless, Suspicionless Searches. See Commonwealth v. Alexander, 16 A.3d 1152, 1156 (Pa.Super.2011) (en banc) ("There **must be** some level of **reasonable suspicion present** in order to protect a probationer's state and federal constitutional right to be free from unreasonable searches"). See also Commonwealth v. Galendez, 27 A.3d 1042, 1048 (Pa. Super. 2011), Commonwealth v. Hunter, 963 A.2d 545 (Pa. Super. 2008); Commonwealth v. Colon, 31 A.3d 309, 314-15 (Pa. Super. 2011). Like his own procedures he looked at everyday, this case law was well established by the time mid April of 2012 rolled around.

20.     Actually, this was hardly new or a surprise. All the way back in 1990 it was the same. Commonwealth v. Edwards, 400 Pa.Super. 197, 583 A.2d 445 (1990) (holding warrantless searches on parolees must at minimum be based upon reasonable suspicion of illegality). In  Commonwealth v. Pickron, 535 Pa. 241, 634 A.2d 1093 (1993). PA again held that the Fourth Amendment does not permit the determination to conduct a search of a probationer or parolee to be left to the unfettered discretion of the individual officer. Rather, "some systemic procedural safeguards must be in place" to guarantee Fourth Amendment rights." Id. at 1098. In 2003, the

same. Commonwealth v. Altadonna, 817 A.2d 1145, 1149 (Pa. Super. 2003) (holding that

supervisee is not subject to diminished expectation of privacy regarding searches of supervisee's

person; probation officer must have reasonable suspicion to seize and search probationer).

21.     In 2007 nothing was different. "We hold that reasonable suspicion is indeed required in

such a case, that it was lacking here, and that the search conducted was therefore improper." In

the Interest of J.E., 937 A.2d 421, 422 (Pa. 2007) (warrantless search of PA probationer was

illegal because there must be reasonable suspicion and it was not there). All of these cases also

reaffirm "parole" (here county probation), "is not so broad in scope as to permit total disregard

for the panoply of a parolee's [F]ourth [A]mendment rights." Commonwealth v. Edwards, 400

Pa.Super. 197, 583 A.2d 445 (1990) Commonwealth v. Berry, 265 Pa.Super. 319, 324,

401 A.2d 1230, 1232 (1979). As that filing labeled an order concedes that in general a personal

search of the person 42 Pa Cons. Stat. 9912 states a probation officer may only conduct a search

if there **is reasonable suspicion.** This was also clearly established. Yet again they reaffirmed this

long running rule of law in Com. v. Wilson, 67 A. 3d 736 (Pa 2013), and also ruled that not even

**sentencing courts can direct that a probation officer may conduct warrantless,**

**suspicionless searches of a probationer. A judge can't do it legally, BECAUSE IT'S**

**ILLEGAL.** This is PA, only PA law and statute applies, not California, not Kansas, not Florida

not Hawaii, not Canada. First the their own procedures they follow, then well established

statutes and appellate case law, **proves Plaintiff's claims.** Do your job. And Plaintiff does have

a Article I Section 8, of the Pennsylvania Constitution claim min complaint. See comp at 2.

22.     Like always, the Third Circuit and our law obviously holds the same thing and nothing else

in regards to the issue here in PA. United States v.Baker, 221 F.3d 438 (3d Cir. 2000), again held

that in PA a parole/probation officer must have reasonable suspicion to conduct searches and for

the search to be valid, the officer's decision to conduct the search "must be based on specific

facts" that would articulate suspicion. Id at 444[10]. The reasonable suspicion standard requires a

"level of **objective justification**," Illinois v. Wardlow, 528 U.S. 119, 123 (2000)[11]. A mere

suspicion or hunch insufficient to provide reasonable suspicion. Terry, 392 U.S. at 27; Wardlow,

528 U.S. at 12; Commonwealth v. Tither, 671 A.2d 1156, 1158 (Pa. Super. 1996). Not a mere

hunch of or a fishing expedition to harass a victim and maybe come out of it with some type of

technical violation. In United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005), again held

Pennsylvania's "implicit requirement that any search be based on reasonable suspicion.'" Id. at

n.2 (quoting Baker, 221 F.3d at 448)[12]. Baker has never been overturned is still the standard

being used, still good law. See United States v. Lynch,  2012 WL 256038 (3d Cir. Jan. 30, 2012),

US v. Webster, No. 10-1245 (3d Cir 2010); United States v. Yeager, 351 F. App'x 718 (3d Cir.

2009); United States v. Noble, 326 F. App'x 125 (3d Cir. 2009). See also U.S. v. Perminter,

(W.D.Pa. 2012); U.S. V. Rivera, 727 F. Supp. 2d. 367 (E.D.PA 2010). Even that other one who

should have their robe revoked too knows this much. US v. Dono (E.D.Pa. March 17th,  2011)

(N. disGrace). ("The United States Court of Appeals for the Third Circuit has concluded that

---

[10] Baker held it was  unreasonable for the parole officer to search the defendant's car trunk, even though he had
committed a parole violation -- driving without a license -- that was -- at least tangentially -- connected to the car and
law enforcementofficers may have been concerned about who owned the car.
[11] See also Ornelas v. United States, 517 U.S. 690, 696 (1996) (Reasonable suspicion requires an "objective basis"
for suspecting the person [searched] of criminal activity); United States v. Sokolow, 490 US 1, 7 (1989) ("[t]he
Fourth Amendment requires a "level of objective  justification') (INS v. Delgado, 466 U.S. 210, 217 (1984) (
"Reasonable suspicion requires a " level of objective justification"); United States v. Cortez, 449 U.S. 411, 417-18
(1981). (reasonable suspicion requires an "articulable" and objective basis for suspecting the particular person . . . of
criminal activity).
[12] They mentioned a Supreme Court case in another state that agents need "reasonable suspicion that a probationer
subject to a search condition is engaged in criminal activity." United States v. Knights, 534 U.S. 112, 121 (2001).

parole officers acting pursuant to Pennsylvania's warrantless search condition must have reasonable suspicion" citing Baker)[13].

23.      By their own admission Ford has a "practice" "to conduct random drug screenings of all probationers".  And also specifically admit Plaintiff was randomly given the urinalyses to verify "Plaintiff's compliance with the Rules and Regulations of Probation and Parole". **PLAINTIFF HAD NO SUCH CONDITION TO VERIFY AND IT WAS RANDOM. NO ISSUE OF FACT LET ALONE MATERIAL FACT TO STOP SUMMARY JUDGMENT. THAT'S IT. END OF STORY.** And even if he marked down reasonable suspicion while performing his practice of random searches to verify compliance, **WHICH HE DIDN'T NOR DID THEY ATTEMPT TO EVER ARGUE,** it would still be what it is, an ill-defined fishing expedition based upon guesswork and conjecture, falling far short to establish reasonable suspicion of criminal or illegal activity. As held squarely in Baker,  "Pennsylvania law does not license such fishing".  U.S. V. Rivera, 727 F. Supp. 2d. 367, 376 (E.D.PA 2010).

24.      See also Commonwealth v. Bishop, No. 722 MDA 2013 (Pa Superior Court 2014) (in a case where one where the person actually had a condition to begin and with reasonable suspicion was actually attempted to be claimed, none was present because Bishop was searched  to "check his compliance with probation rules and conditions"). Cf. Soldal v. Cook Cnty., 506 U.S. 61, 69

---

[13] Sorry, Samson v. California, 126 S.Ct. 2193 (2006) does not help your agenda out not an ounce. First, "parolees are on the 'continuum' of state-imposed punishments . . . and have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment . . . [P]arolees enjoy even less of the average citizen's absolute liberty than do probationers." Id at 2198  Plaintiff was on **probation at the time, not only that not state probation, but county**. Second Samson dealt with exclusively **CA law NOT PA**. Third, it dealt with **a state parolee, not a county probationer** (3100 miles away). Fourth, it dealth with that CA state parolee signing a form that acknowledged suspicionless searches apparently to a CA statute. Fifth, it did not even remotely start to decide anything related to the already well established Third Ciruit, Pa Statute, Pa case law, in which most have been reaffirmed in the last 8 years since Samson. Sixth, "plain terms of the parole search condition" were a crucial factor in their decision. Id. at 2199.  In PA, again, Plaintiff signed a form acknowledging **"monthly urinalyses are conducted on all offenders if drug testing is ordered by the Court" and it never was a condition for him**. Also, for those who actually do have the condition, which isn't Plaintiff, 42 Pa Cons. Stat. 9912 states a probation officer may only conduct a search if there **is reasonable suspicion.**

(1992) (Fourth Amendment right against unreasonable seizure is transgressed if the purpose search or seizure of is undertaken to "verify compliance" with a purported regulation). If this was legal, cops could legally go around and force everybody in public to give a urine test to determine compliance with state and federal drug laws every citizen is supposed to abide by.

25.     The government violated a subjective expectation of privacy that society recognizes as reasonable over and over and over again.  And the three indisputable illegal searches would have been unlawful anyway[14]. **THERE IS NO QUESTION OF MATERIAL FACT AS THEY CONCEDED IT WAS NOT EVEN A CONDITION OF PLAINTIFF'S TO BEGIN WITH AND THEY CONCEDE THEY WERE RANDOM.** Again deemed admissions `are sufficient to support orders of summary judgment.'" Kelvin Cryosystems, Inc. v. Lightnin, 252 F. App'x 469, 472 (3d Cir. 2007) (quoting Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 176 n.7 (3d Cir. 1990). **THREE CLEARLY ILLEGAL SEARCHES.**

26. **April 12th, 2012 Report Time Change**

The first April 12th, 2012, meeting with Ford, Plaintiff's report time was lawfully 2 months for 3.5 years prior, see exhibit D attached, see also Docket 56 and 58 exhibit, and it was certainly not a case of p/o 's doing Plaintiff a favor. As can be seen, Ford wrote 4/19 on the card establishing that he in fact he did change it from 2 months to 1 week, see exhibit E attached see also Docket 56 and 58 exhibit, this is the only reason they did not attempt to deny this, if it wasn't there in Plaintiff's possession, then he never said or did it. There is no dispute of fact of the above, also that Boyd then changed it from 1 week to 1 month. As stated in Plaintiff's fourth opposition to set aside default, hereinafter, f.o.s.d.f, there was absolutely no reason for Ford to do that, what they call a claim about not having a residence on record (which he did have) is

---

[14] Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001) ("the timing of the search raises an inference of retaliatory motive"); Stever v. Independent School District No 625, 943 F.2d 845, 852 (8th Cir 1991) (same)

implausible for several reasons as evidenced by their already bogus total fraudulent "summary sheets" and other documents that do not even remotely allege this. Also factually Plaintiff had never missed an appointment in 6 years, and 3 years since, neither of which is denied by them, so that could not be more stable.

27.    In addition legally it fails as there Ford had no authorization at all to change a person's time from 2 months to 1 week, let alone from 1 month to 1 week, let alone anything less to 1 week. See Polices and Procedures of that probation unit, (stating that the least time to report is 1 month- which Boyd then changed it to, nothing anywhere authorizes 1 week) attached exhibit A or see the offenders exhibit H in their Docket 50, and also the offenders exhibit H in their Docket 70, Plaintiff's exhibit in Doc. 56 and 58. This is also another instance of temporal proximity also making Plaintiff's claim, as this baseless retaliatory act occurred right after Plaintiff stuck up for himself (and after he was given an illegal search). There is no valid dispute of fact. There is no genuine issue as to any material fact that needs to be resolved or might affect the case under governing law.

## 28  Illegal Bogus Probation Violation Arrest Warrant

As stated, on June 7th, 2012, Plaintiff showed up and learned Ford planned to tell him late on June 12th, 2012  about a scheduled unit evaluation 19 hours later, one that he was given notice on May 11th, 2012, by Boyd. This same notice was given to Plaintiff that day and it states probationer will get **"one chance at a rescheduled appointment"**. See attached exhibit F, see also Docket 56 and 58 exhibits. That proves Plaintiff tells Ford he needs more time and it has to be rescheduled and Ford (no ethics Nudelman) concedes with Plaintiff, and said "you can reschedule once, second time is a foul[15]." The above is not in dispute.  It also states that an

---

[15] In addition to that, the eval form states the probationer will get **"one chance at a rescheduled appointment"**. The reason why no ethics Nudelman didn't deny that it states the latter was because he knows Plaintiff has it. If

employee of that unit, which **Politano supervised for,** before she took off to avoid justice, can reschedule it. This is also not in dispute.  Not that it was needed factually because Plaintiff did reschedule with Ford after agreeing with him, but this proves Politano could have most certainly rescheduled it if she wanted to- but she didn't want to, neither did Ford, even though Plaintiff vigorously requested, both had to in black and white. As stated Plaintiff called Ford on June 12th,  2012, left a message to reschedule it for the aforementioned reasons, to give him 20 days notice.

29.     Again, this is why Mark Maguire Jr. declared under oath in the first  "answer" that the most important thing in the case, was coincidently the only thing he didn't know, he knew because they were given as part of the grievance that got filed in writing. Legally, **it is not sufficient for a violation, let alone an instant arrest warrant.** See Policies and Procedures of that probation unit, attached exhibit A or see the offenders exhibit H in their Docket 50, and also the offenders exhibit H in their Docket 70, Plaintiff's exhibit in Doc. 56 and 58. It reads

Absconder Status

**After one missed appointment, the probation officer must send an arrest warning to the offender. If the offender fails to report on the date given in the arrest warning letter, the officer will issue a violation of probation warrant.**

Id at 3-4.


Cut and dry, fully illegal and bogus warrant per their own policies and procedures, absent any fact. This also is not in dispute. This was in addition to Plaintiff having a right **"at a rescheduled appointment" and invoking that right.** As we know, even though he was entitled to actually miss one and still not get an arrest warrant, **he missed zero appointments** and **still**

Plaintiff did not, then it would be he was never allowed to reschedule. Wow, it is remarkable, he submitted all of this completely false, doctored, immaterial, scandalous, irrelevant, defamatory, erroneous, misleading, exhibits and purported documents, but not this actual evidence,  utmost important one. Wow, what a coincidence

**got** a bogus arrest warrant. The indisputable failure to follow their own polices and procedure proves pretext.

30. **Unlawful Retaliatory VOP Hearing Scheduling And Unlawful No Notice Of It**

Again, on July 3rd, Plaintiff and Patrick Link go into the building and Plaintiff makes Link go into the booth so he can be witness to what Ford says and does. Ford explicitly tells both of us, that he will have a new date for the unit evaluation within 10 days, Boyd was on vacation that week but he will reschedule it when he comes back. Ford said he will give the date both of us in writing. Link is a witness to this. Instead, of him and Boyd rescheduling the evaluation he turned right around and requested and received a bogus vop hearing, and it no doubt was in fact a vop hear as evidenced by the early July of 2012's docket's entry "awaiting violation of probation hearing", Ford submitted (to the courts and the d.a. only) a "Gagnon II summary sheet", Ford himself writing "vop" on the report card for this August 14th, 2012 hearing. See report card attached as exhibit E, see also Docket 56 and 58 exhibit. Even though Ford and Boyd should have just reschedule to eval down the road, they chose to set up a bogus vop. This is consistent with a pattern/campaign of illegal retaliation and punishment that had long been running, because if it wasn't then Politano, then Ford would have simply done their job and reschedule the eval, not, not do it then put a bogus unlawful warrant.

31.     Likewise, by not telling Plaintiff about the hearing itself obviously is on consistent with not rescheduling it, putting out a bogus warrant, telling Plaintiff and his attorney Boyd reschedule it in 10 days, they turn around and set up a bogus vop. Once again on August 2nd, 2012, at about 10:30 a.m., Plaintiff gets a notice from Ford of the vop for a hearing **23 hours** away, on August 3rd at 9:00 a.m. Again, he put on the postage on July 30th, 2012 , see attached as exhibit G, see also Docket 56 and 58 exhibit, and mailed it after,  in an effort to time it so

18

Plaintiff would not get it until August 3rd, after the hearing ended or August 4th. This is not in dispute.

32.    Again, as can be seen by the public docket see Docket 50 exhibit A and B, plus 5 million other filings, Ford turned around and requested the hearing right after Plaintiff and Link walked out of the building on July 3rd, 2012, at the very latest, July 5th, 2012, and it got approved very shortly afterwards as that docket indicates. But despite knowing in early July 2012, again, Ford waits to mail out notice until after July 30th, 2012, for an August 3rd, 2012 9 a.m. hearing. This again speaks for itself and is consistent with everything else. Again there is no genuine issue as to any material fact that needs to be resolved or might affect the case under governing law, the vop heaing being requested and also the mailing of the notice after July 30th, 2012 proves unlawful actions and intent. There is no valid dispute of fact. There is no genuine issue as to any material fact that needs to be resolved or might affect the case under governing law.

## 33. No "Summary Sheet" Including "Evidence" For Three VOP Hearings

Again, Ford maliciously requested and got the bogus vop hearing scheduled in early July of 2012, and he had to have fraudulent document in which he calls a "summary sheet" at that point. Despite this, again, Ford never, ever, gave Plaintiff this "summary sheet" for the August 3rd, 2012 vop hearing, in which Ford try to time it so that Plaintiff had no notice of it until afterwards. They do not dispute this as they never claimed Ford gave him "sheet" (obviously why would he, he didn't give Plaintiff notice of the hearing itself). After it was rescheduled and Plaintiff came in on August 7th, 2012, he demanded he get this farce of a sheet from both Ford and Boyd, that they had for more than a month at this point, and they refuse stating Plaintiff will get it at the hearing itself.  On August 14th, 2012, Plaintiff showed up to the bogus vop and had to plead with another one of those, to give him the fraud summary sheet, he gives it to Plaintiff,

which by clearly establishes law it is still a rights violation, he still was not given the "evidence" which was that alleged napkin type absurd note and a purported email from Politano, that also establishes a violation as Plaintiff was entitled to all that "evidence" "against" him. Again, Ford came in to the courtroom later on and never offered the "sheet" to Plaintiff, not even knowing Plaintiff has just gotten it. Also, Ford never gave him a "summary sheet" for the September 26th, 2012 hearing, they do not dispute this. Plaintiff never received it and still does not have it. Plaintiff by law was entitled to those "summary sheets" for those hearings, and well ahead of time.

34.    After conceding Plaintiff never got the sheet prior to the August 3rd, 2012, hearing Mark Maguire Jr., attempts to put forth one of his preposterious claims in regards to the August 14th, 2012 hearing and the summary sheet, however it is unbelievable as mentioned.[16] Like any other alleged "dispute" of fact in this matter, this attempt at an impossible script does not save them from anything. Because a "blatant contradiction" renders party's version essentially unbelievable, the court should not apply the usual standard: "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

---

[16] Ford did not on August 8th, 2012 attempt to call Plaintiff on the phone with "instructions on how to pick a copy of the hearing "summary sheet". Why would no ethics Nudelman insanely ignore all of the above, then claim **Ford called him** and the **next day** August 8th, 2012, **to pick up the sheet.** There are several extremely devoid of common sense things. Obviously he would have already gave the "sheet" to Plaintiff in July, before the August 3rd hearing. Past that, in his above scenario, for the August 14th, 2012 hearing, Ford **would have given it in the August 7th, 2012 meeting** if he was to give it at all before the August 14th hearing, in which he wasn't because he would have the sheet for the August 3rd date long before that date, so he wasn't going to give the sheet for the next date either. Obviously, he **wouldn't call the next day, after he had the sheet for more than a month, never gave it to Plaintiff and Plaintiff was just there demanding it the day before.** Plaintiff's phone was operating fine, there was never a call. Next, obviously  he **would not call for Plaintiff to pick it up, he would have mailed it. Why would he call on August 8th, to have Plaintiff pick up the sheet he had for more than a month and was just there the day before demanding it.** Again, essentially unbelievable and blatantly  contradicted by the record.

35.    In the addition to more retaliation it is more due process violations as well[17]. In addition to being no valid dispute of fact, there is no genuine issue of material fact or might affect the case under governing law.

36. **Malicious Prosecution And Abuse of Process**

---

[17] As relayed in the complaint, Although revocation of probation is not part of the criminal prosecution, it entails the loss of liberty, revocation of probation is a serious deprivation,  and due process must therefore be accorded. Commonwealth v. Davis, 336 A.2d 616 (Pa. Super 1975). Commonwealth. v. Ferguson, 761 A. 2d 613, 617 (Pa. Super. 2000); Gagnon v. Scarpelli, 411 U.S. 778, 781-82 (1973); Morrissey v. Brewer, 408 U.S. 471, 481-82 (1972). Due process safeguards means at minimum:
(1) written notice of the claimed violations of probation or parole; (2) disclosure to the probationer or parolee of evidence against him; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses, unless the hearing officer specifically finds good cause for not allowing confrontation; (5) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (6) a written statement by the factfinders as to the evidence relied on and reasons for revoking probation or parole.
Commonwealth v. Allshouse, 969 A.2d 1236, 1240 (Pa. Super. 2009);  (citing Gagnon v. Scarpelli, 411 U.S. at 786.
      An essential component of these due process rights is that individuals be given fair warning of acts which may lead to revocation. United States v. Simmons, 812 F.2d 561, 565 (9th Cir.1987); United States v. Dane, 570 F. 2d 840, 843 (9th Cir 1977); US v. Gallo, 20 F. 3d  7, 11 (1st Cir. 1994) (fair warning of conduct that may result in revocation is an integral part of due process in such situations.) Here it was mandatory since five decades ago that written notice of each alleged violation and an adequate opportunity to prepare is required prior to hearing. Champion v. Com. Board Probation and Parole, 399 A.2d 447 (Pa. Cmwlth. 1979). Probation/parole officer must strictly comply with requirement that notice of alleged violations must be writing. Commonwealth v. Davis, 418 A.2d 669 (Pa. Super 1980). Requirement of written notice is a simple and straight forward requirement that the probation officer  must comply. Commonwealth v  Harris, 380 A.2d 471 (Pa  Super. 1977). With respect to right to receive written notice of alleged probation violation, actual notice by the way of oral advice or existence of a prior revocation proceeding was irrelevant. Commonwealth v. Parker, 378 A.2d 970 (Pa. Super 1977). However, here to form a point, it was so bad Plaintiff had no idea of anything, Ford put a bogus warrant out without saying a word let alone in writing, tried to notify Plaintiff of the hearing afterwards, all that time beforehand never even mentioned there was one, never said anything about violations let alone in writing, Ford didn't even  give Plaintiff the notice at the hearing.. See also Snyder v. Com, Dept of Transp. Bureau of Motor Vehicles, 977 A.2d 55, 57 (Pa. Cmwlth. 2009) "adequate notice for procedural due process purposes requires at a minimum that the notice contain sufficient listing and explanation of the charges against an individual"."Due process also requires that notice of what is being charged be made against the accused and be given in sufficient time to prepare a defense as to all the issues raised by the state). Id. See also  Commonwealth v .Honeyblue, 396 A.2d 683 (Pa. Super. 1978) (written notice given day before at 5:45 p.m. was due process violation to presenting an adequate defense); Commonwealth v.Ballard, 378 A.2d 445 (Pa Super. 1977); Commonwealth v. Williams, 385 A.2d 979 (Pa. Super). THIS IS CLEARLY ESTABLISHED LAW. The lower courts must apply all relevant precedents within their knowledge in deciding an issue of qualified immunity. Elder v. Halloway, 510 U.S. 510, 516 (1994).
      Again, fundamental fairness is a key issue in a violation hearing. United States v. Hamilton, 708 F.2d 1412, 1414 (9th Cir.1983). Additionally it is well established revocation is limited to violations of the criminal law and specific conditions of probation or parole to even begin with. Knight v. Com., Board of Probation and Parole, 510 A.2d 402 (Pa  Cmwlth  1986);  U.S. v. Simmons, 812 F 2d 561 (9th Cir. 1987); Commonwealth v  Carver, 923 A.2d 495, 498-99  (Pa. Super. 2007). No, **it is a fact, we know for a** fact Plaintiff had his due process violated **without proper notice of  vop hearing and no summary sheets. He did not have to get his probation revoked to establish this.**  What another outrageous assertion, now all of them, the whole building can refuse to notify criminal system victims about vop hearings and refuse to give them their summary sheets of alleged violations, and if their probation doesn't get revoked it's fine! No, that is clearly absurd.

21

Again, as we can see and we know the baseless proceedings terminated in Plaintiff's favor on September 26th, 2012, as the frivolous hearings an requests from Ford were outright canceled and ignored- for being what they were and no other reason. See public docket, Docket 50 exhibit A and B, plus 5 million other filings. Ford found this out later on as well as Plaintiff, although Plaintiff had immediately suspected that was the cause. This is another cut and dry situation. Ford continued to abuse the process, requesting more baseless hearings, actions, proceedings, for almost two years, and was repeatedly ignored.

37.     Plaintiff has met both standards  for both federal and state law. Under Pennsylvania law, there are four common law elements of malicious prosecution that a plaintiff must prove: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing plaintiff to justice. See Hilferty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996). The complaint, exhibits (and public record) clearly establishes that these four elements are met. As we know the first bogus and  illegal prosecution terminated in Plaintiff's favor, when a judge actually cancelled it because it had not an ounce of  probable cause, didn't even contain allegations that would be an **actual probation violation if true.**  Plaintiff was subjected to a baseless criminal prosecution over·and over again.

 38.     Moreover, an officer is liable for initiating a criminal prosecution if the officer "fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute." Telepo

v. Palmer Twp., 40 F. Supp. 2d 596, 610 (E.D. Pa. 1999.)[18] As Ford, Politano, Boyd, Austin, and the rest did just that and are liable once again under for that.

39.        The elements of a malicious prosecution claim under section 1983 are derived from applicable state law. See Swartz v. Insogna, 704 F. 3d 105, 111 (2d Cir. 2013). Additionally, as a fifth element, the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (en banc). Travel restrictions and court appearances "are appropriately viewed as seizures within the meaning of the Fourth Amendment." Murphy v. Lynn, 118 F.3d938, 946 (2nd Cir.1997). Plaintiff was compelled to  make repeated and compulsory courtroom appearances, for a span of two years, in which he did. His travel was restricted during that time, he could not leave the state. He was also compelled to retain counsel, as mentioned Victim hired Link to deal with the bogus warrant, then he hired an attorney, (as can be seen on the public record docket, see Docket 50 exhibit A and B, plus 5 million other filings) for all of these bogus hearings, which were seven in total. It cost Victim a small fortune, and he wants that money back from Ford and the gang.  The complaint, together with the public record, constitute a deprivation of liberty consistent with the concept of a seizure under the Fourth Amendment, therefore establishing the fifth element a 1983 malicious prosecution claim.

---

[18] As well as: Brockington v. City of Phila., 354 F.Supp.2d 563, 569 (E.D.Pa. 2005);Henderson v. City of Philadelphia, 853 F. Supp. 2d 514, 518 (E.D.Pa. 2012); White v. Brommer, 747 F.Supp.2d 447, 459 (E.D.Pa.2010); Stango v. Rodden, 2001 WL 1175131, at *4 (E.D.Pa. Aug. 21, 2001);  Gallo v.  City of Phila., 161 F.3d 217, 220 n. 2 (1998) ("Decisions have recognized that a § 1983 malicious prosecution claim can be maintained against one who furnished false information to, or concealed information from, prosecuting authorities.");Garcia v. Micewski, 1998 WL 547246, at *9 (E.D Pa. Aug.24, 1998); quoting Torresv.McLaughlin, 966 F.Supp. 1353, 1364 (E.D.Pa.1997), rev'd on other grounds, 163 F.3d 169 (3d Cir.1998)). See also Merkle v. Upper Dublin School Dist., 211 F.3d 782, 794 (3d Cir. 2000) ("The action of the School District in initiating the criminal proceedings and pressing unfounded criminal charges against Merkle can render the District liable for its *major role* in a malicious prosecution."

40.     For Plaintiff's 1983 abuse of process claim, the Court of Appeals has indicated that "using legal process primarily to harass and cause direct injury to an adversary . . . could constitute a perversion of that process." General Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 307 (3d Cir. 2003). For his state abuse of process, "Abuse of process" is defined as "the use of legal process against another primarily to accomplish a purpose for which it is not designed." Werner v. Plater-Zyberk, 799 A.2d 776, 785 (Pa.Super.2002). Plaintiff has established it for both, as Ford, Boyd, Politano, Austin, and the gang still pressed on, kept going with their baseless prosecution filled with malice, didn't stop, they even kept re-filing requests, six months and a year later, long after and beyond it had been dismissed in its authorized conclusion. It was not designed to punish people for protect speech and proper and reasonable actions. There is no dispute of fact the proceedings spoke about in Plaintiff's complaint terminated in his favor. There is no genuine issue of material fact that needs to be resolved or might affect the case under governing law.

41. **Arrest Warrant Warning**

Again, at the bogus August 14th, 2012 hearing which got postponed to September 26th, 2012, Ford was going to leave without giving Plaintiff a report date, proactively asked Ford about the next appointment date, because he did not have one, Ford had insisted to not to give Plaintiff a proper one, only this date at the August 14th, hearing[19]. In response, Ford did it again and signed the card for Plaintiff to report to room "1103" the 9-26-12 hearing. See exhibit E attached see also Docket 56 and 58 exhibit. This is not in dispute. It got canceled on September

_____

[19]This was exactly why Plaintiff took issue with Ford giving him a report date at the courtroom for a bogus vop, instead of an office visit, demanded he get an actual reporting date at Arch St- which they don't deny, see entry for 8-14 same exhibit, also Plaintiff's filings. Always being one step ahead of the game, Plaintiff knew all Ford had to do was not show up and then claim Plaintiff wasn't there, and because it was so bogus Plaintiff knew there was a good chance of it being canceled outright, so he saw a little room for Ford to manufacture something to help his campaign- and that's exactly what happened, as always Plaintiff is spot on. The office visits cannot be played with because if Ford isn't there somebody else comes in, also there is a sign in sheet as well to prove the person was there.

26th, 2012, and no other time, that is why it states so on the docket, Docket 50 exhibit A and B, plus 5 million other filings. This is also not in dispute. Plaintiff was in the courtroom that day at 9 a.m. which is how he found out, (it is not conceivable Plaintiff decided not to go and have a warrant, but just a remarkable coincidence it was canceled). This is also not in dispute- coming from their own admissions as we will learn shortly.

Likewise what is also indisputable is that Plaintiff did report to 1103 on that day, like he was supposed to, **which is how he found out it was canceled,** again coming from their own admissions as we will learn shortly. At that point Plaintiff called Ford who did not answer. Plaintiff left a message stating that he was there, and will be waiting for him, or to call him back. Plaintiff waited 90 minutes, neither Ford or anyone from probation was there or ever showed up. There is no dispute that Ford never was there, did not show up. There is no dispute Ford knew he signed Plaintiff card as that date, **there at the courtroom**. Plaintiff's attorney who was in another courtroom, text him to go home, Plaintiff left. It is not in dispute Ford never contacted him at anytime with further instructions.

42.     Despite all of these facts, on October 10th, 2012 Plaintiff received an "arrest warrant warning" which Ford mailed October 2nd, 2012. It states "you have failed to report to your probationer officer as required." Plaintiff later learned Ford put in a request for a warrant on October 6th, 2012 but was denied. How could Plaintiff have failed to report to Ford on 9-26-12? The answer we know of course is he couldn't. They agree, there is no dispute let alone a genuine dispute, their own evidence and admissions prove so[20]. See exhibit H. The offenders received that document from what they refer to as their clients on 1-7-2014, as the bottom left hand corner

---

[20] Again "deemed admissions 'are sufficient to support orders of summary judgment.'" <u>Kelvin Cryosystems, Inc. v. Lightnin</u>, 252 F. App'x 469, 472 (3d Cir. 2007) (quoting <u>Anchorage Assocs. v. Virgin Islands Bd. of Tax Review</u>, 922 F.2d 168, 176 n.7 (3d Cir. 1990).

indicates. The entry for 9-26-2012, by Ford states that "**p** (probationer which is Plaintiff) and atty **were at court today**" then speaking of the hearing, he states "this one was cancelled **even though** both atty **and p were present in the room this morning**". Again unequivocal perjury as they denied for two years Plaintiff went to court that morning- although as explained it is not conceivable Plaintiff decided not to go and have a warrant, but just a remarkable coincidence it was canceled. Also in the event title he states "spoke to Harrison and **Crier in 1103"**. Yet they repeatedly denied Ford spoke to the crier that morning, more perjury.

There is **no dispute of fact** that Ford signed the card for Plaintiff to report to room "1103" the 9-26-12 hearing and Plaintiff did report that morning to that exact courtroom and date, and it got canceled, and that an retaliatory arrest warning was the issued.  It asserts Ford made another entry for 9-26-12 at 11:00 a.m. that states meeting with client, event title office visit (ov) and **states missed.** Again as we know **THIS DESPITE IT WAS NEVER AN OFFICE VISIT FOR ANYTIME THAT DAY OR WEEK FOR THAT MATTER INCLUDUING 11:00 AM**. Then they asserted he stated on 9-28-2012, Plaintiff "did (sic) not report after court as scheduled". AGAIN, AS WE KNOW **THIS DESPITE IT WAS NEVER AN OFFICE VISIT FOR ANYTIME THAT DAY OR WEEK, ONLY COURTROOM 1103 ON 9-26-12. "**As scheduled"- in his sick mind that's Ford attempting to help his illegal campaign out[21]. Obviously, there is no dispute of fact there either. The exhibit proves there is **no dispute of fact** that Ford signed the card for Plaintiff to report to room "1103" the 9-26-12 hearing and Plaintiff did report that morning to that exact courtroom and date, and it got canceled, and that an

---

[21] Also, remarkably the fact that Plaintiff called for further instruction, left a message, and the fact Ford never even called back do not appear. This does not alter anything here though.

retaliatory arrest warning was the issued[22]. There is no genuine issue as to any material fact that needs to be resolved or might affect the case under governing law.

## 43. May 10th, 2013 Unlawful Bogus Vop Hearing Re-Request

Again, Ford later learned why the baseless prosecution of 2012 was canceled that September, as well as why the November 20th, 2012, frivolous re-request was denied. He admitted this to Plaintiff on April 11th, 2013, declared he was not going to **request it any further**. Again, Plaintiff filed a complaint, see Docket 56 and 58 exhibit, with the higher ups FJD, at the end of April of 2013, in which records indicate was received on May 4th, 2013, and a call was placed on May 6th, 2013 to see what they plan on doing with it and they confirmed it was already given to a person to investigate. Ford without question was informed of the complaint against him by May 10th, 2013 and in response turned around and requested the bogus vop hearing again. There is no other logical conclusion. There is no valid dispute of fact. There is no genuine issue as to any material fact that needs to be resolved or might affect the case under governing law.

## 44. April 12th, 2012, May 31st, 2012, June 11th, 2012, June 14th, 2012, June 20th, 2012, Grievances To Boyd and Austin

In regards to the above grievances lodged with Boyd and Austin about all of the unlawful out of control behavior about the out of control, outrageous behavior obviously, as we know, Plaintiff can complain all he wants, he did and he will always, he will sue and whatever else. We know that the Rules Of Probation form Plaintiff signed, on the back side states "If you have a

---

[22] As far as the rest of the 9-26-12 claimed entry, it is not accurate but it does not factor in to anything. Plaintiff only spoke to the crier that day, nobody else. It is not clear why it is claimed that Plaintiff talked to "Harrison" that day, as he did not. Perhaps Plaintiff's conversation with the crier, which did include facts about Ford, was overheard, then relayed back to Ford by either the crier or another employee. Also Plaintiff's attorney was not in the courtroom, but he was elsewhere in the building. Interestingly, when Plaintiff called Ford and left that message he said his attorney was there, he meant in the building, not in the courtroom. It's funny that Ford then asserts that attorney was in the courtroom, even though he was never there and could not been seen by anybody there. Both of these things are inconsequential, does not alter anything here.

grievance concerning supervision of your case, you may consult the unit supervisor or the unit supervisor's immediate supervisor". See Rules And Regualtions of Probation and Parole attached as exhibit B, and also the offenders exhibit G in their Doc. 50, exhibit G in their Docket 70, also see Plaintiff's exhibit in Doc. 56 and 58.

45.    As an example in another context, numerous binding cases long establish that inmates who file a grievance or cannot be retaliated against in any way including being charged with misconduct. Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (grievance is protected activity); Gibbs v. King, 779 F.2d 1040, 1046 (5th Cir. 1986) (noting that it was clear in 1982 that "prison officials were prohibited from retaliation against inmates who complain of prison conditions or official misconduct"); Herron v. Harrison, 203 F.3d 410, 415 (6th Cir.2000) (such protected conduct includes a prisoner's "undisputed First Amendment right to file grievances against prison officials on his own behalf."); Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989), (prisoner's sending of a letter complaining of improper or unlawful prison conditions to a high-ranking prison official is behavior that the First Amendment protects); Stokes v. Cywinski, 2006 WL 952385, at *5 (M.D. Pa. April 12, 2006) (inmates's appeal of a misconduct sentence was considered "filing of grievances" and, therefore, "protected conduct"); Bistrian v. Levi, 696 F. 3d 352, 376 (3d Cir. 2012) (plaintiff must only prove "he suffered **some adverse action'** at the hands of the prison officials"); Mitchell v. Horn, 318 F.3d 523 (3d Cir. 2003); Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002); Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001 Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir.2000); Johnson v. Avery, 393 U.S. 483 (1969); Brown v. Crowley, 312 F.3d 782, 791 (6th Cir.2002) ("prison rules are not [to be] used as a backdoor means of punishing inmates for exercising their right[s].") Babcock v. White, 102 F.3d 267, 275-76 (7th Cir.1996); Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997).

46.     They again openly admit directly penalizing Plaintiff for First Amendment rights of
filing grievances. See Docket 50 at 4, 5 ,6, see also Docket 50 at exhibit D, E, K. Also as they
stated in those citations, it always will be "an attempt to voice issues" with the probation
department, and never more than an attempt, and again establishes failure to supervise, control,
train, acting  deliberately indifferent to the needs of Plaintiff. Boyd, Austin, also participated in
violating plaintiff's rights, directed others to violate them, all had knowledge of and acquiesced,
approved, ratified, Ford and whichever subordinates were below them's violations. Again there
is no genuine issue as to any material fact that needs to be resolved or might affect the case under
governing law. There is no valid dispute of fact. There is no genuine issue as to any material fact
that needs to be resolved or might affect the case under governing law.

47. **Malvesuto And Hoyt, Boyd, Austin**

Again, Plaintiff filed a grievance in writing with Deputy Chief Charles Hoyt and Chief
Robert Malvesuto, which contained all of the above, and what is in the complaint. Obviously
given everything we know, without question both failed to supervise, discipline, control, train all
employees like Ford, Boyd, Austin, and acted with  deliberate indifference to the needs of
Plaintiff. Boyd, Austin, Hoyt, and Malvestuto also participated in violating plaintiffs rights,
directed others to violate them, all had knowledge of and acquiesced, approved, ratified, Ford
and whichever subordinates were below them's violations. All four have  established and
maintained a policy, practice or custom  of this which directly caused Plaintiff's harm. Again
Malvesuto is a policymaker for FJD[23]. Malvesuto occupies a sufficiently high policymaking role
to create liability on the part of FJD. Also, like everything else, there is  Monell claim against

---

[23] The Chief's office facilitates uniform application of work rules, enhanced communication within the Department
regarding policy and procedure, implementation of meaningful performance standards and evaluations and issues
related to merit based evaluations, accountability and labor relations. See Complaint exhibit.

FJD for failing to, train, discipline, and control and being deliberate indifferent to the needs for all above and below. After conceding Hoyt got the grievance, no ethics Nudelman denied on both scripts that Malvesuto did, even though he full well knew he did. Like everything else he can be proved wrong in black and white. It was signed for on August 3rd, 2012, at 3:04 p.m., see attached exhibit I, see also Docket 56 and 58 exhibits. The record contains return receipt signed, certified receipt, and the actual delivered tracking page.. There is no valid dispute of fact. There is no genuine issue as to any material fact that needs to be resolved or might affect the case under governing law.

48. **Guilt As Evidence Of Fleeing**

We know that, whether or not it is accurate, there are numerous federal and state decisions that hold that if someone prosecuted or about to be prosecuted in the other side of law flees or talks about or attempts suicide then that is evidence of guilt and it can be used against them to establish guilt. In this case, faced with overwhelming evidence of guilt, most of the offenders got outta dodge like O.J. and tried to escape justice once they found out about the suit. Malvesuto left just a couple of days after he was notified he was sued, Politano took off right after Plaintiff notified the other offenders, she was still listed on a online chart as of June 2013, but not in a November of 2013, Boyd waited until right after they were served to take off, he was still right there just days prior,  was a supervisor for more than 10 years. See Docket 18, exhibit[24]. There is no valid dispute of fact. There is no genuine issue as to any material fact that needs to be resolved or might affect the case under governing law.

49. **Plaintiff's Motion Should Get Granted Under Rule 56 (h)**

---

[24] Ford is an out of control sociopath who doesn't understand the gravity of his offenses, so it wasn't a shock when he didn't take off.

As we know, they and Nudelman and Boyle, have submitted an affidavit that swears under the penalty of perjury the declarations made are true. As we know, they are not true, and it is straight up criminal perjury and they should be charged with crimes. Obvious bad faith and obviously an attempt to delay this case from judgment on merits, just like they refused to cooperate in discovery for years.

Rule 56 h states:

h) AFFIDAVIT OR DECLARATION SUBMITTED IN BAD FAITH. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond · – may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions

Because of this outright federal criminal perjury Plaintiff wants his motion granted and theirs denied, in the alterative everything in the perjured affidavit struck, or they be held in contempt, or Plaintiff being reimbursed costs for them dragging out litigation and violation federal law- the criminal side now.

## CONCLUSION

Plaintiff's motion default judgment gets granted, if the oppression continues then motion full or partial judgment on the pleadings should be granted., if the oppression continues on both of those motions, then this renewed motion for full or partial summary judgment is to be granted for all of the above reasons including there is insufficient evidence for a reasonable jury to render

a verdict in favor of the offenders, there is no genuine issue of material fact, Plaintiff is entitled

to judgment as a matter of law, Rule 56 (h), and summary judgment must be granted[25].

J.C. Plaintiff
Box 934
Philadelphia, PA 19105

Dated: April 10th, 2019

---

[25] Again, "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S at 247-48.

*Drug Testing* – All offenders should be given a drug test on the first office visit. Review adherence to medication if prescribed.

*Other* – Discuss treatment compliance and any other issues of concern to the offender.

### Content of Out of Office Visit

During the home or field visit, the officer should meet with the offender, family and/or professional staff and discuss any concerns about the offender.

Refer to the Home Visit Policy for further information.

### Content of Phone Contact

Offenders in MH should not report by phone unless there are extenuating circumstances. All communication with the offender via phone should be documented in Monitor.

### Missed Contacts

Within 24 hours of one missed appointment, the officer will send an arrest warning letter to all known addresses of record, directing the offender to report within one week of the missed appointment. If the offender fails to appear for the rescheduled appointment, a warrant must be issued.

### Arrest Screening—Other Jurisdictions

The officer will check JNET monthly for each assigned offender.

The officer will check daily for arrests. If the officer is absent the supervisor will assign another officer to perform this check.

### VIOLATIONS

### FJDMHC Offenders

If there is an issue of noncompliance with FJD█████ offenders, the █████████ Court and PFACT work together to try to get the offender back into compliance. The goal here is to promote compliance, treatment participation and service appropriation with reduction in recidivism and re-incarceration. Every Monday, APPD staff communicates with PFACT workers regarding compliance of all offenders. APPD along with the judge make the final determination of actions taken in response to noncompliance.

### Absconder Status

After one missed appointment, the probation officer must send an arrest warning to the offender.



If the offender fails to report on the date given in the arrest warning letter, the officer will issue a violation of probation warrant. The officer must verify that the offender is not in custody prior to issuing the warrant.

**New Arrests**

For misdemeanor arrests of FJD ████ offenders, the FJD █████ judge conducts a status hearing to determine the course of action. Refer to the <u>Response to New Arrests Policy</u> for all other circumstances.

**Technical Violations**

### *Drug Tests*

Monthly urinalyses are conducted on all offenders if drug testing is ordered by the Court. If the offender tests positive, they must be tested on each office visit with mandated treatment until negative testing results. If the drug test is positive for PCP, a warrant is issued immediately. The offender is referred to treatment on the first result positive for cocaine or opiates. If the offender tests positive a second time for cocaine or opiates, reporting is increased and treatment participation must be verified by the probation officer and upon confirmation, a VOP will be set up. If offender is not in treatment on the second positive, a warrant is issued. If there is a third positive prior to the VOP date, a warrant will be issued regardless of treatment status. A warrant will be issued after any subsequent positive results for these substances, regardless of the offender's treatment status. If the offender tests positive for marijuana, they will be referred to treatment, however continued use will result in a VOP

30-806 (Rev. 11/01)



# RULES OF PROBATION AND PAROLE

**COURT OF COMMON PLEAS**
**TRIAL DIVISION**
**Adult Probation and Parole Department**

# *(REGLAS DE PROBACION/*
# *LIBERTAD CONDICIONAL)*



| NAME OF PROBATIONER/PAROLEE *(Nombre del Delincuente)* | POLICE PHOTO NUMBER *(Numero del Retrato Policia)* |
|---|---|
| **BILL AND TERM NUMBER** *(Numero de Recibo y Termino)*  C05091-2007 | **CASE NUMBER** *(Numero del Caso)* | **SUPERVISING DISTRICT** *(Distrito de Supervision)* |

The Honorable Judge _____ Dembe _____ has placed you on probation and/or parole and expects you to comply with the following Rules of Probation/Parole. *El Honorable Juez lo ha puesto en probacion y/o libertad condicional y espera que usted obedezca y cumpla las siguientes Reglas de Probacion/Libertad Condicional.*

1. You may not possess firearms or any other deadly weapons. *Usted no puede poseer armas de fuego o cualquier otra arma.*

2. Report to the Probation/Parole Officer as directed and permit the Officer to visit you at your home or place of employment when necessary. *Presentarse al Oficial de Probacion/Libertad Condicional como se le indique y permita que el Oficial lo visite en su casa o lugar de empleo cuando sea necesario.*

3. Respond promptly to any summons to appear in Court. *Responda puntualmente a cualquier cita para comparecer en Corte.*

4. Report any change of address to your Probation/Parole Officer within 72 hours, and do not leave Philadelphia without permission from your Probation/Parole Officer. *Notifique a su Oficial de Probacion/Libertad Condicional de cualquier cambio de direccion dentro de 72 horas, y no salga de Philadelphia sin el permiso de su Oficial de Probacion/Libertad Condicional.*

5. Make every effort to seek and maintain employment, and promptly inform your Probation/Parole Officer of any change in your employment status. *Haga todo el esfuerzo para buscar y mantener trabajo, e informe a su Oficial de Probacion/ Libertad Condicional cualquier cambio referente a su posicion de trabajo.*

6. Obey all federal, state, county criminal laws and city ordinances. *Obedezca todas las leyes federales, estatales, condado y municipales.*

7. You may not unlawfully possess, use, sell or distribute controlled substances of any kind. *Usted no puede poseer, usar, vender o distribuir substancias controladas de cualquier tipo.*

8. Notify your Probation/Parole Officer within 72 hours of any new arrest. *Notifique a su Oficial de Probacion/Libertad Condicional dentro de 72 horas de un nuevo arresto.*

9. You are subject by ACT NO. 35-1991 of the Pennsylvania General Assembly to pay a supervision fee to the Philadelphia Adult Probation Department unless the fee is waived by the Court. *Usted esta sujeto por Acta #35-1991 de la Asamblea General de Pennsylvania a pagar los honorarios por la supervision al Departamento de Probacion para adultos en Philadelphia a menos que los honorarios sean renunciados por la corte.*

10. In accordance with ACT NO. 35 of the Pennsylvania General Assembly, Special Session NO. 1 of 1995, you are subject to a personal search and/or property search, including vehicle and the seizure of any contraband found, if there is reasonable suspicion to believe that you are in violation of any of the conditions of supervision. If you have accepted Accelerated Rehabilitative Disposition (ARD) as a result of a violation of 18 PA. C.S. Chapter 31 (relating to sexual offenses) you will also be subject to same search and seizure, if the Court has determined that you shall be subject to personal and/or property search as a condition of participation in the ARD program. *De acuerdo con el Acta #35-1991 de la Asamblea General de Pennsylvania, Secion Especial #1 de 1995, usted esta sujeto a un registro personal y/o a un registro de propiedad, incluyendo su vehiculo y el contenido de de cualquier contrabando que sea encontrado, si hay alguna sospecha razonable, para creer si usted esta en violacion de cualquiera de las condiciones de supervision. Si usted ha aceptado la Disposicion de Rehabilitacion Acelerada (ARD) como resultado de la violacion de (18 PA C.S. Chapter 31) Estado Criminal de Pennsylvania 18, Capitulo 31 (relacionado a offensas sexuales) tambien estara sujeto al mismo registro ya mencionado, si la corte determina usted sera sujeto para un registro de propiedad como condicion de su participacion en el programa de Rehabilitacion Acelerada.*

You will also comply with the following special conditions of Probation/Parole. *Usted tambien obedecera las siguientes condiciones especiales de Probacion/Libertad Condicional.*

___ #235.50 Gen Court Costs ___

___ Undie ___

8. Notify your Probation/Parole Officer within 72 hours of any new arrest. *Notifique a su Oficial de Probación/Libertad Condicional dentro de 72 horas de un nuevo arresto.*

9. You are subject by ACT NO. 35-1991 of the Pennsylvania General Assembly to pay a supervision fee to the Philadelphia Adult Probation Department unless the fee is waived by the Court. *Usted esta sujeto por Acta #35-1991 de la Asamblea General de Pennsylvania a pagar los honorarios por la supervision al Departamento de Probacion para adultos en Philadelphia, a menos que los honorarios sean renunciados por la corte.*

10. In accordance with ACT NO. 35 of the Pennsylvania General Assembly, Special Session NO. 1 of 1995, you are subject to a personal search and/or property search, including vehicle and the seizure of any contraband found, if there is reasonable suspicion to believe that you are in violation of any of the conditions of supervision. If you have accepted Accelerated Rehabilitative Disposition (ARD) as a result of a violation of 18 PA. C.S. Chapter 31 (relating to sexual offenses) you will also be subject to same search and seizure, if the Court has determined that you shall be subject to personal and/or property search as a condition of participation in the ARD program. *De acuerdo con el Acta #35-1991 de la Asamblea General de Pennsylvania, Sección Especial #1 de 1995, usted esta sujeto a un registro personal y/o a un registro de propiedad, incluyendo su vehiculo y el contenido de de cualquier contrabando que sea encontrado, si hay alguna sospecha razonable, para creer si usted esta en violacion de cualquiera de las condiciones de supervision. Si usted ha aceptado la Disposicion de Rehabilitacion Acelerada (ARD) como resultado de la violacion de (18 PA.C.S. Chapter 31) Estado Criminal de Pennsylvania 18, Capitulo 31 (relacionado a offensas sexuales) tambien estara sujeto al mismo registro ya mencionado, si la corte determina usted sera sujeto para un registro de propiedad como condicion de su participacion en el programa de Rehabilitacion Acelerada.*

You will also comply with the following special conditions of Probation/Parole. *Usted tambien obedecera las siguientes condiciones especiales de Probacion/Libertad Condicional.*

$235.50 Cou Court Costs

## ACKNOWLEDGEMENT OF PROBATIONER/PAROLEE
### *RECONOCIMIENTO DEL DELINCUENTE*

I have read, or have had read to me, the rules and conditions of my Probation/Parole, as well as the Detainer/Violation Hearing Procedures and the Grievance procedures on the reverse side. *He leído, o me han leído, las precedentes reglas y condiciones de mi Probacion/Libertad Condicional, las he entendido completamente y estoy de acuerdo en obedecerlas.*

Witness (Testigo)

Signature of Probationer/Parolee *(Firma del Delincuente)*
NOTE: IF SIGNED BY A MARK, TWO WITNESSES MUST EXECUTE THIS INSTRUMENT. *(NOTA: SI LA FIRMA ES UNA CRUZ DEBERA SER PRESENCIADA POR DOS TESTIGOS)*

Witness (Testigo)                                   Date (Fecha)

PROBATIONER/PAROLEE

**PHAMATECH, INC.**
10151 Barnes Canyon Road, San Diego, CA 92121
**TOLL-FREE: 1-877-635-5840**

C1

SPECIMEN ID NO **6000617848**    LAB ACCESSION NO

## TO BE COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

A. Employer Name, Address and I.D. No

First Judicial District
1401 Arch Street
Philadelphia, PA 19102
Ph  215-683-1240  Fax  215-683-1293

C Donor SSN or Employee I.D. No  PPF    Donor Name: C Nuce, Jason    <enter as donor id>
XXXXXXXXXXXXXX

D Reason for Test:  ☐ Pre-Employment  ☑ Random  ☐ Reasonable Suspicion/Cause  ☐ Post Accident  ☐ Periodic  ☐ Other

First Judicial District
1401 Arch Street
Philadelphia, PA 19102    215-683-1293

F. Donor Identification Verified By:  ☐ Photo I.D.  ☐ Employer Representative

## TO BE COMPLETED BY COLLECTOR

Read specimen temperature within 4 minutes. Is temperature between 90° and 100°F?  ☑ Yes  ☐ No, enter remarks

Specimen Collection:  ☑ Single  ☐ Split  ☐ None Provided (Enter Remarks Below)  ☐ Observed (Enter Remarks Below)

REMARKS.

## TO BE COMPLETED BY COLLECTOR AND DONOR - Collector affixes bottle seal(s) to bottle(s)  Collector dates seal(s). Donor initials seal(s)
## TO BE COMPLETED BY COLLECTOR AND DONOR

PO COMPLETES    Select Panel

N  CODE  M  H  U    <enter as input>    3703    3704
DATE  1-12-18    <enter as collection>    ChemScreen    [barcode]
PO NAME  M. Ford    <enter as collector>
PO PHONE #  3-1324  PO CODE    3978    3975
                                          DOTCO    PHTCO

I authorize the collection of this specimen for the purpose of a drug screen. I acknowledge that the specimen container(s) was/were sealed with tamper-proof seal(s) in my presence; and that the information provided on this form and on the label(s) affixed to the specimen container(s) is correct. I authorize the laboratory to release the results of the test to the company identified on this form or its designated agents

Collura, Jason    (Signature of Donor)    1  12  18

(PRINT) DONOR'S NAME (LAST, FIRST, MID)    SIGNATURE OF DONOR    MONTH  DAY  YEAR

## CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY

I certify that the specimen given to me by the donor identified on this form was collected, labeled, sealed, and released to the Delivery Service noted, in accordance with applicable requirements.

X _____    11:__ ☐ AM ☐ PM    _____    1/12/1
Signature of Collector    Time of Collection    (PRINT) Collector's Name (First, MI, Last)    (Mo/Day/Yr)

RECEIVED AT LAB:

X _____
Signature of Accessioner

(PRINT) Accessioner's Name (First, MI, Last)    (Mo/Day/Yr)

Primary Specimen Bottle Seal Intact    SPECIMEN BOTTLE(S) RELEASED TO
☐ Yes
☐ No, Enter Remark Below    UPS

COPY 3 - BLUE

C 2

**PHAMATECH, INC.**
10151 Barnes Canyon Road, San Diego, CA 92121
**TOLL-FREE: 1-877-635-5840**

SPECIMEN ID NO **6000617908**    LAB ACCESSION NO

**TO BE COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

A. Employer Name, Address and I.D. No.

First Judicial District
1401 Arch Street
Philadelphia, PA 19102
Ph 215-683-1240 Fax 215-683-1293

C. Donor SSN or Employee ID No.    PP#: ~~XXXX~~    Donor Name: Collura, Jason  <enter as donor id>
XXXXXXXXXXXXXXXXX

D Reason for Test: ☐ Pre-Employment ☒ Random ☐ Reasonable Suspicion/Cause ☐ Post Accident ☐ Periodic ☐ Other ___

First Judicial District          215-683-1240
1401 Arch Street
Philadelphia, PA 19102          215-683-1293

F. Donor Identification Verified By: ☐ Photo I.D. ☐ Employer Representative

**TO BE COMPLETED BY COLLECTOR**

| | Specimen Collection: | | |
|---|---|---|---|
| Read specimen temperature within 4 minutes. Is temperature between 90° and 100°F? ☒ Yes ☐ No, enter remarks | ☒ Single ☐ Split | ☐ None Provided (Enter Remarks Below) | ☐ Observed (Enter Remarks Below) |

REMARKS:

**TO BE COMPLETED BY COLLECTOR AND DONOR** - Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor intials seal(s)
**TO BE COMPLETED BY COLLECTOR AND DONOR**

**PO COMPLETES:**                          **Select Panel:**

UNIT CODE: M A U  <enter as location>

DATE 5-10-12  <enter as collection date>

PO NAME N. Fordi  <enter as collector>

PO. PHONE # 3 735 4 1  PO. CODE

3703  [ ] 6 Panel Lab
3704  [ ] 8 Panel Oral Fluid
3878  [ ] DTCO
3875  [ ] PTCO

I authorize the collection of this specimen for the purpose of a drug screen I acknowledge that the specimen container(s) was/were sealed with tamper-proof seal(s) in my presence, and that the information provided on this form and on the label(s) affixed to the specimen container(s) is correct. I authorize the laboratory to release the results of the test to the company identified on this form or its designated agents.

Collura Jason
(PRINT) DONOR'S NAME (LAST, FIRST, MID)    SIGNATURE OF DONOR    MONTH  DAY  YEAR

**CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**
I certify that the specimen given to me by the donor identified on this form was collected, labeled, sealed, and released to the Delivery Service noted, in accordance with applicable requirements

X ___    4:30 AM/PM    ___    5/10/12
Signature of Collector    Time of Collection    (PRINT) Collector's Name (First, MI, Last)    (Mo/Day/Yr)

**RECEIVED AT LAB:**    Primary Specimen Bottle Seal Intact    SPECIMEN BOTTLE(S) RELEASED TO:

X ___
Signature of Accessioner
(PRINT) Accessioner's Name (First, MI, Last)    (Mo/Day/Yr)

☐ Yes
☐ No, Enter Remark Below

UPS

COPY 3 - BLUE

C3

# PHAMATECH, INC.

10151 Barnes Canyon Road, San Diego, CA 92121

**TOLL-FREE: 1-877-635-5840**

CHAIN OF CUSTODY FORM

6000835536

SPECIMEN ID NO.                    LAB ACCESSION NO.

**STEP 1: TO BE COMPLETED BY COLLECTOR OR EMPLOYER/AGENCY REPRESENTATIVE**

A. Employer Name, Address and I.D. No.
First Judicial District
1401 Arch Street
Philadelphia, PA 19102
Ph: 215-683-1200 Fax: 215-683-1293

B. Collection Site Address: First Judicial District
1401 Arch Street
Philadelphia PA 19102

Donor Name Collura, J <enter as donor ID>

Collector Phone No. ( ) 215-683-1200

Collector Fax No. ( ) 215-683-1293

C. Donor SSN or Employee ID No.        D. Donor ID   Verified By: ☐ Photo I.D.  ☐ Employer Rep

E. Reason for Test: ☐ Pre-Employment  ☒ Random  ☐ Reasonable Suspicion/Cause  ☐ Post Accident  ☐ Periodic  ☐ Other

**STEP 2: TO BE COMPLETED BY COLLECTOR**

Read specimen temperature within 4 minutes. Is temperature between 90° and 100°F? ☒ Yes ☐ No, enter remarks

Specimen Collection: ☒ Single ☐ Split ☐ None Provided (Enter Remarks Below) ☐ Observed (Enter Remarks Below)

REMARKS:

**STEP 3: TO BE COMPLETED BY COLLECTOR AND DONOR** - Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s).

**STEP 4: TO BE COMPLETED BY COLLECTOR AND DONOR**

TEST(S) REQUESTED BY EMPLOYER:

<enter as location>

CPT CODE M H

10-25-12   <enter as collection date>

N Fox   <enter as collector>

1324   #3 CODE

*Select Panel*

3.   3799

3878   3875

I authorize the collection of this specimen for the purpose of a drug screen. I acknowledge that the specimen container(s) was/were sealed with tamper-proof seal(s) in my presence; and that the information provided on this form and on the label(s) affixed to the specimen container(s) is correct. I authorize the laboratory to release the results of the test to the company identified on this form or its designated agents.

(PRINT) DONOR'S NAME (LAST, FIRST, MID)    SIGNATURE OF DONOR    INITIAL    MONTH   DAY   YEAR

**STEP 5: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**

I certify that the specimen given to me by the donor identified on this form was collected, labeled, sealed, and released to the Delivery Service noted, in accordance with applicable requirements.

X _____
Signature of Collector

3:13 AM PM
Time of Collection

SPECIMEN BOTTLE(S) RELEASED TO:

UPS

_____        _____
(PRINT) Collector's Name (First, MI, Last)   (Mo/Day/Yr.)

Name of Delivery Service Transferring Specimen to Lab

RECEIVED AT LAB:

X _____
Signature of Accessioner

Primary Specimen   Bottle Seal Intact

☐ Yes

_____        _____
(PRINT) Accessioner's Name (First, MI, Last)   (Mo/Day/Yr.)

☐ No, Enter Remark To Right

COPY 3 - BLUE

C4



Further, Plaintiff was given a urinalysis drug screening for controlled substances, in accordance with the ▮▮▮▮▮▮▮▮ Unit policy concerning drug screenings and in order to evaluate Plaintiff's compliance with the Rules of Probation and Parole, which prohibited Plaintiff from using controlled substances. Mr. Ford's practice was to conduct random drug screening of all probationers whom he supervised; he typically requested that probationers take a drug test at several visits in a row, followed by a gap of several months before taking another test. Plaintiff's April 12, 2012 drug screening was negative for controlled substances.





16. Admitted in part ~~████████~~ It is admitted only that Plaintiff's April 2012 drug screening was negative for controlled substances. ~~████████████████████~~ ~~████████████████~~ By way of further response, Plaintiff next met with Mr. Ford on or about May 15, 2012. ~~████████████████~~ ~~████████████████████~~ ~~████████████████████~~ ~~████████████████████~~ Moreover, Plaintiff was again given a urinalysis drug screening for controlled substances in order to evaluate Plaintiff's compliance with the Rules of Probation and Parole. Mr. Ford's general practice was to conduct random drug screening of all probationers whom he supervised; he typically requested that probationers take a drug test at several visits in a row, followed by a gap of several months before taking another test.



6

C6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

J██████ C█████████,                                        Civil Action No. 13-4066

                    Plaintiff,

        v.

NICHOLAS JAMES FORD, *et al.*,

                    Defendants.

**AFFIDAVIT OF NICHOLAS JAMES FORD IN SUPPORT
OF DEFENDANTS' RESPONSE TO J██████████████'S
MOTION FOR FULL OR PARTIAL SUMMARY JUDGMENT**

I, Nicholas James Ford, hereby declare as follows:

1.      I am an employee of the Adult Probation and Parole Department of the First
Judicial District of Pennsylvania.

2.      I served as J████ C█████'s probation officer in the ████████████████ of the
Adult Probation and Parole Department of the First Judicial District of Pennsylvania from April
12, 2012 through ████████████.

3.      My typical practice in supervising probationers ███ to direct them to undergo a
drug screening at several visits in a row, followed by a gap of several months before being
required to another test.

4.      ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

5.      ████████████████████████████████████████████████████████████████████.
████████████████████████████████████

6.      ████████████████████████████████████████████████████████████████████

7.      ████████████████████████████████████████████████████████████████████
services. ████████████████████████████

8.      ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████



9.

10.

11.     I next met with Mr. C████ on May 15, 2012.

12.     At that time, in accordance with normal practice, I required Mr. C████ to take a second urinalysis drug screening for controlled substances.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

C6

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 19, 2014.

Nicholas James Ford

Prior
Appointment
12-10
to

4-12
(first Ford)

| NEXT APPOINTMENT | | REPORTED | (Seen by) P.O. Int. |
|------|------|------|------|
| DATE | TIME | | |
| 12/16/10 | 330 | | |
| 12/16/10 | 330 | 12/16 | |
| 2/10/11 | 330 | 2/10 | |
| 4/7/11 | 330 | 4/7/11 | |
| 6/1/11 | 330 | 6-1-11 | |
| 8/4/11 | 3:30 | | |
| 10/6 | 9:30 am | 10/13 | TH |
| 12/8 | 2:15 pm | 12/8/11 | RM |
| Thurs 2/9/11 | 2 30 pm | 2/9/12 | |
| 4/4/12 | 230 | 4/12/12 | |

E

| NEXT APPOINTMENT | | REPORTED | (Seen by) P.O. Int. |
|------|------|------|------|
| DATE | TIME | | |
| 4/12 | 2³⁰ | 4/12 | |
| 4/19 | 2³⁰ | NA | |
| 5/10 | 2³⁰ | 5/10 | |
| 6/7 | 2³⁰ | | |
| 7/12 | 3³⁰ | 3 | |
| | | | |
| 8-2 | 3³⁰ | 8-? | |
| 8-14 | | VOP | |
| 9-26 | 11:03 | Stoke | |
| | | | |
| | | | |
| | | | |

01-707 (Rev. 5/04) (Reverse)

CC: Jules deCruz, M.S.

SUBJECT: Collura, Jason PP# ████████

I have scheduled the above P/P for a ████████ evaluation on Wednesday, **June 13, 2012 @ 12:00pm** in CJC room B-05. I have not contacted the P/P about this appointment. You will need to do that. You will also need to escort the P/P over to the CJC for this appointment. Please take with you a copy of the court order(s) and a copy of PSI's and/or ████ evals, if available. You will need to ask for Jules DeCruz when you arrive for the appointment. Please do not arrive for the appointment prior to 11:45am because there tends to be a high number of people in the small waiting area from the AM hours. **If you can not make it to CJC with the P/P by 12:15pm, please call me immediately (3-1362).** Because of the volume of walk-in appointments at the CMHC, Jules will need to reschedule the evaluation. The P/P will get only one chance at a rescheduled appointment. If you have any questions, please feel free to give me a call.

Steffen Boyd, Supervisor, MHU

3-1362

P10 N. Ford MHU
1401 ARCH STREET 9th Floor
PHILADELPHIA, PA  19102
Probation
ADDRESS CORRECTION REQUESTED



$ 00.46°

Jason Collura
P.O. Box 934
Philadelphia, PA 19105

1910530934

From ALL   To ALL

COLLURA, JASON
█████████

Even Type: ALL

### Client File Notes

████████ AS1 - ████████
Probation ████████

First Judicial District APPD

| | Type | With | Result | Author | Event Title |
|---|---|---|---|---|---|
| 9-28-2012   3:16p | Note | | Completed | FordN | AWW Sent |

p didd not report after court as scheduled.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| 9-26-2012   11:45p | Note | | Pending | FordN | Spoke to Harrison and Crier in 1103 |

crier said he has no idea why the hearing is cancelled and that he is not going to go ahead and schedule another hearing because it was cancelled. spoke to harrison who said that p and atty were a t court today and only stated that p would like a new p/o because he "does not get along with this p/o". harrison said that if █████ eval is to be ordered that status should be scheduled. revisit square 1 and crier doesnt want to schedule hearing because this one was "cancelled", even though both atty and p were presnet in the room this morning. NONE OF THIS MAKES ANY SENSE TO P/O

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| 9-26-2012   11:00a | Meeting | Client | Missed | FordN | OV |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| 9-26-2012   9:00a | Meeting | Client | Cancel | FordN | Status Rm 1103 |

Notice of Appeal to the Superior Court
PCRA Order     J. Dembe
file located

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| 8-21-2012   9:00a | Meeting | Client | No Contact | FordN | Order Denying Post - Conviction Re |

1 08/21/2012 Dembe, Pamela Pryor
Order Denying Post-Conviction Relief Act Petition
AND NOW, this 21st day of August 2012 it is hereby ORDERED AND DECREED that the Petitioner's petition for
post-conviction relief is DENIED WITHOUT A HEARING.
BY THE COURT:
Pamela P. Dembe, J.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| 3-14-2012   11:00a | Meeting | Client | Contact | FordN | VOP |

p retained counsel for his status hearing (ed mahon) and hearing was continued until 09/26/2012. p was given nrd of 09/26/2012. he had a problem with this until his atty told him that it was acceptable.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -



| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 If Restricted Delivery Is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front If space permits. | A. Signature<br>X *Michael Williams*  ☐ Agent  ☐ Addressee<br>B. Received by ( Printed Name )   C. Date of Delivery<br>*Michael Williams*   8.3.12<br>D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No |
| 1. Article Addressed to:<br><br>Robert Malvestuto<br>1401 Arch St - Adult Prob<br>Philo, PA   19102 | 3. Service Type<br>☐ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7011 3500 0003 0011 0806 |

PS Form 3811, February 2004          Domestic Return Receipt                    102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com.

OFFICIAL USE

| | |
|---|---|
| Postage | $ $1.55 |
| Certified Fee | $2.95 |
| Return Receipt Fee (Endorsement Required) | $2.35 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $6.15 |

Sent To
Robert Malvestuto
Street, Apt. No.; or PO Box No.
1401 Arch St
City, State, ZIP+4
Phila, PA 1902

PS Form 3800, August 2006                    See Reverse for Instructions

7011 3500 0003 0011 0806

 **USPS.COM**                                    Search USPS.com or Track Packages

Quick Tools          Ship a Package     Send Mail     Manage Your Mail     Shop     Business Solutions

# USPS Tracking™

 **Customer Service ›**
Have questions? We're here to help.

Tracking Number: **70113500000300110806**

· Expected Delivery Day: **Friday, August 3, 2012**

## Product & Tracking Information                    Available Actions

**Postal Product:**                **Features:**
First-Class Mail®                Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **August 3, 2012 , 3:04 pm** | **Delivered** | **PHILADELPHIA, PA 19102** |

Your item was delivered at 3:04 pm on August 3, 2012 in PHILADELPHIA, PA 19102

| | | |
|---|---|---|
| August 3, 2012 , 7:03 am | Arrival at Unit | PHILADELPHIA, PA 19104 |
| August 3, 2012 , 5:21 am | Depart USPS Sort Facility | PHILADELPHIA, PA 19176 |
| August 3, 2012 , 1:22 am | Processed at USPS Origin Sort Facility | PHILADELPHIA, PA 19176 |
| August 2, 2012 , 6:29 pm | Depart Post Office | PHILADELPHIA, PA 19103 |
| August 2, 2012 , 2:31 pm | Acceptance | PHILADELPHIA, PA 19103 |

## Track Another Package

**What's your tracking (or receipt) number?**

**Track It**

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Delivering Solutions to the Last Mile ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
USPS Service Alerts ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›
National Postal Museum ›

**USPS.COM**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| J.C | : | |
| Plaintiff | : | Civil Action |
| | | |
| v. | | No. 13-4066 |
| | | |
| Ford,  et al | : | |
| Defendants | | |

## **CERTIFICATE OF SERVICE**

I do hereby certify that service of a true and correct copy of  motion for reconsideration,

notice to stay,  default judgment, judgment on pleadings, summary judgment, been made

available by CM/ECF to:

Criminal Boyle
620 Freedom Business Center, Suite 300
King Of Prussia, PA 19406

J.C. Plaintiff
Box 934
Philadelphia, PA 19105

Dated:  April 11th, 2019